UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
SEBASTIAN DELAMOTA,

Plaintiffs,

-against-

THE CITY OF NEW YORK, DET. BRUCE KOCH,
RICHARD A. BROWN, individually and as
District Attorney of the County of Queens and
ADA "JOHN" SCOTTY, "first name being fictitious and
presently unknown and intended to a
Queens County Assistant District Attorney employed in
the Queens County District Attorney's Office,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**VERIFIED COMPLAINT**

**JURY DEMAND**

Plaintiff, SEBASTIAN DELAMOTA, by his attorneys, RUBERT & GROSS, P.C.,

complaining of defendants, allege, upon information and belief, as follows:

### INTRODUCTION

1.      This is an action to redress the deprivation, under color of statute, ordinance,

regulation, custom or usage of a right, privilege and immunity secured to plaintiff by the Fourth,

Fifth, Thirteenth and Fourteenth Amendments to the Constitution of the United States, brought

pursuant to 42 U.S.C. §§1983, 1985, 1986 and 1988, and arising under the law and statutes of the

State of New York.

2.      On or about January 17, 2007, plaintiff, SEBASTIAN DELAMOTA (hereinafter

"DELAMOTA") was taken by members of the New York City Police Department to the 110th

Precinct located at 94-41 43rd Ave., Elmhurst, New York, where he was placed under arrest by

defendant, DET. BRUCE KOCH (hereinafter referred to as "KOCH").

1

3.      Sometime after his arrest, plaintiff learned that on October 27, 2006, a man by the name of Juan Hernandez had been held up at knifepoint and that his gold chain had been stolen.

4.      Mr. Hernandez described to the police the perpetrator of the crime against him as being 5'6" tall and of average build.

5.      Plaintiff, DELAMOTA, is 6'2" tall and at the time of his arrest weighed approximately 160 pounds.

6.      The victim of the robbery stated that at the time of the assault, the perpetrator held a knife in his right hand while simultaneously snatching a chain from his neck with his left hand.

7.      At the time of the robbery, plaintiff did not have the use of his left arm as it hung limply at his side as a result of nerve damage.

8.      Sometime after the robbery occurred, the victim's son, Juan Hernandez Jr., called 911 pretending to be his father and told defendant, KOCH that "the word on the street" was that the perpetrator was named "Sebastian."

9.      Juan Hernandez Jr. claimed that he did not know plaintiff.

10.     Juan Hernandez Jr. in fact had known plaintiff for a long time.

11.     Juan Hernandez Jr. and plaintiff were the same age and lived only two blocks apart.

12.     During the investigation into the assault and robbery perpetrated on Mr. Hernandez, defendant, KOCH, permitted Juan Hernandez, Jr. to interpret for his father (who spoke only Spanish) at a photo-array.

13.     Juan Hernandez, Sr. informed defendant, KOCH, that he did not see the robber's face and did not even know whether he was black or white.

2

14.     Sometime thereafter, Plaintiff, DELAMOTA, was charged with robbery in the first degree, criminal possession of a weapon in the third degree, and menacing in the second degree.

15.     Plaintiff was taken to Queens Central Booking and arraigned.

16.     Bail was set at $40,000.

17.     Plaintiff was unable to make bail and was remanded to Riker's Island, where he remained until early July of 2007 when bail was reduced.

18.     Plaintiff was thereafter indicted by a Grand Jury.

19.     On October 4, 2007, claimant was convicted of robbery in the first degree, criminal possession of a weapon in the third degree, and menacing in the second degree.

20.     On February 13, 2008, plaintiff was sentenced to a ten-year period of incarceration, to be followed by a five-year period of post-release supervision.

21.     On February 13, 2008, the trial court denied petitioner's motion to set aside his conviction and for a new trial.

22.     Plaintiff was sent to prison in upstate New York to serve out his sentence.

23.     On June 22, 2010, the Appellate Division, Second Department, summarily affirmed the trial court's denial of claimant's motion to set aside plaintiff's conviction and for a new trial.

24.     On November 1, 2010, the Court of Appeals of the State of New York granted leave to appeal.

25.     On November 17, 2011, the Court of Appeals unanimously overturned claimant's conviction, finding that the photo-array was unduly suggestive and that "the suggestiveness

3

cannot be attributed to the victim's son, but to the detective's decision to utilize him as the interpreter notwithstanding the possible risks that were involved in this practice." *People v. Delamota*, 18 N.Y.3d 107, 118-19 (2011).

26.     At the time of plaintiff's arrest and prosecution, DELAMOTA had not committed any illegal act.

27.     At the time of plaintiff's arrest and prosecution, DELAMOTA had not committed or attempted to commit any crime.

28.     Defendants, KOCH and/or SCOTTY did not have probable cause to believe that he had committed the illegal acts of which he was falsely accused.

29.     At the time of plaintiff's unlawful imprisonment and prosecution, defendants, KOCH and SCOTTY, knew or should have known, through the exercise of proper police and investigatory procedures and reasonable investigation, that the aforementioned imprisonment, arrest, detention and prosecution were false and without justification.

30.     Defendants, KOCH and SCOTTY acted in bad faith and without justification in committing the aforesaid detention and unlawful imprisonment.

31.     Suggestive pretrial identification procedures violate the Due Process Clause of the U.S. Constitution.

32.     Defendant, KOCH, acted on unspecified neighborhood gossip, the reliability of which was never directly questioned or tested, regarding the robber's name and history based on information provided by Juan Hernandez, Jr.

33.     Defendant, KOCH, was aware of the victim's son's possible preexisting familiarity with DELAMOTA as well as the suggestiveness that this could cause.

4

34.     The identification procedure used by defendant, KOCH was unduly suggestive.

35.     Defendant, KOCH, either was or should have been aware of the substantial risk that the son, Juan Hernandez, Jr., was familiar with DELAMOTA despite his assurance to the contrary.

36.     There was no impediment to defendant, KOCH, utilizing a Spanish interpreter who did not have preexisting information about the possible perpetrator or a familial connection to the victim.

37.     Upon information and belief, defendant, KOCH, withheld information from the District Attorney's Office concerning the unduly suggestive nature of the photo array.

38.     Upon information and belief, defendant, KOCH, withheld information from the District Attorney's Office of his using the victim's son as an interpreter during the photo array.

39.     Upon information and belief, defendant, KOCH, withheld information from the District Attorney's Office about the likelihood that Juan Jr. knew plaintiff, DELAMOTA, from the neighborhood prior to the assault on Juan Sr.

40.     Upon information and belief, defendant, KOCH, withheld information from the Grand Jury concerning the unduly suggestive nature of the photo array.

41.     Upon information and belief, defendant, KOCH, withheld information from the Grand Jury of his using the victim's son as an interpreter during the photo array.

42.     Upon information and belief, defendant, KOCH, withheld information from the Grand Jury about the likelihood that Juan Jr. knew plaintiff, DELAMOTA, from the neighborhood prior to the assault on Juan Sr.

5

43. Upon information and belief, defendant, KOCH, in his investigatory capacity, failed to follow appropriate police policies, customs and practices which directly resulted in violation of plaintiff, DELAMOTA's constitutional rights.

44. Upon information and belief, defendant, SCOTTY, in his investigatory capacity as an Assistant District Attorney, withheld information concerning the unduly suggestive nature of the photo array.

