**RUBERT & GROSS, P.C.**
ATTORNEYS AT LAW
150 Broadway Suite 712
New York, New York 10038
(212) 608-3103

**RICHARD A. GROSS**
**SOLEDAD RUBERT**
**ERNESTINE MINGS**

January 20, 2015

Hon. Nina Gershon
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

                                        Re:     *Delamota v. The City of New York, et al.*
                                        Docket No.:    14-CV-5888 (NG)(RER)

Honorable Judge Gershon:

        Plaintiff respectfully submits this letter in response to defendants' letter requesting a pre-motion conference in this matter with regard to defendants' intended motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6).[1]

        In October 2006, Juan Hernandez, Sr. ("Juan Sr.") was robbed at knife point. He described the perpetrator as being in his mid-twenties, 5'6" tall, and of average build. Delamota was just shy of 19 years old, 6'3" and thin with a limp left arm. *Complaint ¶¶ 4-7*. Juan Sr. did not see the robber's face or know whether he was black or white. Shortly thereafter, Koch arranged a photo array. Juan Sr.'s son ("Jr."), who knew plaintiff, made the call to the police identifying plaintiff as the perpetrator and was permitted to translate for Juan Sr. at the a photo array. *Complaint ¶¶ 8-12; see People v. Delamota*, 18 N.Y.3d 107, 118-19 (2011).[2] After plaintiff's arrest on January 7, 2007, Koch conducted a lineup at which defendant ADA Paul Scotti ("Scotti") was present.[3]

        Upon information and belief, the grand jury was not informed that Jr., not the victim, had called the police to implicate plaintiff in the robbery; had translated for his father during the photo array or that Jr. knew the plaintiff *Complaint* ¶¶40-42. Presumably, the grand jury was also not advised that plaintiff did not match the description of the perpetrator given by Juan Sr. shortly after the incident or that although Juan Sr. stated that the perpetrator used his right hand to hold a knife while he stole property with his left hand, plaintiff had a nonfunctioning left hand.

---

[1] The Office of Corporation Counsel has filed a Notice of Appearance on behalf of The City of New York, Queens County District Attorney Richard A. Brown, and Detective Bruce Koch in this matter. The Office of Corporation Counsel has not filed a Notice of Appearance on behalf of ADA Scotti.

[2] Four judges voted to reverse plaintiff's conviction and ordered a new trial to be preceded by an independent source hearing while three judges voted to reverse the order of the Appellate Division, vacate the judgment of conviction and dismiss the indictment.

[3] Plaintiff sued ADA "John" Scotty in his complaint. After further review of Plaintiff's file, Plaintiff has identified Assistant District Attorney Paul Scotti as the intended defendant. The parties have discussed amending the complaint and defendants' counsel has advised that she will not oppose a motion to amend the complaint, which will be filed shortly.

*Delamota, supra*.  On October 4, 2007, plaintiff was convicted of robbery in the first degree (PL §160.15(3), menacing in the second degree (PL §120.14(1)) and criminal possession of a weapon in the third degree (PL §265.02(1).  On February 13, 2008, he was sentenced to ten years in prison followed by five years of post-release supervision.

      The Court of Appeals of the State of New York, noting that suggestive pretrial identification procedures violate the Due Process Clause, unanimously reversed plaintiff's conviction and concluded that the photo array used by defendant, Koch, was unduly suggestive and tainted the identification procedure. *People v. Delamota*, 18 N.Y.3d 107, 118-19 (2011).[4] On September 13, 2012, almost six years after plaintiff was arrested, all criminal charges against plaintiff were finally dismissed.  *See Complaint, ¶19*.

      Plaintiff filed a complaint against the City of New York, Detective Bruce Koch, DA Richard Brown and ADA "John" Scotty alleging violations of his civil rights under 42 U.S.C. §1983 based on false arrest, malicious prosecution, conspiracy, denial of due process, unreasonably prolonged detention, unreasonable continued prosecution, unduly suggestive identification procedures, failure to intervene, failure to investigate, and *Brady* violations.  Plaintiff respectfully submits that his complaint alleges significant facts with enough details to satisfy the requirements under Fed. R.Civ. P. 8(a) and the standards established under *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

      While a grand jury indictment creates a presumption of probable cause, the presumption may be overcome where, as here, the indictment was procured by defendants' misconduct.  *See Complaint* ¶¶ 12, 25, 28-47,78-79, 88-90, 99-100, 107-124, 131, 137-146, 161-66, 177-78, 183-85.  *See, e.g., Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 130 (2d. Cir. 1997); *see also Jocks v. Tavernier*, 316 F.3d 128, 138 (2d. Cir. 2003).  Defendants' misconduct, as alleged in the complaint and as found by the Court of Appeals, would overcome the presumption afforded a grand jury indictment. Moreover, plaintiff's malicious prosecution claims are not subject to dismissal based on the acts of "intervening decision-makers" because a defendant cannot rely on the alleged existence of a superseding cause when that subsequent decision-maker has been deceived by the defendant's actions. *See*, *Townes v. City of New York*, 176 F.3d at 147 (2d. Cir. 1999; *Zahrey v. Cofey*, 221 F.3d 342 (2d. Cir, 2000) [even if the intervening decision-maker, such as a judge, is not misled or coerced, the chain of causation is not broken where the initial wrongdoer can reasonably foresee that his misconduct would contribute to an 'independent' decision that results in a deprivation of liberty].  Nor is plaintiff's claims of violation of *Brady* dismissible inasmuch as plaintiff's complaint alleges that Koch withheld exculpatory evidence from the District Attorney. *See Complaint ¶¶37-43*.