45. Upon information and belief, defendant, SCOTTY, in his investigatory capacity as an Assistant District Attorney, withheld information concerning the use of the victim's son as an interpreter during the photo array.

46. Upon information and belief, defendant, SCOTTY, in his investigatory capacity as an Assistant District Attorney, withheld information about the likelihood that Juan Jr. knew plaintiff, DELAMOTA, from the neighborhood prior to the assault on Juan Sr.

47. All the crucial evidence during the criminal trial against plaintiff, DELAMOTA, came from a single prosecution witness, Juan Hernandez, Sr., who gave irreconcilably inconsistent testimony.

48. On September 13, 2012, all criminal charges against plaintiff were dismissed.

49. The policies, customs and practices of the New York City Police Department have resulted in unduly suggestive identification procedures that have resulted in unlawful arrests, malicious prosecutions and wrongful convictions of innocent citizens.

50. The policies, customs and practices of the New York City Police Department have resulted in the withholding of exculpatory evidence from criminal defendants in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

6

51.     Defendant, BROWN, as policymaker for the City of New York, was in charge of the training and supervision of Assistant District Attorneys working in his Office.

52.     Defendant, BROWN, as policymaker for the City of New York, set policy for the Assistant District Attorneys assigned to his Office.

53.     The policies, customs and practices of the Queens County District Attorney's Office have resulted in the acquiescence and ratification of unduly suggestive identification procedures that have resulted in unlawful arrests, malicious prosecutions and wrongful convictions of innocent citizens.

54.     The policies, customs and practices of the Queens County District Attorney's Office have resulted in the withholding of exculpatory evidence from criminal defendants in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)

55.     As a result of having been falsely arrested and maliciously prosecuted, plaintiff, DELAMOTA, was deprived of his liberty and has suffered embarrassment, humiliation, anxiety, personal injuries, legal expenses, and other damages.

56.     With the imposition of punitive damages against defendants, KOCH and SCOTTY, plaintiff hopes to deter defendants and bring an end to the intolerable practice of conducting unduly suggestive identification and withholding exculpatory evidence.

**<u>JURISDICTION</u>**

57.     This action is brought pursuant to 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988; and the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343(1-4), and 2202.

58.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b).

**PARTIES**

59.     Plaintiff, DELAMOTA, is a citizen of the United States and a resident of the State of New York.

60.     Defendant, CITY OF NEW YORK (hereinafter referred to as "CITY"), was and still is a municipal corporation, created, organized and existing under and by virtue of the laws of the State of New York.

61.     Defendant, CITY, its agents, servants and/or employees operated, maintained and controlled the New York City Police Department.

62.     Defendant, KOCH, was employed by defendant, CITY, as a police officer.

63.     Defendant, KOCH, was employed by defendant, CITY, as a detective.

64.     At all times hereinafter mentioned, Defendant, KOCH, was acting within the scope of his employment as a police officer with the New York City Police Department.

65.     At all times mentioned herein, defendant, KOCH, was acting within the scope of his employment as a detective with the New York City Police Department.

66.     Defendant, BROWN, was the District Attorney for Queens County.

67.     At all times hereinafter mentioned, defendant, BROWN, was acting within the scope of his employment as the District Attorney for Queens County.

68.     Defendant, BROWN, as the District Attorney for Queen County, was acting under color of law.

69.     Defendant, BROWN, as District Attorney for Queens County, was a municipal policymaker for the City of New York.

8

70.     Defendant, BROWN, as District Attorney for Queens County, was a New York City policymaker regarding management, training and supervision of Assistant District Attorneys in Queens County.

71.     Defendant, BROWN, as District Attorney for Queens County, had Assistant District Attorneys who worked under his direction and supervision.

72.     Defendant, BROWN, as District Attorney for Queens County, had supervisory duties over the Assistant District Attorneys employed by the Queens County District Attorney's Office.

73.     Defendant, SCOTTY, was an Assistant District Attorney employed by the Queens County District Attorney's Office.

74.     Defendant, SCOTTY, was acting within the scope of his/her employment as an Assistant District Attorney for Queens County.

75.     Defendant, SCOTTY, as an Assistant District Attorney for Queens County, was acting under color of law.

## FACTUAL AND GENERAL ALLEGATIONS

76.     Plaintiff repeats and reiterates each and every allegation contained in paragraphs numbered "1" through "75" above with the same force and effect as if fully set forth herein.

77.     The policies, customs and practices of the New York City Police Department and the Queens County District Attorney's Office, as policymaker for the City of New York, have resulted in unduly suggestive identification procedures that have resulted in wrongful convictions of innocent citizens.

9

78.     The policies, customs and practices that have resulted in unduly suggestive identification procedures were established, condoned, sanctioned and otherwise ratified by defendant, CITY.

79.     The policies, customs and practices that have resulted in unduly suggestive identification procedures were established, condoned, sanctioned and otherwise ratified by defendant, BROWN.

80.     The policies, customs and practices of the New York City Police Department and the Queens County District Attorney's Office, as policymaker for the City of New York, have resulted in the withholding of exculpatory evidence from criminal defendants in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)

81.     The policies, customs and practices that have resulted in the systematic withholding of exculpatory evidenced by members of the New York City Police Department and the including but not limited to defendant, KOCH, were established, condoned, sanctioned and otherwise ratified by defendant, CITY.

82.     The policies, customs and practices that have resulted in the systematic withholding of exculpatory evidenced by members of the Queens County District Attorney's Office, including but not limited to defendant, SCOTTY, were established, condoned, sanctioned and otherwise ratified by defendant, BROWN.

83.     The policies, customs and practices of the New York City Police Department have promoted an atmosphere in which police officers routinely utilize unduly suggestive identification procedures in order to perform arrests.

10

84.     The policies, customs and practices of the New York City Police Department have promoted an atmosphere in which police officers, including but not limited to defendant, KOCH, systematically withhold exculpatory evidence from the District Attorney's Office and Grand Juries.

85.     The policies, customs and practices of the Queens County District Attorney's Office have promoted an atmosphere in which Assistant District Attorneys, including but not limited to defendant, SCOTTY, systematically withhold exculpatory evidence from criminal defendants such as plaintiff, DELAMOTA.

86.     One of the consequences of the custom and practice of utilizing deliberately suggestive identification procedures is to obtain indictments and convictions regardless of the guilt or innocence of citizens of the City of New York.

87.     One of the consequences of withholding exculpatory evidence from criminal defendants is to prevent the accused from effectively defending himself/herself thereby increasing and/or assuring that he/she is found guilty regardless of whether he/she is guilty or not.

88.     The actions of defendant, KOCH, violated DELAMOTA's clearly established rights under the First, Fourth, Fifth, Eighth, Thirteenth and Fourteenth Amendments of the Constitution and were the direct and proximate cause of the physical and psychological injuries he suffered.

89.     The actions of defendant, SCOTTY, violated DELAMOTA's clearly established rights under the First, Fourth, Fifth, Eighth, Thirteenth and Fourteenth

11

Amendments of the Constitution and were the direct and proximate cause of the physical and psychological injuries he suffered.

90.    The actions of defendant, BROWN, violated DELAMOTA's clearly established rights under the First, Fourth, Fifth, Eighth, Thirteenth and Fourteenth Amendments of the Constitution and were the direct and proximate cause of the physical and psychological injuries he suffered.