      The claims against ADA Scotti are not subject to dismissal.  In determining whether a prosecutor enjoys absolute immunity, as defendants urge here, the courts are to apply a "functional approach," examining "the nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993).  Thus, "the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor." *Id. at*

---

[4] Four judges voted to reverse the conviction and ordered a new trial to be preceded by an independent source hearing while three judges voted to reverse the order of the Appellate Division, vacate the judgment of conviction and dismiss the indictment.

*273*. The Court must inquire whether the actions complained of are part of a prosecutor's traditional functions, *see, e.g.*, *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1147-48 (2d. Cir.1995) and "whether [they] are closely associated with the judicial process." *Burns v. Reed*, 500 U.S. 478, 495 (1991). ADA Scotti's participation in the lineup was not rooted in "the professional evaluation of the evidence assembled by the police," nor were his acts preparing for "presentation at trial before a grand jury after a decision to seek an indictment has been made." *Buckley, supra*. Scotti's acts were part of the investigatory phase of the criminal process and did not require any professional evaluation on his part. *See, e.g. Lacey v. Arizona*, 693 F.3d 896, 914 (9th. Cir. 2012). As such, he is not entitled to absolute immunity. In any event, the full nature of ADA Scotti's involvement and any potentially applicable immunity defense should be determined after the completion of discovery and not based on the pleadings.

      Contrary to defendants' assertions, plaintiff's complaint contains sufficient facts to assert a valid claim against the City under *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). *See Complaint,* ¶¶ 49-54, 77-87, 188-224. The assertions in the complaint are not conclusory but are supported by specifics factual references such as the findings of the Mollen Report. Compl. ¶ 208. In *Collins v. City of N.Y.*, 923 F. Supp. 2d 462, (E.D.N.Y. 2013), the Court held that The Mollen Report established that the misconduct underlying the case was sufficiently widespread to support an inference of deliberate indifference. Plaintiff's complaint adequately pleads: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of N.Y.*, 490 F.3d 189, 195 (2d. Cir. 2007). Moreover, Section 1983 municipal liability may lie if a plaintiff establishes a municipality's failure to provide adequate training, discipline, or supervision, which rises to the level of deliberate indifference or demonstrates unlawful practices by subordinates that are so permanent and widespread as to essentially have the force of law. *See, e.g., Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d. Cir. 2012). A decision by a District Attorney not to train assistants in their legal duty to avoid violating constitutional rights, as alleged here, rises to an official government policy for §1983 purposes if the failure to train amounts to deliberate indifference to the rights of persons with whom the untrained employees come into contact. *Connick v. Thompson*, 131 S. Ct. 1350, 1354; *Bailey v. City of New York*, 1:14-CV-02091-JBW-VMS (E.D.N.Y. 2015). When a District Attorney evinces a pattern of ignoring law enforcement improprieties and misconduct (*Gentile v. County of Suffolk*, 926 F.2d 142), or fails to train and supervise ADAs regarding *Brady* and other legal obligations (*Walker v. City of New York*, 974 F.2d 293, *cert. denied* 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762), such management failures correlate with defects in the District Attorney's role as a <u>local</u> policymaker. *Ramos v. City*, 285 A.D.2d 284 (1st. Dept., 2001).

      With respect to defendants' assertion that qualified immunity requires dismissal, plaintiff cannot adequately address this argument as the parties are incorrectly identified in defendants' letter as "ADA Scotty and Det. Brown [sic]." It is impossible to tell whether the argument is being made with respect to ADA Scotti and Det. Koch or ADA Scotti and DA Brown. Defendants' argument that at least five judges found their conduct proper is of no moment in light of the fact that the Court of Appeals determined that there was a constitutional deprivation <u>and</u> that Koch knew or should have known that his conduct violated plaintiff's rights. As such, Koch is not entitled to qualified immunity. Whether ADA Scotti is entitled to qualified immunity is a question that cannot be resolved until after discovery.

      Likewise, plaintiff's prolonged detention claim is also validly asserted. *See Russo v. City*

*of Bridgeport*, 479 F.3d 196 (2d. Cir. 2007).  Defendants' failure to investigate and to divulge exculpatory evidence directly resulted in plaintiff's prolonged detention. *See Complaint, ¶¶ 146-153*.

   Finally, assuming, without conceding that defendant, Brown may not be sued in his official capacity, as discussed above, the actions of the District Attorney, as policymaker for the City can be the basis for liability and therefore dismissal at this stage of the proceedings would be at the very least premature.

   For the foregoing reasons, along with other reasons, Defendants' do not possess a good faith basis to move to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6).

             Respectfully Submitted,

             Richard Gross

Cc: Liza Sohn (via ECF)
   Rose Weber