91.    The actions of defendant, KOCH, were intentional, malicious, and in bad faith, thus giving rise to punitive damages.

92.    The actions of defendant, KOCH, were intentional, malicious, and in bad faith, thus giving rise to punitive damages.

93.    The actions of defendant, BROWN, were intentional, malicious, and in bad faith, thus giving rise to punitive damages.

## DAMAGES

94.    As a direct and proximate result of the said acts of the defendants, plaintiff, DELAMOTA, suffered the following injuries and damages:

    a.    Violation of his rights under the First, Fourth, Fifth, Eighth, Thirteenth, and Fourteenth Amendments to the Constitution;

    b.    Loss of physical liberty;

    c.    Pain and suffering, fear, emotional trauma;

    d.    Economic damages including loss of income; and

    e.    Humiliation, embarrassment, and injury to reputation.

95.     The physical and psychological consequences of the defendants' actions continue to date, and upon information and belief, will continue into the future.

### FIRST CAUSE OF ACTION
### (42 U.S.C. §1983 - False Arrest & Imprisonment)

96.     Plaintiff repeats and reiterates each and every allegation contained in paragraphs numbered "1" through "95" above with the same force and effect as if fully set forth herein.

97.     The actions of defendant, KOCH, heretofore described, constitute unlawful arrest, detention and imprisonment and were designed to and did cause specific and serious bodily harm, pain and suffering to plaintiff in violation of plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983 and set forth in the United States Constitution, Amendments Four and Fourteen.

98.     The actions of defendant, SCOTTY, in his investigatory capacity as an Assistant District Attorney, constitute unlawful arrest, detention and imprisonment and were designed to and did cause specific and serious bodily harm, pain and suffering to plaintiff in violation of plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983 and set forth in the United States Constitution, Amendments Four and Fourteen.

99.     By his conduct and under color of law, defendant, KOCH, deprived, plaintiff, DELAMOTA, of his constitutional right to be free from false arrest and false imprisonment.

100.    By his conduct and under color of law, defendant, SCOTTY, deprived, plaintiff, DELAMOTA, of his constitutional right to be free from false arrest and false imprisonment.

101.    As a result of the aforementioned false arrest, plaintiff was caused to sustain and suffer personal injuries, violation of civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom and damage to his reputation and standing within his community.

## SECOND CAUSE OF ACTION
### (42 U.S.C. §1983 – Malicious Prosecution)

102.    Plaintiff repeats and reiterates each and every allegation contained in paragraphs numbered "1" through "101" above with the same force and effect as if fully set forth herein.

103.    Defendant, KOCH, charged plaintiff, DELAMOTA, with robbery in the first degree; criminal possession of a weapon in the third degree, and menacing in the second degree.

104.    Defendant, SCOTTY, charged plaintiff, DELAMOTA, with robbery in the first degree; criminal possession of a weapon in the third degree, and menacing in the second degree.

105.    At the time of plaintiff's arrest and prosecution, plaintiff had not committed or attempted to commit any illegal act.

106.    At the time of plaintiff's unlawful arrest and prosecution, plaintiff had not committed or attempted to commit any crime.

107.    At the time of plaintiff's unlawful arrest and prosecution, defendant, KOCH, knew or should have known, through the exercise of proper procedure and reasonable investigation, that the aforementioned arrest and imprisonment was false and without probable cause.

108.    At the time of plaintiff's unlawful arrest and prosecution, defendant, SCOTTY, knew or should have known, through the exercise of proper procedure and reasonable investigation, that the aforementioned arrest and imprisonment was false and without probable cause.

14

109. Defendant, KOCH, did not have probable cause to prosecute plaintiff for the crimes for which he was prosecuted.

110. Defendant, SCOTTY, did not have probable cause to prosecute plaintiff for the crimes for which he was prosecuted.

111. The conduct and actions of defendant, KOCH, acting in under color of law, by commencing a prosecution against plaintiff was done intentionally, maliciously, and/or with a reckless disregard for the natural and probable consequences of his acts, was done without lawful justification, and were designed to and did cause specific and serious bodily harm, pain and suffering in violation of plaintiff's constitutional rights and are therefore actionable under 42 U.S.C. §1983 and the United States Constitution, Amendments One, Four and Fourteen. In commencing a prosecution against plaintiff, defendant, KOCH, acted with malice.

112. The conduct and actions of defendant, SCOTTY, acting in under color of law, by commencing and continuing a prosecution against plaintiff was done intentionally, maliciously, and/or with a reckless disregard for the natural and probable consequences of his acts, was done without lawful justification, and were designed to and did cause specific and serious bodily harm, pain and suffering in violation of plaintiff's constitutional rights and are therefore actionable under 42 U.S.C. §1983 and the United States Constitution, Amendments One, Four and Fourteen.

115. In commencing a prosecution against plaintiff, defendant, KOCH, acted with malice.

116. In commencing a prosecution against plaintiff, defendant, SCOTTY, acted with malice.

117.    On September 12, 2012 all criminal charges against plaintiff were dismissed.

118.    Defendant, KOCH, under color of law, violated plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and set forth in the United States Constitution, Amendments Four and Fourteen, and the Constitution of the State of New York by maliciously prosecuting plaintiff; abusing process against him; violating plaintiff's rights to equal protection of the law; violating plaintiff's rights to procedural and substantive due process.

119.    Defendant, SCOTTY, under color of law, violated plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and set forth in the United States Constitution, Amendments Four and Fourteen, and the Constitution of the State of New York by maliciously prosecuting plaintiff; abusing process against him; violating plaintiff's rights to equal protection of the law; violating plaintiff's rights to procedural and substantive due process.

120.    Defendant, KOCH, violated plaintiff's civil rights by using an unduly suggestive photo array.

121.    Defendant, SCOTTY, violated plaintiff's civil rights by employing procedures that resulted in an unduly suggestive photo array.

122.    Defendant, KOCH, violated plaintiff's civil rights by withholding exculpatory evidence from plaintiff, the District Attorney's Office and the Grand Jury.

123.    Defendant, SCOTTY, violated plaintiff's civil rights by withholding exculpatory evidence from plaintiff and the Grand Jury.

124.    As a result of the aforementioned malicious prosecution, plaintiff was caused to sustain and suffer personal injuries, violation of civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom and damage to his

reputation and standing within his community.

### THIRD CAUSE OF ACTION
#### (Conspiracy under 42 U.S.C. § 1983 against all Defendants)

125.    Plaintiff repeats and re-alleges each and every allegation set forth above as though fully set forth at length herein.

126.    That defendants, KOCH, BROWN and SCOTTY, under color of law, conspired with each other as well as with others to reach a mutual understanding and thereafter acted to undertake a course of conduct to injure, oppress, threaten and intimidate plaintiff in the free exercise and enjoyment of the rights and privileges and equal protection of the law secured to him by the Constitution of the United States, including the rights:  to be free from false arrest and false imprisonment; to be free from malicious prosecution; to associate and speak freely; to have fair and equal access to and seek redress in the courts; and to have fair and equal access to exculpatory evidence so as to be able to properly present a defense in a criminal matter.

127.    That as part of the conspiracy among defendants, KOCH, BROWN and SCOTTY,  and in furtherance of said conspiracy defendants willfully, recklessly and negligently accused plaintiff of committing a criminal act without probable cause; falsely arrested and imprisoned plaintiff; maliciously prosecuted plaintiff; covered up wrong doing by defendants, their agents, servants and/or employees, including but not limited to the deliberate, willful, malicious and/or negligent alteration, loss and/or destruction of exculpatory evidence, the failure to present exculpatory evidence, misrepresentation of evidence; suppression of exculpatory evidence; use of unduly suggestive identification procedures and by submitting false police reports, statements and/or testimony to support and corroborate the false charges against plaintiff.

17

128.    As a result of the aforesaid conspiracy, plaintiffs were caused to suffer personal injuries, violation of civil and constitutional rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom and damage to their reputation and standing within their community.

129.    By reason of the foregoing, plaintiffs demand judgment against defendants in a sum of money which exceeds the jurisdictional limits of all the Courts of lesser jurisdiction.

### FOURTH CAUSE OF ACTION
**(42 U.S.C. § 1983 based on Denial of Procedural and Substantive
Due Process against all Defendants)**

130.    Plaintiff repeats and re-alleges each and every allegation set forth above as though fully set forth at length herein.

131.    By their conduct and actions in falsely arresting and imprisoning plaintiff and maliciously prosecuting him, defendants violated plaintiff's rights to equal protection and both substantive and procedural due process of plaintiff as well as the protections afforded under the Fourth and Fourteenth Amendments.

132.    That the actions of defendants resulting from plaintiff's arrest, detention, imprisonment and malicious prosecution deprived the plaintiff of rights, privileges, and immunities as guaranteed under the United States Constitution, Amendments One, Four, Five, and Fourteen, the New York State Constitution, the Civil Rights Acts, 42 U.S.C. §§1983 and 1988.

133.    That defendants violated plaintiff civil rights by fabricating an account and/or evidence concerning the arrest of plaintiff; withholding exculpatory evidence, employing unduly suggestive identification procedures; failing to properly investigate the circumstances of the

18

crime of which plaintiff was wrongfully accused and in knowingly accusing plaintiff of a crime that defendants knew he had not committed.

134.   As a result of the above constitutionally impermissible conduct, plaintiff was caused to suffer personal injuries, property damages, violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom and damage to his reputation and standing within his community.

135.   By reason of the foregoing, plaintiff demands judgment against defendants in a sum of money which exceeds the jurisdictional limits of all the Courts of lesser jurisdiction.

### FIFTH CAUSE OF ACTION
### (Against Defendant, Scotty, based on Investigatory Functions)

136.   Plaintiff repeats and re-alleges each and every allegation set forth above as though fully set forth at length herein.

137.   At all times hereinafter mentioned defendant, SCOTTY, was an Assistant District Attorney within the Office of the District Attorney for Queens County and was, on information and belief, the riding ADA during plaintiff's arrest and involved in plaintiff's arrest and prosecution in an investigatory capacity.

138.   Defendant, SCOTTY, in his investigatory role as an Assistant District Attorney in Queens County was charged with conducting a proper investigation related thereto.

139.   Upon information and belief, Defendant, SCOTTY, in his investigatory capacity, advised the police with respect to plaintiff's arrest and prosecution.

140.   Upon information and belief, Defendant, SCOTTY, improperly advised the police that there was probable cause to arrest plaintiff.

141.   Upon information and belief, Defendant, SCOTTY, improperly advised the police

19

with respect to propriety of the identification procedures used by defendant, KOCH.

142.   Upon information and belief, Defendant, SCOTTY, improperly advised defendant KOCH concerning the propriety of using Juan Hernandez, Jr. as the interpreter during the photo array.

143.   As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

144.   As a result of the foregoing, plaintiff demands judgment against the defendants, in a sum of money, which exceeds the jurisdictional limits of all the Courts of lesser jurisdiction.

### SIXTH CAUSE OF ACTION
**(Unreasonably Prolonged Detention under 42 U.S.C. § 1983)**

145.   Plaintiff repeats and re-alleges each and every allegation set forth above as though fully set forth at length herein.

146.   Defendants' above-described conduct, including but not limited to defendants' mishandling of exculpatory and/or impeaching evidence and their concealment, suppression, and/or failure to turn said evidence over to the prosecution or the defense, their intimidation, threats, and coercion of witnesses and their use of unduly suggestive identification procedures, engaged in under color of state law, violated rights, privileges and immunities secured to plaintiff by the Constitution of the United States of America including, inter alia, plaintiff's Fourth and Fourteenth Amendment right to be free from continued detention after it was or should have been known that plaintiff was entitled to release, as articulated in *Russo v. City of Bridgeport*, 479 F.3d 196 (2d Cir. 2007).

147.   Plaintiff had a right to be free from continued detention stemming from

20

defendants' intimidation and coercion of witnesses, mishandling, concealment, and/or suppression of the exculpatory and/or impeaching material described above and unduly suggestive identification procedures, and defendants violated that right.

148.   That Plaintiff was detained for approximately five years before the charges against him were dismissed.

149.   That years of detention based upon grossly insufficient evidence; unduly suggestive identification procedures and without a legitimate initial or subsequent finding of probable cause, is excessive.

150.   That based upon the length of the pre-trial detention in this matter and the weakness of the evidence against the Plaintiff, the Plaintiff's constitutional right to be free from an extended pre-trial restraint of liberty following arrest has been violated.

151.   That the aforementioned Constitutional right arises both from plaintiff's Fourth Amendment right to be free of unreasonable searches and seizures and plaintiff's Fourteenth Amendment right to substantive due process.

152.   Defendants conduct in this regard was so egregious and outrageous as to shock the conscience.

153.   That as a result of the foregoing, plaintiff was severely and seriously injured, both bodily and mentally, suffered a loss of enjoyment of life, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses and suffered economic loss and other damages.

154.   Defendants are sued in their individual and official capacities.

155.   The amount of damages sought in this action exceeds the jurisdictional limits of

21

all lower Courts that might otherwise have jurisdiction over this action.

## SEVENTH CAUSE OF ACTION
### (42 U.S.C. § 1983 Based on Unreasonable Continued Prosecution)

156.   Plaintiff repeats and re-alleges each and every allegation set forth above as though fully set forth at length herein.

157.   That at all times hereafter mentioned, defendants, KOCH, BROWN and SCOTTY, wrongfully and impermissibly continued to prosecute plaintiff knowing that he was not guilty of the crime of which he was accused.

158.   That the purpose of defendants' continued prosecution of plaintiff, knowing that he was not guilty of the crime of which he was accused, was for the impermissible purpose of pressuring obtaining a conviction at all costs.

159.   That as a result of the above-described conduct, plaintiff was deprived of his rights, privileges, and immunities as guaranteed under the United States Constitution, Amendments One, Four, Five, and Fourteen, the New York State Constitution, the Civil Rights Acts, 42 U.S.C. § 1983 and 1988.

160.   As a result of the above-described impermissible conduct of the defendants, plaintiff demands judgment against said defendants in a sum of money, which exceeds the jurisdictional limits of all the Courts of lesser jurisdiction.

## EIGHTH CAUSE OF ACTION
### (42 U.S.C. § 1983 based on Unduly Suggestive Identification Procedures)

161.   Plaintiff repeats and re-alleges each and every allegation set forth above as though fully set forth at length herein.

162.   Defendants, all state actors, acting deliberately, recklessly and under color of law,

violated plaintiff's Fourteenth Amendment rights by utilizing unduly suggestive identification techniques in order to induce witnesses to make out-of-court and in-court identifications of plaintiff; defendants also failed to inform plaintiff or secure his consent or consent of counsel that defendants sought to employ such techniques.

163.    Defendants knew or should have known that engaging in unduly suggestive conduct before or during these identification procedures would foreseeably cause witnesses to make an irreparable misidentification of plaintiff.

164.    As a direct and proximate result of defendants' unduly suggestive conduct, witnesses irreparably misidentified plaintiff as one of the perpetrator of a crime he had not committed at, *inter alia*, photographic identification procedures and a line-up.

165.    Defendants' actions in this regard violated plaintiff's clearly established right to a fair trial as guaranteed by the Fourteenth Amendment, and resulted in his wrongful conviction and imprisonment, as well as causing the other grievous and continuing injuries and damages as set forth herein.

166.    That as a result of the foregoing, plaintiff was severely and seriously injured, both bodily and mentally, suffered a loss of liberty, a loss of enjoyment of life, and suffered economic loss and other damages.

167.    Defendants herein are sued in their individual and official capacities.

168.    The amount of damages sought in this action exceeds the jurisdictional limits of all lower Courts that might otherwise have jurisdiction over this action.

## NINETH CAUSE OF ACTION
### (42 U.S.C. § 1983 based on Failure to Intervene)

169.    Plaintiff repeats and re-alleges each and every allegation set forth above as though

fully set forth at length herein.

170.    Defendants failed to intervene to prevent, end or report the unlawful and unconstitutional conduct to which plaintiff was subjected despite the fact that they had opportunities to do so.

171.    The individual defendants, and each of them, thereby displayed deliberate indifference to plaintiff's rights, including but not limited to plaintiff's right to be free from unreasonable and unlawful searches and seizures, right to procedural and substantive due process, and right to a fair trial.

172.    That by virtue of the aforementioned acts by defendants, plaintiff was deprived of his civil rights guaranteed under the Constitution of the United States, including his right under the Fourth and Fourteenth Amendments to the United States Constitution, and defendants therefore are liable to plaintiff for damages under 42 USC § 1983.

173.    That as a result of the foregoing, plaintiff was severely and seriously injured, both bodily and mentally, suffered a loss of enjoyment of life, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses and suffered economic loss and other damages.

174.    That defendants are sued in their individual and official capacities.

175.    The amount of damages sought in this action exceeds the jurisdictional limits of all lower Courts that might otherwise have jurisdiction over this action.

## TENTH CAUSE OF ACTION
### (42 U.S.C. § 1983 based on Failure to Investigate)

176.    Plaintiff repeats and re-alleges each and every allegation set forth above as though fully set forth at length herein.

24

177.    Defendants deliberately, recklessly, and under color of law violated plaintiff's Fourteenth Amendment rights by failing adequately to investigate plaintiff's claim of innocence, including, but not limited to:

1.  Failing to investigate evidence that plaintiff's alibi was fully and credibly corroborated;

2.  Failing to investigate evidence that demonstrated that Hernandez's identification of plaintiff's photograph as depicting the person who robbed him was grossly unreliable;

3.  Using the victim's son as an interpreter for his father during the photo array;

4.  Ignoring the serious discrepancies between the description of the perpetrator given by the victim and the physical appearance of plaintiff, DELAMOTA;

5.  Acting on unspecified neighborhood gossip;

6.  Defendant, KOCH, knew or should have been aware of the substantial risk that the son was familiar with defendant despite his assurance to the contrary;

178.    As a result of the actions of the defendant police officers and Assistant District Attorneys, in violation of plaintiff's clearly established Fourteenth Amendment rights, plaintiff endured wrongful pretrial detention, an unfair trial, was wrongfully incarcerated and prosecuted, and suffered the injuries and damages set forth herein.

179.    That as a result of the foregoing, plaintiff was severely and seriously injured, both bodily and mentally, suffered a loss of liberty, a loss of enjoyment of life, and suffered economic loss and other damages.

180.    Defendants herein are sued in their individual and official capacities.

181.    The amount of damages sought in this action exceeds the jurisdictional limits of all lower Courts that might otherwise have jurisdiction over this action

## ELEVENTH CAUSE OF ACTION
## (42 U.S.C. § 1983 based on Brady Violations)

183.    Plaintiff repeats and re-alleges each and every allegation set forth above as though fully set forth at length herein.

183.    The conduct and actions of defendants, acting under color of law, suppressed and failed to disclose to either the prosecution or defense material evidence that was favorable to plaintiff, either because of its exculpatory or impeachment value, in violation of plaintiff's substantive and procedural due process rights and Brady v. Maryland, 373 U.S. 83 (1963) and its progeny.

184.    Said suppression and failure to disclose was done intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of their acts, and was done without lawful justification or reason, and was designed to and did cause specific and serious pain and suffering in violation of plaintiff's constitutional rights and guaranteed under 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

185.    As a result of the foregoing, plaintiff was severely and seriously injured, both bodily and mentally, suffered a loss of liberty, a loss of enjoyment of life, and suffered economic loss and other damages.

186.    Defendants are sued in their individual and official capacities.

187.    The amount of damages sought in this action exceeds the jurisdictional limits of all lower Courts that might otherwise have jurisdiction over this action.

## TWELVETH CAUSE OF ACTION
### (42 U.S.C. § 1983 - Monell Claim against the City)

188.    Plaintiff repeats and reiterates each and every allegation contained in paragraphs numbered "1" through "188" above with the same force and effect as if fully set forth herein.

189.    Prior to January 17, 2007, defendant, CITY, had developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of its citizens, which caused the violations of DELAMOTA's rights.

199.    Prior to January 17, 2007, defendant, BROWN, had developed and maintained policies and customs in the Queens County District Attorney's Office exhibiting deliberate indifference to the constitutional rights of its citizens, which caused the violations of DELAMOTA's rights.

191.    At the time of plaintiff's unlawful arrest and prosecution, it was the policy of defendant, CITY, through its Police Department, to encourage and permit police officers to use unconstitutional and unduly suggestive identification procedures in order to ensure a high rate of arrests and convictions in order to create the perception that the New York City Police Department was successful in "fighting crime".

192.    At the time of plaintiff's unlawful arrest and prosecution, it was the policy of the CITY, through its Police Department, to encourage, allow and permit police officers to withhold exculpatory or possibly exculpatory evidence from the District Attorney's Office in order to ensure that their arrests were found to be lawful and in order to obtain indictments and convictions of citizen who may be innocent of the crimes of

27

which they are accused.

193.    Defendant, CITY, had a policy of ignoring law enforcement improprieties and misconduct, including the purposeful and wrongful accusation of citizens' committing crimes that knew they had not committed.

194.    The CITY's policymakers' failure to train its employees, including defendant, KOCH, in the constitutional limits of their authority evinced a pattern of deliberate indifference to the constitutional rights of the citizens of the City of New York.

195.    Upon information and belief, defendant, CITY had *de facto* policies and practices of permitting police officers to use as interpreters during investigations persons related to the victims rather than using an uninvolved and objective interpreter.

196.    Upon information and belief, defendant, CITY, had *de facto* policies and practices of permitting, allowing and/or ignoring widespread practices of withholding crucial and potentially exculpatory evidence from citizens in order to secure convictions at any cost.

197.    Upon information and belief, defendant, KOCH, evinced a pattern of committing law enforcement improprieties and misconduct including arresting and prosecuting citizens without probable cause; withhold evidence; falsely testifying in order to obtain convictions and otherwise purposefully failing to investigate alleged crimes in order to obtain convictions without justification and/or probable cause.

198.    At all times material to this complaint, defendant, CITY, acting through its Police Department and through the individual defendants, had *de facto* policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employees and police officers,

and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants.

199.   Upon information and belief, the City has maintained no system or an inadequate system of review of officers who withhold knowledge, use unduly suggestive identification procedures or give false information regarding citizens. This failure to identify and track such officers or to discipline, more closely supervise, or retrain such officers who engage in these practices causes New York City police officers to believe that they can engage in misconduct, secure in the knowledge that they will not be disciplined and in fact are sometimes promoted. These systemic deficiencies include, but are not limited to:

a)  Preparation of investigative reports designed to vindicate the conduct of officers who gave use unduly suggestive identification procedures; give false information about citizens; withhold exculpatory information, or who falsely denied knowledge about misconduct which they were in a position to observe.

b)  Preparation of investigative reports which uncritically rely solely on the word of police officers and which systematically fail to credit testimony of non-police witnesses.

c)  Preparation of investigative reports which omit or ignore factual information and physical evidence which contradict the accounts of police officers;

d)  Issuance of public statements exonerating officers involved in such incidents prior to the completion of investigation.

d) Failure to have meaningful review of investigative reports by responsible superior officers for accuracy or completeness, including consideration of the conduct of officers who were not actively engaged in the misconduct which was the subject of the investigation, and acceptance of conclusions which are not supported by the evidence or which contradict such evidence; and

e) Failure to identify potential witness identification and withholding of evidence violations and to maintain accurate records of allegations of such misconduct.

200. The existence of such unlawful *de facto* policies and/or well-settled and widespread customs and practices has been known to supervisory and policy-making officers and officials of the CITY and the NYPD for a substantial period of time.

201. Despite knowledge of such unlawful de facto policies and practices, these supervisory and policy-making officers and officials of the CITY and the NYPD did not take steps to terminate these policies and practices, did not discipline individuals who engaged in such practices, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanctioned and ratified these policies, customs, and practices through their deliberate indifference to or reckless disregard of the effect of said policies, customs and practices upon the constitutional rights of persons in the City of New York.

202. Defendants, CITY's and BROWN's policies and practices in existence at the time of the conduct complained of herein, which caused plaintiff's injuries herein include, inter alia, the following:

30

a.  The failure to properly supervise, train, instruct, and discipline police officers and Assistant District attorneys with regard to proper conduct and investigation at and in relation to a crime;

b.  The failure to properly supervise, train, instruct, and discipline police officers and assistant district attorneys with regard the conduct of identification procedures;

c.  The failure to properly supervise, train, instruct, and discipline police officers and Assistant District Attorneys with regard to the constitutional requirement of disclosing of exculpatory evidence;

d.  The failure to properly supervise, train, instruct and discipline police officers and Assistant District Attorneys in the preparation of truthful paperwork, or to correctly and accurately document and preserve evidence or to memorialize investigative steps taken, or circumstances surrounding the obtaining of evidence, that could be relevant to the investigation and/or prosecution, and/or discoverable in any litigation;

e.  The failure to properly supervise, train, instruct, and discipline police officers and Assistant District Attorneys with regard to the New York State Penal Law and the state and federal Constitutions, and with regard to adequate evidence of crimes and to discipline those who unjustifiably charge and prosecute or continue to prosecute persons accused of crimes in the absence of probable cause;

31

f.  The failure to properly supervise, train, instruct, and discipline police officers and assistant district attorneys with regard to the exercise of their authority, including, without limitation, in regard to disclosure of exculpatory and/or impeaching evidence;

g.  The failure to disclose to the prosecution or the defense material evidence that is favorable to the accused person(s), either because of its exculpatory or impeachment value, in violation of an accused person's substantive and procedural due process rights and <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and its progeny;

h.  The failure to properly supervise, train, instruct, and discipline police officers and Assistant District Attorneys with regard to proper methods of conducting interviews of witnesses and/or accused persons, and to discipline police officers who use improper methods to coerce and/or elicit false and improper identification procedures;

i.  The failure to properly supervise, train, instruct, and discipline police officers, and Assistant District attorneys known to be irresponsible in their dealings with citizens of the community, known to violate state and federal law and state and federal constitutional limitations in their investigative and law enforcement conduct, known to fabricate and falsify evidence, known to manipulate, intimidate, threaten, and coerce witnesses, known to deprive criminal defendants of their right to a fair trial, and known to arrest and initiate/continue prosecution in the absence of probable cause;

32

j.  Failing to establish or assure the functioning of a bona fide and meaningful departmental system for dealing with complaints of police misconduct, but instead responding to these types of complaints with bureaucratic power and official denials calculated to mislead the public;

k.  Failing to adequately investigate, monitor, audit, and respond to citizen complaints and other claims of police misconduct within the NYPD, such that defendant, CITY and the NYPD knew about and acquiesced in a custom of tolerating constitutional, statutory, and common law violations;

l.  The failure to properly supervise, train, instruct, and discipline police officers and Assistant District Attorneys with regard to proper, and constitutional, methods of conducting identification procedures, and of adequately preserving and documenting all critical aspects of such procedures, including the circumstances surrounding the procedure and all statements made by or to the witness participating in the procedure;

m.  The tacit acceptance of and encouragement of a code of silence wherein police officers regularly cover up police misconduct by refusing to report other officers' misconduct or by telling false and/or incomplete stories, inter alia, in sworn testimony, official reports, in statements to the Civilian Complaint Review Board ("CCRB") and the Internal Affairs Bureau, and in public statements designed to cover for and/or falsely exonerate accused police officers;

  n. Encouraging and/or failing to discipline officers for "testilying" and/or fabricating false evidence to bring about the police officers' preconceived perceptions or determinations of guilt, including, but not limited to, such perceptions and/or determinations influenced by racial prejudice and/or ethnic bias.

203. Defendant, CITY, prior to and at the time of this incident, was aware of the need for more or different training, rules, regulations, investigation and discipline relating to police officers who conduct unduly suggestive identification procedures and who withhold crucial and potentially exculpatory evidence and was deliberately indifferent to that need.

204. The foregoing acts, omissions, systemic deficiencies and deliberate indifference to the danger of harm to citizens like plaintiff and the need for more or different training and discipline are policies, practices and customs of defendant, CITY, and have caused police officers, including defendant, KOCH, to believe that they can violate the rights of citizens with impunity, and that their fellow officers will conceal such conduct, all with the foreseeable result that officers are more likely violate the constitutional rights of citizens.

205. It was the policy and/or custom of defendant, CITY, to inadequately and improperly investigate complaints of police misconduct. Instead, defendant, CITY and its Police Department tolerated the violation of citizens' civil rights by police officers.

206. The Internal Affairs Bureau (IAB) and the Civilian Complaint Review Board (CCRB) have substantially failed to investigate, deliberate, and discipline transgressors who have violated citizens' civil rights. Since the CCRB became independent in 1993, through December 1996 it received 18,336 complaints, yet the

34

NYPD dismissed only one officer as a result of a CCRB investigation. IAB investigations of violation of civil rights rarely lead to administrative trials and when they do, and the charges are somehow sustained, the punishment is minimal, lacking any deterrent effect. Since there is no disciplinary sanction available between thirty days' suspension and dismissal, and dismissal is almost always deemed too harsh, even the most acts of violation of civil rights, short of murder, are resolved with a slap on the wrist.

207.    At all times material to this complaint, defendant, BROWN, as policymaker for defendant, CITY, had *de facto* policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employees of the Queens County District Attorney's Office.

208.    The CITY's policies, practices and customs in existence at the time of failing to supervise, train, instruct, and discipline police officers and encouraging their misconduct are further evidenced, inter alia, by the following:

   a.    The Report of the Commission to Investigate Allegations of Police Corruption and the Anti-Corruption Procedures of the Police Department ("Mollen Commission Report"), dated July 7, 1994, states:

> "In the face of this problem [of corruption], the [New York City Police] Department allowed its systems for fighting corruption virtually to collapse. It has become more concerned about the bad publicity that corruption disclosures generate than the devastating consequences of corruption itself. As a result, its corruption controls minimized, ignored and at times concealed corruption rather than root it out. Such an institutional reluctance to uncover corruption is not surprising. No institution wants its reputation tainted – especially a Department that needs the public's confidence and partnership to be effective. A weak and poorly resourced anti-corruption

apparatus minimizes the likelihood of such taint, embarrassment and potential harm to careers. Thus there is a strong institutional incentive to allow corruption efforts to fray and lose priority – which is exactly what this Commission uncovered. This reluctance manifested itself in every component of the Department's corruption controls from command accountability and supervision, to investigations, police culture, training and recruitment.

"For at least the past decade, the system designed to protect the Department from corruption minimized the likelihood of uncovering it."

Mollen Commision Report, at 2-3.

b. Accordingly, in 1990, the Office of the Special Prosecutor, which investigated charges of police corruption, was abolished.

c. The Mollen Commission concluded that police perjury and falsification of official records

"is probably the most common form of police corruption facing the criminal justice system ....
                              * * *
Regardless of the motives behind police falsifications, what is particularly troublesome about this practice is that it is widely tolerated by corrupt and honest officers alike, as well as their supervisors.   Corrupt and honest officers told us that their supervisors knew or should have known about falsified versions of searches and arrests and never questioned them.
                              * * *
What breeds this intolerance is a deep-rooted perception among many officers of all ranks within the Department that nothing is really wrong with compromising facts to fight crime in the real world. Simply put, despite the devastating consequences of police falsifications, there is a persistent belief among many officers that it is necessary and justified, even if unlawful. As one dedicated officer put it, police officers often view falsification as, to use his words, 'doing God's work' – doing whatever it takes to get a suspected criminal off the streets. This attitude is so entrenched, especially in high-crime precincts, that when investigators confronted one recently

36

> arrested officer with evidence of perjury, he asked in disbelief, 'What's wrong with that? They're guilty.'"

Mollen Commission Report at 36, 40-41.

d. Since at least 1984, defendant, City, the NYPD and the Queens County District Attorney's Office have been on notice that their training of police officers has been inadequate and that police officers joining the force, including, on information and belief, individual defendant police officers herein, were disproportionately involved in misconduct and abuse. See, e.g., Mayor's Advisory Committee on Police Management and Personnel Policy, Final Report, February 24, 1987.

e. The City of New York Office of the Comptroller, in an unpublished report, found that the police often conduct inadequate investigations.

f. Prior to July 1993, the CCRB, which is responsible for receiving and investigating complaints of police misconduct made by citizens against members of the NYPD, operated as an agency of the NYPD rather than as an independent, unbiased entity.

g. During the 1980s and early 1990s, and in and about the time frame of this case, the CCRB received numerous complaints of police misconduct, but failed to fully investigate many of them and substantiated the guilt of the accused police officer in a suspiciously minuscule number of cases.

h. On average, in 1985-1988, the CCRB conducted complete investigations of only 27 percent of the complaints received, closed 45 percent of the total cases without completing full investigations, and substantiated (i.e., found the

subject employee guilty of the alleged act of misconduct) only 1.9 percent of the total complaints received.

i. In 1989, the CCRB conducted complete investigations of only 29 percent of the 3,515 complaints received, closed 41 percent of the total cases without completing full investigations, and substantiated only 2.6 percent of the total complaints received.

j. On average, in 1990-1992, the CCRB conducted complete investigations of only 36 percent of the complaints received, closed 40 percent of the total cases without completing full investigations, and substantiated only 3.3 percent of the total complaints received.

k. The CCRB has also failed to recommend disciplinary action in the vast majority of its cases.

l. On average, in 1985-1988, the CCRB recommended disciplinary action in only 6.7 percent of disposed of cases.

m. In 1989, the CCRB recommended specific disciplinary action to the Police Commissioner in only 3.4 percent of disposed of cases (i.e., 110 recommendations of discipline out of the 3262 disposed of complaints).

n. On average, in 1990-1992, the CCRB recommended disciplinary action in only 7.5 percent of disposed of cases.

o. Moreover, most of the complaints that are substantiated by the CCRB do not result in any kind of meaningful discipline. For instance, as of November 14, 1991, of the 81 officers who faced departmental trials in 1991, 47 were

cleared, and 34 were disciplined with penalties ranging from loss of vacation to a 90-day suspension.

p.  Damages have been awarded to victims of police misconduct in 300-400 cases annually since 1988, as a result of out-of-court settlements or judgments in civil actions. Meanwhile, on average, only about 107 complaints were substantiated annually by the CCRB in 1988-1992.

q.  The money paid out by the City in damages to alleged victims of police misconduct rose from approximately $7 million in 1988, to $13.5 million in 1992, to $24 million in 1994.

r.  More than $82 million was paid in damages to victims of police misconduct in 1352 cases between 1992 and 1995.

s.  In the vast majority of police misconduct cases that result in verdicts or substantial settlements for the victims, defendant City imposes no discipline, either before or after resolution in court, almost never reopens an investigation previously conducted after such resolution, and sometimes promotes the abusive officer to a position of greater authority despite the judicial resolution.

t.  In none of the approximately 8,000 complaints reviewed by the CCRB in 1987 and 1988 did any police officer provide evidence in support of a complainant.

u.  Former New York County District Attorney Robert Morgenthau has been quoted as acknowledging that in the NYPD there is a "code of silence," or a "code of protection" that exists among officers and that is followed carefully.

v.   In 1985, former Police Commissioner Benjamin Ward, testifying before a
State Senate Committee, acknowledged the existence of the "code of silence"
in the NYPD.

w.   Former New York City Police Commissioner Robert Daly wrote in 1991 that
the "blue wall of solidarity with its macho mores and prejudices, its cover-ups
and silence, is reinforced every day in every way."

208.   Plaintiff's injuries were a direct and proximate result of the defendants' wrongful
policies, practices, customs and/or usages complained of herein and in existence at the time of
the incidents complained of herein and of the knowing and repeated failure of the defendant, City
and the NYPD to properly supervise, train and discipline their police officers.

209.   Defendant City knew or should have known that the acts alleged herein would
deprive Plaintiff of his rights, in violation of the Fourth, Fifth, Sixth, Ninth, Thirteenth and
Fourteenth Amendments to the United States Constitution and Article 1, §§ 1, 6, 11, and 12 of
the Constitution of the State of New York, including, without limitation, Plaintiff's freedom from
deprivation of liberty without due process of law.

210.   Defendant, City, is directly liable and responsible for the acts of the defendant
officers because it repeatedly and knowingly failed to properly supervise, train, instruct, and
discipline them and because it repeatedly and knowingly failed to enforce the rules and
regulations of the NYPD, and to require compliance with the constitutions and laws of the State
of New York and the United States.

40

211.    As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

212.    As a result of the aforementioned impermissible conduct plaintiff demands judgment against said defendants in a sum of money, which exceeds the jurisdictional limits of all the Courts of lesser jurisdiction.

213.    All of the acts by the defendant prosecutors, BROWN and SCOTTY, described above were carried out pursuant to policies and practices of the City of New York which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and under the supervisory authority of the Queens County District Attorney's Office.

214.    Defendant City and the District Attorney's Office, by their policy-making agents, servants and employees, authorized, sanctioned and/or ratified the defendant prosecutor's wrongful acts; and/or failed to prevent or stop these acts; and/or allowed or encouraged these acts to continue.

215.    The actions of the defendant prosecutor resulted from and were taken pursuant to *de facto* policies and/or well-settled and widespread customs and practices of the City, which are implemented by prosecutors, to prosecute and continue to prosecute persons through fabricated and manipulated allegations without adequate basis in fact and/or despite substantial exculpatory evidence known to them and withheld from accused persons.

216.    The existence of such unlawful *de facto* policies and/or well-settled and widespread customs and practices has been known to supervisory and policy-making officers and

41

officials of the District Attorney's Office and the City, including, without limitation, D.A. Brown and his predecessor in interest, for a substantial period of time.

217.     Despite knowledge of such unlawful *de facto* policies and practices, these supervisory and policy-making officials of the District Attorney's Office and the City and their predecessors in interest did not take steps to terminate these policies and practices, did not discipline individuals who engage in such practices, or otherwise properly train prosecutors with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanctioned and ratified these policies, customs and practices through their deliberate indifference to or reckless disregard of the effect of said policies, customs and practices upon the constitutional rights of persons in the City of New York.

218.     The City's policies and practices in existence at the time of the conduct complained of herein, which caused the plaintiffs' injuries herein include, inter alia, the following:

> a.   The failure to properly supervise, train, instruct, and discipline prosecutors who participate with and advise police officers in using coercive and unduly suggestive techniques during the course of an investigation;
>
> b.   The failure to properly supervise, train, instruct, and discipline prosecutors with regard to proper investigatory techniques and adequate evidence of crimes and to discipline those who unjustifiably charge and prosecute or continue to prosecute persons accused of crimes in the absence of probable cause.

219.    The aforementioned City policies, practices and customs of failing to supervise, train, instruct and discipline prosecutors and encouraging their misconduct are evidenced by the prosecutorial misconduct detailed herein, of which D.A. Brown and his most senior management were made well aware that defendant SCOTTY and other ADAs was unconstitutionally and unlawfully prosecuting and continuing to prosecute the Plaintiff based on an unduly suggestive identification procedure, fabricated and manipulated allegations without adequate basis in fact and/or despite substantial exculpatory evidence known to the prosecution and police officers and withheld from Plaintiff herein.

220.    The City policies, practices and customs in existence at the time of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are further evidenced, inter alia, by the Mollen Commission's conclusion that the same tolerance of perjury and falsifications that is exhibited among police officers is exhibited among prosecutors. The Commission specifically noted that "several former and current prosecutors acknowledged – 'off the record' – that perjury and falsifications are serious problems in law enforcement that, though not condoned, are ignored." Mollen Commission Report, p. 42.

221.    The conduct and actions of defendants, acting under color of law, in failing to disclose to the prosecution or the defense material evidence that was favorable to Plaintiff, either because of its exculpatory or impeachment value, in violation of Plaintiff's substantive and procedural due process rights and Brady v. Maryland, 373 U.S. 83 (1963) and its progeny, was consistent with an institutionalized customs, policies and/or practices of the NYPD and the Queens County District Attorney's Office, which was known to and ratified by defendant CITY.

222.    Despite knowledge of these institutionalized practices, policies and customs, defendant CITY has at no time taken any effective action to prevent the NYPD or the Queens County District Attorney's Office personnel from continuing to engage in this type of misconduct.

223.    Defendant CITY authorized, tolerated as institutionalized practices and ratified the misconduct detailed above by failing to take adequate precautions in the supervision and/or training of NYPD police personnel and Queens County District Attorney's Office assistant district attorneys, including specifically defendants herein.

224.    That the customs, practices and policies of the NYPD and the Queens County District Attorney's Office regarding their failure to supervise their personnel rose to the level of deliberate indifference to the consequences of its actions, and indifference to Plaintiff's rights, privileges and immunities secured by the Constitution of the United States of America, inter alia, Plaintiff's Fourth and Fourteenth Amendment rights.

225.    That as a result of the foregoing, Plaintiff was severely and seriously injured, both bodily and mentally, suffered a loss of liberty, a loss of enjoyment of life, and suffered economic loss and other damages.

226.    The amount of damages sought in this action exceeds the jurisdictional limits of all lower Courts that might otherwise have jurisdiction over this action.

### THIRTEENTH CAUSE OF ACTION
#### Attorneys' Fees

227.    Plaintiffs repeat and reiterate each and every allegation contained in paragraphs numbered "1" through "226" above as if fully set forth herein.

44

228.    That the actions of defendants heretofore deprived Plaintiff of rights, privileges and immunities as guaranteed under 42 U.S.C. § 1983 and set forth in the U.S. Constitution, Amendments Four and Fourteen, and the Constitution of the State of New York.

229.    That in the event that Plaintiff is successful in the prosecution of the aforesaid claims, Plaintiff shall be a prevailing party within the meaning of 42 U.S.C. § 1983 and entitled to recovery of attorneys' fees from the Defendants pursuant to 42 U.S.C. §1988.

230.    By reason of the foregoing, Plaintiffs demand judgment against Defendants in a sum of money which exceeds the jurisdictional limits of all Courts of lesser jurisdiction.

**WHEREFORE**, plaintiff respectfully demands judgment for each of the aforesaid causes of action against defendants, CITY OF NEW YORK, DETECIVE DET. BRUCE KOCH, RICHARD A. BROWN and ADA "JOHN" SCOTTY, and request the following relief jointly and severally as against all of the defendants as follows:  compensatory and punitive damages in a sum to be determined by the trier of fact; an award of reasonable attorney's fees, costs and disbursements of this action; and such other and further relief as this Court may deem just, fair, and proper under the circumstances.

Dated: New York, New York
        October 6, 2014

                                Yours, etc.


                                **RUBERT & GROSS, P.C.**
                                Attorneys for Plaintiff
                                150 Broadway Suite 712
                                New York, New York 10038


                                RICHARD GROSS (6976)

45