14 Civ. 5888 (NG)(RER)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SEBASTIAN DELAMOTA,

Plaintiff,

-against-

CITY OF NEW YORK AND DETECTIVE KOCH,

Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*
*Attorney for defendants The City of New York,*
*and Det. Koch*
*100 Church Street*
*New York, New York  10007*

*Of Counsel:  Barry Myrvold and Liza Sohn*
*Tel:  (212) 356-2354*
*Matter No.:  2014-036827*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ iv

PRELIMINARY STATEMENT .................................................................................................. 1

PROCEDURAL HISTORY ......................................................................................................... 1

FACTUAL BACKGROUND ....................................................................................................... 2

STANDARD OF REVIEW .......................................................................................................... 3

ARGUMENT

        POINT I

                PLAINTIFF'S FALSE ARREST AND
                IMPRISONMENT CLAIM MUST BE
                DISMISSED AS TIME-BARRED ...................................................... 4

        POINT II

                PLAINTIFF'S MALICIOUS
                PROSECUTION CLAIMS SHOULD BE
                DISMISSED ...................................................................................... 6

        POINT III

                PLAINTIFF FAILS TO ALLEGE A § 1983
                CONSPIRACY CLAIM AGAINST KOCH,
                BROWN AND SCOTTI ................................................................. 10

        POINT IV

                QUEENS COUNTY DISRICT ATTORNEY
                RICHARD A. BROWN AND ASSISTANT
                DISTRICT ATTORNEY PAUL SCOTTI
                ARE ENTITLED TO ABSOLUTE
                IMMUNITY ..................................................................................... 12

**Page**

POINT V

        KOCH AND SCOTTI ARE ENTITLED TO QUALIFIED IMMUNITY BECAUSE THERE WAS, AT LEAST, ARGUABLE PROBABLE CAUSE TO ARREST AND PROSECUTE PLAINTIFF...............................................................16

POINT VI

        PLAINTIFF'S CLAIM BASED ON PROCEDURAL AND SUBSTANTIVE DUE PROCESS MUST BE DISMISSED..................................................21

POINT VII

        PLAINTIFF'S CLAIM BASED ON AN UNDULY SUGGESTIVE IDENTIFICATION PROCEDURE MUST BE DISMISSED ........................................................................22

POINT VIII

        PLAINTIFF'S FAILURE TO INTERVENE CLAIMS MUST BE DISMISSED ....................................................23

POINT IX

        PLAINTIFF'S CLAIM BASED ON A BRADY VIOLATION SHOULD BE DISMISSED ........................................................................24

POINT X

        PLAINTIFF'S MONELL CLAIM IS DISMISSIBLE.........................................................................................25

           A. Plaintiff's Monell Claim Fails For Failure to Prove the Existence of an Underlying Constitutional Violation....................................25

           B. Plaintiff Has Failed To Allege The Existence of a Formal Policy Or Custom Adopted By The City Of New York ................................................................................25

**Page**

    C.  Plaintiff Has Failed To Show That An Official at The Policy Making Level Caused His Injuries .............................................................. 27

    D.  Plaintiff Fail to Sufficiently Allege a Monell Claim Based on a Failure to Train ..................................................................................... 28

    E.  Plaintiff Cannot Establish Causation ................................... 31

CONCLUSION ......................................................................................................... 33

# TABLE OF AUTHORITIES

**Cases**                                                                                                      **Pages**

Albright v. Oliver,
  510 U.S. 266 (1994).................................................................................................. 21

Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011),
  131 S. Ct. 2074 (2011)............................................................................................... 7

Ambrose v. City of New York,
  623 F. Supp. 2d 454 (S.D.N.Y. 2009)...................................................................... 21

Ameduri v. Vill. of Frankfort,
  10 F. Supp. 3d 320 (N.D.N.Y. Mar. 31, 2014) ....................................................... 31

Amnesty Am. v. Town of W. Hartford,
  361 F.3d 113 (2d Cir. 2004)............................................................................... 28, 31

Anderson v. Creighton,
  483 U.S. 635 (1987).................................................................................................. 17

Arrocha v. City Univ. of New York,
  878 F. Supp. 2d 364 (E.D.N.Y. 2012) ................................................... 4, 8, 22, 31, 33

Ashcroft v. Iqbal,
  556 U.S. 662 (2009)............................................................................................... 3, 4

Barrett v. United States,
  798 F.2d 565 (2d Cir. 1986)..................................................................................... 14

Batista v. Rodriguez,
  702 F.2d 393 (2d Cir. 1983)..................................................................................... 28

Bell Atlantic Corp. v. Twombly,
  550 U.S. 544 (2007)........................................................................................ 3, 4, 15

Bermudez v. City of N.Y.,
  No. 11 Civ. 750 (LAP), 2013 U.S. Dist. LEXIS 20371
  (S.D.N.Y. Feb. 13, 2013), (S.D.N.Y. Feb. 14, 2013) ....................................... 11, 15

Berry v. Berghuis,
  No. 1:09-cv-4, 2011 U.S. Dist. LEXIS 50392 (W.D. Mich. Apr. 12, 2011) .......... 19

Board of the County of Comm'rs of Bryan County v. Brown,
  520 U.S. 397 (1997).................................................................................................. 28

iv

**Cases**                                                                                              **Pages**

Boyd v. City of New York,
   336 F.3d 72 (2d Cir. 2003)..................................................................................... 9

Brady v. Maryland,
   373 U.S. 83, 87 (1963)...................................................................................... 24

Brandon v. City of New York,
   705 F. Supp. 2d 261, 273 (S.D.N.Y. 2010)............................................................. 9

Briscoe v. LaHue,
   460 U.S. 325 (1983)......................................................................................... 10

Brosseau v. Haughen,
   543 U.S. 194 (2004)......................................................................................... 18

Brown v. New York,
   459 N.Y.S.2d 589 (1st Dep't 1983) ....................................................................... 6

Buckley v. Fitzsimmons,
   509 U.S. 259 (1993)..................................................................................... 12, 13

Campbell v. Giuliani,
   No. 99-CV-2603 (JG), 2001 U.S. Dist. LEXIS 609 (S.D.N.Y. Jan. 24, 2001) ......................... 7

Chepilko v. City of New York,
   No. 06-cv-5491 (ARR) (LB), 2012 U.S. Dist. LEXIS 15110, (E.D.N.Y. Feb. 6, 2012)........ 23

Ciambriello v. Cnty. of Nassau,
   292 F.3d 307 (2d Cir. 2002)................................................................................. 10

City of Canton, Ohio v. Harris, et al.,
   489 U.S. 378, 388 (1989)................................................................................... 28

City of Okla. City v. Tuttle,
   471 U.S. 808 (1985)......................................................................................... 27

Cleveland v. Caplaw Enters.,
   448 F.3d 518 (2d Cir. 2006)................................................................................... 3

Cole v. New York City Police Department,
   94-cv-2070 (FB), 1998 U.S. Dist. LEXIS 12430, (E.D.N.Y. Aug. 7, 1998)........................... 32

Collins v. City of New York,
   923 F. Supp. 2d 462 (E.D.N.Y. 2013) ................................................................... 13

**Cases**                                                                       **Pages**

Connick v. Thompson,
   131 S. Ct. 1350 (2011) ................................................................ 26, 28, 29, 30

Cotto v. Pabon,
   2008 U.S. Dist. LEXIS 94564 (S.D.N.Y. Nov. 20, 2008) ...................................... 8

Daloia v. Rose,
   849 F.2d 74 (2d Cir. 1988) ................................................................ 10

Day v. Morgenthau,
   909 F.2d 75 (2d Cir. 1990) ................................................................ 12

Doe v. City of New York,
   09-cv-9895, 2013 U.S. Dist. LEXIS 30010, (S.D.N.Y. Mar. 4, 2013) .................................. 32

Doe v. Phillips,
   81 F.3d 1204 (2d Cir. 1996) ................................................................ 12

Dory v. Ryan,
   25 F.3d 81 (2d Cir. 1994) ................................................................ 13, 14

Dwares v. City of N.Y.,
   985 F.2d 94 (2d Cir. 1993) ................................................................ 10

Galliotti v. Green,
   No. 07-CV-6601, 2011 U.S. Dist. LEXIS 78118 (W.D.N.Y. July 19, 2011) ......................... 16

Gaston v. Coughlin,
   249 F.3d 156 (2d Cir. 2001) ................................................................ 15

Giraldo v. Kessler,
   694 F.3d 161 (2d Cir. 2012) ................................................................ 13

Golino v. City of New Haven,
   950 F.2d 864 (2d Cir. 1991) ................................................................ 18

Harlow v. Fitzgerald,
   457 U.S. 800 (1982) ................................................................ 16

Harrison v. Lutheran Med. Ctr.,
   468 F. App'x 33 (2d Cir. 2012) ................................................................ 4

Hartman v. Moore,
   547 U.S. 250 (2006) ................................................................ 13

**Cases**                                                                                   **Pages**

Hayes v. County of Sullivan,
   853 F. Supp. 2d 400 (S.D.N.Y. 2012).................................................................. 10

Hayes v. Perotta,
   751 F. Supp. 2d 597 (S.D.N.Y. 2010).................................................................. 27

Henry-Lee v. City of New York,
   746 F. Supp. 2d 546 (S.D.N.Y. 2010).................................................................. 25

Hickey v. City of New York,
   No. 01-CV-6506, 2004 U.S. Dist. LEXIS 23941, (S.D.N.Y. Nov. 29, 2004),
   aff'd, 173 F. App'x 893 (2d Cir. 2006)................................................................. 5

Hill v. City of New York,
   45 F.3d 653 (2d Cir. 1995)............................................................................. 12, 13

Hill v. Melvin,
   2006 U.S. Dist. LEXIS 43006 (S.D.N.Y. June 27, 2006)........................................ 8

Hope v. Pelzer,
   536 U.S. 730 (2002)........................................................................................ 19

Husbands v. City of New York,
   335 Fed. Appx. 124 (2d Cir. 2009)..................................................................... 6

Imbler v. Pachtman,
   424 U.S. 409 (1976)..................................................................................... 12, 13

Jackson v. City of New York,
   939 F. Supp. 2d 219 (E.D.N.Y. 2013) ................................................................ 23

Jones v. The City of New York,
   988 F. Supp. 2d 305 (E.D.N.Y. 2013) ....................................................... 25, 28, 30

Kinzer v. Jackson,
   316 F.3d 139 (2d Cir. 2003).............................................................................. 6

Lawson v. Rochester City Sch. Dist.,
   446 F. App'x 327 (2d Cir. 2011)........................................................................ 5

Liang v. City of New York,
   No. 10-CV-3089 (ENV), 2013 U.S. Dist. LEXIS 136795 (E.D.N.Y. Sept. 24, 2013).............. 4

Little v. City of New York,
   487 F. Supp. 2d 426, 442 n. 9 (S.D.N.Y. 2007)..................................................... 7

**<u>Cases</u>**                                                                                          **<u>Pages</u>**

<u>Lynch v. Suffolk Cnty. Police Dep't, Inc.</u>,
   348 F. App'x 672 (2d Cir. 2009) ................................................................. 5

Malley v. Briggs,
   475 U.S. 335, 341 (1986) ........................................................................ 17

<u>Manganiello v. City of New York</u>,
   612 F.3d 149 (2d Cir. 2010) .................................................................... 18

<u>McClellan v. Smith</u>,
   439 F.3d 137 (2d Cir. 2006) ................................................................. 8, 9

<u>McGarry v. Pallito</u>,
   687 F.3d 505 (2d Cir. 2012) ................................................................... 17

<u>McLennon v. Vorraro</u>,
   13-cv-128 (KAM) (SMG), 2015 U.S. Dist. LEXIS 42920, (E.D.N.Y. Mar. 31, 2015) ........... 4

<u>Melendez v. Greiner</u>,
   477 F. App'x 801 (2d Cir. 2012),
   <u>cert. denied</u>, 185 L. Ed. 2d 207 (2013) ....................................................... 4

<u>Monell v. Dep't of Soc. Servs.</u>,
   436 U.S. 658 (1978) ............................................................ 26, 28, 30, 31

<u>Morrissey v. City of New York</u>,
   963 F. Supp. 270 (S.D.N.Y. May 5, 1997) ...................................................... 31

<u>Newton v. City of New York</u>,
   566 F. Supp. 2d 256 (S.D.N.Y. 2008), 681 F. Supp. 2d 473 (S.D.N.Y. 2010).............. 22, 29

<u>O'Neill v. Krzeminski</u>,
   839 F.2d 9 (2d Cir. 1988) ...................................................................... 24

<u>Okin v. Vill. Of Cornwall-On-Hudson Police Dep't</u>,
   577 F.3d 415 (2d Cir. 2009) ................................................................... 17

<u>Osuna v. City of New York</u>,
   No. 08 cv 4759 (JSR), 2009 U.S. Dist. LEXIS 66282 (S.D.N.Y. July 30, 2009) ................. 21

<u>Pangburn v. Culbertson</u>,
   200 F.3d 65 (2d Cir. 1999) .................................................................... 10

<u>Parkinson v. Cozzolino</u>,
   238 F.3d 145 (2d Cir. 2001) ................................................................... 12

viii

**Cases**                                                                                     **Pages**

Pearson v. Callahan,
   555 U.S. 223 (2009)..................................................................................... 16, 17

Pembaur v. City of Cincinnati,
   475 U.S. 469, 89 L. Ed. 2d 452, 106 S. Ct. 1292 (1986)................................... 26, 27

People v. Delamota,
   18 Misc. 3d 1130(A) (N.Y. Sup. Ct. 2008), 859 N.Y.S.2d 905, 18 N.Y.3d 107,
   2013 U.S. Dist. LEXIS 7836 (N.Y., Nov. 17, 2011), (Oct. 11, 2011),
   74 A.D.3d 1225, 905 N.Y.S.2d 621 (2d Dep't 2010) ..................................... 2, 3, 6, 18, 20, 24

Peterson v. Regina,
   (S.D.N.Y. Jan. 18, 2013)............................................................................... 8

Pinaud v. County of Suffolk,
   52 F.3d 1139 (2d Cir. 1995)........................................................................... 12, 13, 14

Posr v. Court Officer Shield,
   No. 207, 180 F.3d 409 (2d Cir. 1999)............................................................. 16

Ramashwar v. Espinoza,
   2006 U.S. Dist. LEXIS 130 (S.D.N.Y. Jan. 5, 2006) ..................................... 8

Rehberg v. Paulk,
   132 S. Ct. 1497 (2012)................................................................................... 9

Ricciuti v. New York City Transit Auth.,
   70 F. Supp. 2d 300 (S.D.N.Y. 1999).............................................................. 6

Richards v. City of New York,
   No. 97 Civ. 7990 (MBM), 2003 U.S. Dist. LEXIS 8037 (S.D.N.Y. 2003)............... 7

Rodriguez v. State of New York,
   No. 95 Civ. 3639(SHS), 1996 U.S. Dist. LEXIS 5353 (S.D.N.Y. Apr. 23, 1996)........... 7

Rohman v. New York City Transit Auth.,
   215 F.3d 208 (2d Cir. 2000)........................................................................... 6

Romero v. McEwen,
   No. CV-11-5117-VBF (JPR), 2012 U.S. Dist. LEXIS 94018,
   (C.D. Cal. Jan. 17, 2012) ............................................................................. 19

Rothstein v. Carriere,
   373 F.3d 275 (2d Cir. 2004)........................................................................... 8

| **Cases** | **Pages** |
|---|---|

Rounsville v. Zahl,
13 F.3d 625 (2d Cir. 1994).................................................................................. 6

Sarus v. Rotundo,
831 F.2d 397 (2d Cir.1987)........................................................................... 28, 29

Savino v. City of New York,
331 F.3d 63 (2d Cir. 2003)............................................................................... 6, 8

Scott v. Fischer,
616 F.3d 100 (2d Cir. 2010)............................................................................... 17

Shmueli v. City of New York,
424 F.3d 231 (2d Cir. 2005)............................................................................... 13

Sikarevich Family L.P. v. Nationwide Mutual Insurance Co.,
30 F. Supp. 3d 166 (E.D.N.Y. 2014) ................................................................... 3

Singer v. Fulton County Sheriff,
63 F.3d 110 (2d Cir. 1995)........................................................................... 7, 8, 21

Smith v. Schweiloch,
12-Civ-3253, 2012 U.S. Dist. LEXIS 84194 (S.D.N.Y. June 15, 2012) ............... 15

Smith v. Tobon,
529 F. App'x 36 (2d Cir. 2013) ........................................................................... 6

Snow v. Vill. of Chatham,
84 F. Supp. 2d 322 (N.D.N.Y. 2000) ................................................................. 21

Sorlucco v. New York City Police Dep't,
971 F. 2d 864 (2d Cir. 1992).............................................................................. 28

Spavone v. New York State Department of Correctional Services,
719 F.3d 127 (2d Cir. 2013)............................................................................... 15

Stansbury v. Wertman,
721 F.3d 84 (2d Cir. 2013).................................................................................. 7

Stanton v. Sims,
134 S. Ct. 3 (2013)............................................................................................. 16

Strickler v. Greene,
527 U.S. 263 (1999)........................................................................................... 24

x

**Cases**                                                                                        **Pages**

Taravella v. Town of Wolcott,
    599 F.3d 129 (2d Cir. 2010)................................................................. 17

Taylor v. Kavanaugh,
    640 F.2d 450 (2d Cir. 1981)................................................................. 25

Tolan v. Cotton,
    134 S. Ct. 1861 (2014)........................................................................ 17

United States v. Coppa,
    267 F.3d 132 (2001)............................................................................ 24

United States v. Martinez,
    C.A. No. 11-16-GMS, 2012 U.S. Dist. LEXIS 103608, (D. Del. July 25, 2012)................... 19

United States v. Shakur,
    560 F. Supp. 313 (S.D.N.Y. March 28, 2918 .......................................... 9

Van de Kamp v. Goldstein,
    555 U.S. 335 (2009)........................................................................ 16, 25

Vanderwoude v. City of New York,
    12 Civ. 9046 KPF, 2014 U.S. Dist. LEXIS 79064 (S.D.N.Y. June 10, 2014) .......................... 7

Walker v. City of New York,
    974 F.2d 293 (2d. Cir. 1992),
    cert. denied, 507 U.S. 961 (1993) ........................................................ 25

Wallace v. Kato,
    549 U.S. 384 (2007)............................................................................ 5

Warney v. Monroe County,
    587 F.3d 113 (2d Cir. 2009)............................................................. 12

Webb v. Goord,
    340 F.3d 105 (2d Cir. 2003)............................................................. 10

Wray v. City of New York,
    490 F.3d 189 (2d. Cir. 2007)............................................................ 22

Ying Jing Gan v. City of New York,
    996 F.2d 522 (2d Cir. 1993)............................................................. 16

**Statutes**

Fed. R. Civ. P. 12(b)(6)................................................................................ 33

## PRELIMINARY STATEMENT

Plaintiff alleges that Detective Bruce Koch violated his rights by using the complainant's son as an interpreter during a photo identification procedure wherein plaintiff was identified as the perpetrator.  Plaintiff alleges that because there was a danger that the son knew plaintiff, the photo identification was unduly suggestive and should have been suppressed.  The complaint, however, contains few facts regarding the identification procedure and instead relies on conclusory legal statements that bear no relation to the identification, including a <u>Monell</u> claim based on reports of general police practices.  Defendants respectfully submit that Koch is entitled to qualified immunity, and that the decision of the <u>Wade</u> court not to suppress the identification constituted an intervening factor that precludes plaintiff's recovery for Koch's acts.  Plaintiff's remaining claims fail as well:  the false arrest claim is time-barred; the malicious prosecution claim is dismissible as there was probable cause for the prosecution; the claims against the Queens County District Attorney Richard Brown and Assistant District Attorney John Scotti must be dismissed because they are entitle to absolute immunity, and; the <u>Monell</u> claim is dismissible as plaintiff has failed to allege a policy or custom that cause his violation, and further failed to show deliberate indifference to make out a failure to train claim.  For these and other reasons set forth below, defendants move the Court to dismiss plaintiff's complaint in its entirety.

## PROCEDURAL HISTORY

Plaintiff filed a complaint on October 8, 2014 against the City of New York, Detective Bruce Koch, Queens County District Attorney Richard A. Brown, and ADA John Scotti.  Exhibit A, Complaint, dated October 6, 2014.[1]  Plaintiff alleges false arrest and

---

[1] Unless otherwise noted, the exhibits referenced herein are attached to the Declaration of Liza Sohn.

imprisonment, malicious prosecution, conspiracy, denial of procedural and substantive due process, an unspecified violation based on ADA Scotty's investigatory functions, unreasonably prolonged detention, unreasonable continued prosecution, unduly suggestive identification procedures, failure to intervene, failure to investigate, violations of plaintiff's rights based on a Brady violation, municipal liability, and for attorneys' fees.  Defendants move to dismiss the complaint in its entirety.

## FACTUAL BACKGROUND

On October 27, 2006, complainant Juan Hernandez was robbed at knifepoint in the elevator of his apartment located at 89-21 Elmhurst Avenue, Queens New York.  Exhibit "B," People v. Delamota, 18 Misc. 3d 1130(A) (N.Y. Sup. Ct. 2008).  Hernandez's son called "911" pretending to be his father.  Exhibit "D," People v. Delamota, 18 N.Y.3d 107, 110 (N.Y., Nov. 17, 2011).  Following the 911 call, Det. Koch spoke to Hernandez and his son at the precinct that night, and the son translated for his father.  Id.  A few days after the incident, the son told Det. Koch that he had heard from neighborhood gossip that the perpetrator was "Sebastian."  Id.  Det. Koch showed Hernandez a photo array containing a photograph of plaintiff, and Hernandez identified plaintiff as the individual who had robbed him.  Id.  Hernandez's son interpreted for his father at the photo array.  Ex. A, ¶ 12.  Thereafter, Hernandez identified plaintiff in a lineup, with a Spanish-speaking detective as an interpreter.  Ex. D, People v. Delamota, at 111.  On or about January 17, 2007, plaintiff was taken to the 110th precinct in Queens, New York and placed under arrest by Det. Koch.  Ex. A, ¶ 2.  Plaintiff was indicted by a Grand Jury.  Ex. A, ¶ 18.  At a Wade hearing, plaintiff's defense counsel moved to suppress the photo array, but the application was denied. Exhibit "E," transcript of Wade hearing held on June 15, 2007.  On October 4, 2007, plaintiff was convicted of robbery in the first degree, criminal possession of a weapon in the third degree, and menacing in the second degree.  Ex. A, ¶ 19.  On

February 13, 2008, the trial court denied plaintiff's motion to set aside his conviction and for a new trial.  Ex. A, ¶21. Ex. B, <u>People v. Delamota</u>, 18 Misc. 3d 1130(A) ("Even considering such inconsistencies, there is absolutely no basis other than utter speculation that the complainant's son in any way whatsoever influenced the photograph array identification made by the complainant warranting a ruling suppressing the complainant's identification testimony.").  On June 22, 2010, the Appellate Division affirmed the trial Court's denial of plaintiff's motion, noting that plaintiff "failed to show that the evidence adduced at trial constituted additional pertinent facts which could not have been discovered by him with reasonable diligence before the determination of that branch of his omnibus motion which was to suppress identification evidence and which would have materially affected that determination."  Ex. A, ¶ 23 and Sohn Decl. Exhibit "C," <u>People v. Delamota</u>, 74 A.D.3d 1225 (N.Y. App. Div. 2d Dep't, June 22, 2010).  On November 17, 2011, the Court of Appeals overturned plaintiff's conviction and remanded the case for a new trial preceded by an independent source hearing.  Ex. A, ¶ 25, and Sohn Decl. Exhibit "D," <u>People v. Delamota</u>, 18 N.Y.3d 107 (N.Y., Nov. 17, 2011).

### STANDARD OF REVIEW

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court accepts as true all well-pleaded factual allegations and draws all inferences in the plaintiff's favor. Sikarevich Family L.P. v. Nationwide Mut. Ins. Co., 30 F. Supp. 3d 166, 170 (E.D.N.Y. 2014), citing <u>Cleveland v. Caplaw Enters.</u>, 448 F.3d 518, 521 (2d Cir. 2006).  A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft</u>, 556 U.S. at 678.  Though a plaintiff need not include "'detailed

3

factual allegations,'" a pleading offering "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Id. at 678 (quoting Twombly, 550 U.S. at 555, 557).

In deciding a motion to dismiss under Rule 12(b)(6), a district court may consider "[1] the pleading itself, [2] documents that are referenced in the complaint, [3] documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and [4] matters of which judicial notice may be taken." McLennon v. Vorraro, 13-cv-128(KAM)(SMG), 2015 U.S. Dist. LEXIS 42920, at *12 (E.D.N.Y. Mar. 31, 2015) (citing Arrocha v. City Univ. of N.Y., 878 F. Supp. 2d 364, 368 (E.D.N.Y. 2012).  The court may take judicial notice of public records such as arrest reports, certificates of disposition, criminal complaints, DD5s, and indictments.  Id.; see, e.g., Liang v. City of New York, No. 10-CV-3089(ENV)(VVP), 2013 U.S. Dist. LEXIS 136795, at *15-18 (E.D.N.Y. Sept. 24, 2013).  Here, the Court may take judicial notice of the indictment, the state court decisions related to the underlying criminal case, as well as the Wade hearing minutes, which was a judicial proceeding addressing the propriety of the photo identification procedure which forms the basis of plaintiff's complaint.

**ARGUMENT**

**POINT I**

**PLAINTIFF'S FALSE ARREST AND IMPRISONMENT CLAIM MUST BE DISMISSED AS TIME-BARRED**

The statute of limitations for a § 1983 action arising in New York is three years. Melendez v. Greiner, 477 F. App'x 801, 803 (2d Cir. 2012) (summary order), cert. denied, 133 S. Ct. 1266, 185 L. Ed. 2d 207 (2013); Harrison v. Lutheran Med. Ctr., 468 F. App'x 33, 36 (2d Cir. 2012) (summary order); Lawson v. Rochester City Sch. Dist., 446 F. App'x 327, 328 (2d

4

Cir. 2011) (summary order).  While state law supplies the statute of limitations, federal law determines when the § 1983 claim has accrued.  Wallace v. Kato, 549 U.S. 384, 388 (2007).  For claims of false arrest and false imprisonment[2] the statute of limitations begins to run "when the alleged false imprisonment ends."  Wallace, 549 U.S. at 389.  An alleged false imprisonment "ends once the victim becomes held pursuant to such process — when, for example, he is bound over by a magistrate or arraigned on charges."  Id. at 389 (emphasis in original); accord Lynch v. Suffolk Cnty. Police Dep't, Inc., 348 F. App'x 672, 675 (2d Cir. 2009) (summary order).

Plaintiff was arrested on January 17, 2007, and, although the conclusory allegations in the complaint omit the date plaintiff was arraigned, it is beyond cavil that the arraignment occurred before he was indicted on April 6, 2007.  Ex. A, ¶¶ 2, 14-15, 18-19; Ex. F (Indictment).  Plaintiff did not file his complaint until October 8, 2014, (see 1:14-cv-05888-NG-RER, Dkt. No. 1), which is over four years past the three year limitations period which accrued between the January 17, 2007 arrest and April 6, 2007 indictment.  Wallace, 549 U.S. at 389 (noting that false arrest accrues when "the alleged false imprisonment ends"); see also Lynch, 348 F. App'x at 675 (holding that the three-year statute of limitations for § 1983 claims for false arrest and imprisonment began to run at arraignment).  Accordingly, plaintiff's false arrest and false imprisonment claim, Ex. A ¶¶ 96-101, must be dismissed.

---

[2] False arrest and false imprisonment are considered one tort.  Wallace v. Kato, 549 U.S. 384 at 388 ("False arrest and false imprisonment overlap; the former is a species of the latter."); Hickey v. City of New York, No. 01-CV-6506, 2004 U.S. Dist. LEXIS 23941, at *21 (S.D.N.Y. Nov. 29, 2004), aff'd, 173 F. App'x 893 (2d Cir. 2006) ("[T]he claims of false arrest and false imprisonment are 'synonymous[.]'").

**POINT II**

**PLAINTIFF'S MALICIOUS PROSECUTION CLAIMS SHOULD BE DISMISSED**

To prevail on a malicious prosecution claim under § 1983, a plaintiff must demonstrate that an officer: (1) initiated or continued a criminal proceeding; (2) a termination of the proceeding in plaintiff's favor; (3) an absence of probable cause for the proceeding; (4) actual malice as a motive for defendant's actions; and (5) a post-arraignment deprivation of liberty.  See, e.g., Rohman v. New York City Transit Auth., 215 F.3d 208, 216 (2d Cir. 2000); Kinzer v. Jackson, 316 F.3d 139, 143 (2d Cir. 2003).  Plaintiff must allege and prove each such element to succeed on a claim.  See Ricciuti v. New York City Transit Auth., 70 F. Supp. 2d 300, 321 (S.D.N.Y. 1999).

Probable cause is a complete bar to a malicious prosecution claim.  Smith v. Tobon, 529 F. App'x 36, 38 (2d Cir. 2013) (citing Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003)); Husbands v. City of New York, 335 Fed. Appx. 124, 128 (2d Cir. 2009). "Probable cause does not require a 'certitude' that a crime has been committed by a suspect. Rather, a malicious prosecution connotes a decision to proceed maliciously with the prosecution of an individual where probable cause is clearly lacking."  Brown v. New York, 459 n.Y.S.2d 589, 591 (1st Dep't 1983) (emphasis added).  When evaluating whether there was probable cause to initiate a prosecution, the Court must evaluate the information that existed at the time when the prosecution was initiated.  Rounsville v. Zahl, 13 F.3d 625, 630 (2d Cir. 1994).

At the time that the prosecution was initiated, aside from the victim's identification of plaintiff in the alleged suggestive photo array, the victim had subsequently identified plaintiff in a separate line-up.[3] Ex. E, at 19:15-25:14; People v. Delamota, 18 N.Y.3d

---

[3] Moreover, to the extent that plaintiff relies upon a claim that he was identified in a suggestive photo array in violation of his due process rights, plaintiff cannot recover in this action, as his sole remedy was in the context of a suppression hearing in the underlying criminal case.  Little v. City of New York, 487

107, 936 n.Y.S.2d 614, 617 (2011).[4]   Furthermore, as the trial court indicated, "[e]ven

considering such inconsistencies, there is absolutely no basis other than utter speculation that the

complainant's son in any way whatsoever influenced the photograph array identification made

by the complainant warranting a ruling suppressing the complainant's identification testimony."

Ex. B, 18 Misc. 3d 1130(A).  Because the police had a positive identification by the victim, there

was probable cause to arrest and prosecute plaintiff.  Stansbury v. Wertman, 721 F.3d 84, 90 (2d

Cir. 2013) ("'[A]bsent circumstances that raise doubts as to the victim's veracity,' a victim's

identification is typically sufficient to provide probable cause.") (quoting Singer v. Fulton

County Sheriff, 63 F.3d 110, 119 (2d Cir. 1995)); Vanderwoude v. City of New York, 12 Civ.

9046 KPF, 2014 U.S. Dist. LEXIS 79064, at *48 (S.D.N.Y. June 10, 2014) (positive victim

identifications, where plaintiff matched the description of the perpetrator, created probable

cause) (citing Rodriguez v. State of New York, No. 95 Civ. 3639(SHS), 1996 U.S. Dist. LEXIS

5353, at *7-8 (S.D.N.Y. Apr. 23, 1996) ("[I]dentification of an individual as a perpetrator of a

crime by a putative victim of, or eyewitness to, the crime is in itself sufficient to establish

probable cause, as long as it is reasonable to believe that the putative victim or eyewitness is

telling the truth" (collecting cases)); Campbell v. Giuliani, No. 99-CV-2603 (JG), 2001 U.S.

Dist. LEXIS 609 at *9 (S.D.N.Y. Jan. 24, 2001) ("Indeed, as sources of information go, crime

victims are among the most reliable; they usually can provide a first-hand non-hearsay account

of the criminal activity."); Richards v. City of New York, No. 97 Civ. 7990 (MBM), 2003 U.S.

Dist. LEXIS 8037 at *51-52 (S.D.N.Y. 2003) (finding probable cause based on an eyewitness

---

F. Supp. 2d 426, 442 n. 9 (S.D.N.Y. 2007) (holding that sole remedy for prejudicial line-ups is
suppression of evidence at trial, not a § 1983 claim.

[4] The Court of Appeals did not dismiss the criminal case outright based on the suggestive identification,
but rather, the majority directed that a new trial be held preceded by an independent source hearing.
Delamota, 936 N.Y.S.2d at 622.

identification of plaintiff).  That probable cause negates plaintiff's malicious prosecution claim as a matter of law.  See Weyant, supra, 101 F.3d at 852; Singer, supra, 63 F.3d at 118.

Further, the existence of probable cause to pursue a prosecution is *presumed* when an individual is indicted by a grand jury.  McClellan v. Smith, 439 F.3d 137, 145 (2d Cir. 2006).  The presumption is rebutted only "by evidence that the indictment was procured by fraud, perjury, the suppression of evidence, or other police misconduct undertaken in bad faith."  Savino v. City of New York, 331 F.3d 63 at 69.  To rebut the presumption, a plaintiff must present more than mere conjecture and surmise that his indictment was procured as a result of conduct undertaken in bad faith.  Peterson v. Regina, 2013 U.S. Dist. LEXIS 7836 at *33 (S.D.N.Y. Jan. 18, 2013); Ramashwar v. Espinoza, 2006 U.S. Dist. LEXIS 130 at *8 (S.D.N.Y. Jan. 5, 2006).  The required showing must be of conduct so serious as to erode the premise that the grand jury acts in a judicial capacity.  Rothstein v. Carriere, 373 F.3d 275, 284 (2d Cir. 2004).  However, where a plaintiff can offer only his own, conflicting version of events and no other evidence, such self-serving allegations are *insufficient* to rebut the presumption of probable cause.  Peterson, 2013 U.S. Dist. LEXIS 7836 at *35.  Conflicting testimony of witnesses at trial together with an acquittal does not create an inference that an officer lied so as to rebut the presumption for the purpose of defeating summary judgment.  Ramashwar, 2006 U.S. Dist. LEXIS 130 at *29-31.[5]

For example, in Peterson, plaintiff relied solely on his own version of the facts, which conflicted with those of the police officers, to rebut the presumption of probable cause arising from an indictment.  Plaintiff in that case contended that an undercover officer had approached him with a request to buy drugs, which he declined.  He was arrested minutes later.  He then claimed to have

---

[5] See also Hill v. Melvin, 2006 U.S. Dist. LEXIS 43006 at *58-60 (S.D.N.Y. June 27, 2006); Cotto v. Pabon, 2008 U.S. Dist. LEXIS 94564 at *52-54 (S.D.N.Y. Nov. 20, 2008); Brogdon, 200 F. Supp. 2d at 422.

heard the officers discuss that they had arrested the wrong man.  He was charged with criminal sale of a controlled substance, indicted by a grand jury, and acquitted after a trial.  The court recognized that plaintiff had failed to satisfy the "competing testimony plus" standard and granted the officer's motion for summary judgment dismissing plaintiff's claims for malicious prosecution.  2013 U.S. Dist. LEXIS 7836 at *35.[6]

Here, plaintiff was indicted by a grand jury.  Ex. A, ¶ 18; Ex. F.  Plaintiff's allegation that Koch withheld certain information from the grand jury, Id., at ¶¶ 40-42, are simply insufficient to overcome the presumption of probable cause created by the indictment.  The decision as to whether to present certain evidence to a grand jury is the sole province of the prosecutor and not a police officer.  See, e.g., United States v. Shakur, 560 F. Supp. 313, 316 (S.D.N.Y. March 28, 29183) ("The prosecutor controls the evidence presented to the grand jury.").  Furthermore, even assuming that the other elements were met and plaintiff could come forward with evidence to show that Koch had lied in the grand jury, this claim would still fail because Koch is entitled to absolute immunity for his testimony in the grand jury.  Rehberg v. Paulk, 132 S. Ct. 1497, 1506-07 (2012).  Koch is entitled to absolute immunity not only for his testimony, but also as to any statements that he made to prosecutors in anticipation of giving testimony.  Id. at 1506-07.  That is, preliminary discussions in which the witness relates the substance of a witness's intended testimony are also afforded absolute immunity.  Id. at 1507 (explaining that if testimony were protected, but preliminary discussions regarding grand jury testimony were not, the rule of absolute immunity would be "easily frustrated").

_____

[6] By contrast, the presumption has been overcome in other cases in which the respective courts concluded that this standard has been met with concrete evidence to raise doubts as to the officers' veracity.  See, e.g., Brandon v. City of New York, 705 F. Supp. 2d 261, 273 (S.D.N.Y. 2010) (two officers had conflicting stories, one of which supported the plaintiff's version of events; this scenario moved beyond a simple conflict or possibility of failure to recollect and posed the possibility that the officers had lied in order to secure an indictment); Boyd v. City of New York, 336 F.3d 72, 77 (2d Cir. 2003) (police paperwork as to the location of plaintiff's arrest conflicted with their grand jury testimony); McClellan, 439 F.3d at 145-46 (defendants' testimony was inconsistent through the prosecution).

9

He is similarly entitled to immunity for his testimony at trial.  Briscoe v. LaHue, 460 U.S. 325, 335-36 (1983).  The Second Circuit has also extended the absolute testimonial immunity of police officers in § 1983 malicious prosecution claims to adversarial pre-trial proceedings, such as suppression hearings.  Daloia v. Rose, 849 F.2d 74, 75-76 (2d Cir. 1988); Hayes v. County of Sullivan, 853 F. Supp. 2d 400, 422 (S.D.N.Y. 2012).  Because the alleged lies and omissions could have been relayed to the court or a jury only in a testimonial context, or to the prosecutor in preparation to give testimony, Koch is entitled to absolute immunity from liability at each stage.

Accordingly, the malicious prosecution claim must be dismissed as against Koch (and as against Scotti based on absolute immunity as discussed below, Point IV).

### POINT III

### PLAINTIFF FAILS TO ALLEGE A § 1983 CONSPIRACY CLAIM AGAINST KOCH, BROWN AND SCOTTI

A section 1983 conspiracy claim must allege "(1) an agreement between two or more state actors . . . ; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).  "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed."  Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 325 (2d Cir. 2002) (quoting Dwares v. City of N.Y., 985 F.2d 94, 100 (2d Cir. 1993)).  Specifically, a complaint "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end."  Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003) (discussing conspiracies under 42 U.S.C. § 1985).

Plaintiff's conclusory allegations do not even come close to meeting these requirements, but rather consists of boilerplate allegations that Brown, Scotti and Koch conspired

with each other (and others) to reach "a mutual understanding and thereafter acted to undertake a course of conduct to injure, oppress, threaten and intimidate plaintiff" so as to prevent him from exercising and enjoying his constitutional rights.  Ex. A, ¶ 126.  "Merely to assert that a conspiracy occurred, however, does not suffice.  Rather, plaintiff must allege specific facts that, if taken as true, make it plausible that [the defendants] had some agreement or understanding . . . to commit the alleged constitutional violations."  Bermudez v. City of N.Y., No. 11 Civ. 750(LAP), 2013 U.S. Dist. LEXIS 20371, *26-27 (S.D.N.Y. Feb. 14, 2013) (dismissing a conspiracy claim where the plaintiff alleged that the defendants "conferred and agreed not to pursue" certain evidence, "agreed not to disclose" certain information, and "actively conspired to suppress the actual events").  While plaintiff separately alleges certain wrongdoings committed by Scotti and Koch, see, e.g., Ex. A (Complaint), ¶¶ 33-43 (Koch), ¶¶ 44-46 (Scotti), nothing in the complaint plausibly suggests that these acts were done in furtherance of an agreed upon conspiracy.[7]  Plaintiff's complaint is devoid of any allegations of specific instances of conduct plausibly suggesting a conspiracy or any "meeting of the minds" beyond the fact that Koch investigated the underlying incident and was plaintiff's arresting officer, and that Scotti was a prosecutor on the case.  For this reason, plaintiff's conspiracy claim must be dismissed.

---

[7] Nothing in the complaint plausibly suggests that Brown committed any wrongful actions or had any personal involvement in the underlying prosecution, let alone entered into an agreement with Koch and Scotti to deprive plaintiff of his constitutional rights.  See, e.g., Ex. A, ¶ 51 (Brown … was in charge of training and supervision of [ADA's]", ¶ 52 (Brown … set policy for the [ADA's]".

## POINT IV

## QUEENS COUNTY DISRICT ATTORNEY RICHARD A. BROWN AND ASSISTANT DISTRICT ATTORNEY PAUL SCOTTI ARE ENTITLED TO ABSOLUTE IMMUNITY

Plaintiff's claims against Brown and Scotti are barred by the doctrine of absolute prosecutorial immunity.  A prosecutor enjoys absolute immunity for the "initiation and pursuit of a criminal prosecution" and for any acts taken in "presenting the State's case at trial."  Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993); Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976).  In other words, a state prosecutor enjoys absolute immunity when engaged in activities "intimately associated with the judicial phase of the criminal process."  Imbler, 424 U.S. at 430; see also Day v. Morgenthau, 909 F.2d 75, 77 (2d Cir. 1990).  The purpose of the immunity doctrine is to "preserve the integrity of the judicial process" and enable "zealous[] perform[ance of] prosecutorial duties" without the "constant threat of legal reprisals."  Pinaud v. County of Suffolk, 52 F.3d 1139, 1147 (2d Cir. 1995) (quoting Hill v. City of New York, 45 F.3d 653, 656 (2d Cir. 1995)) (internal quotations omitted).

In determining whether absolute immunity is available, courts employ a "functional approach" that "looks to the nature of the function performed, not the identity of the actor who performed it."  Buckley, 509 U.S. at 269; see also Parkinson v. Cozzolino, 238 F.3d 145, 150 (2d Cir. 2001) ("The actions of a prosecutor are not covered by absolute immunity merely because they were performed by a prosecutor; rather, the question is whether the actions 'are part of a prosecutor's traditional functions.'") (quoting Doe v. Phillips, 81 F.3d 1204 (2d Cir. 1996.  When an action occurs in the course of a prosecutor's role as an advocate, it is shielded by absolute immunity.  Imbler, 424 U.S. at 430-31; Warney v. Monroe County, 587 F.3d 113, 121 (2d Cir. 2009).  The relevant question is "whether a reasonable prosecutor would

12

view the acts challenged by the complaint as reasonably within the functions of a prosecutor."
Giraldo v. Kessler, 694 F.3d 161, 166 (2d Cir. 2012).  As long as the nature of the action is
prosecutorial, "absolute immunity applies to protect the prosecutor even in the face of a
complaint's allegation of malicious or corrupt intent behind the acts."  Id.; see also Buckley, 509
U.S. at 271 (noting that "harm that the conduct may have caused or the question whether it was
lawful" is irrelevant to whether absolute immunity applies); Pinaud, 52 F.3d at 1150 (2d Cir.
1995) ("[T]he extent of [prosecutorial] immunity always depends upon the nature of the activity
in question, and not upon how wrongly the particular actors may have performed that activity in
a specific instance.").

Plaintiff's malicious prosecution claim against Scotti, Ex. A, ¶¶102-124, the
"unreasonable continued prosecution" claim against Brown and Scotti, Id. at ¶¶ 156-160, and the
excessive detention claim against Brown and Scotti, Id. at ¶¶ 145-155, must be dismissed on
absolute immunity grounds.  Broadly speaking, prosecutors are absolutely immune from a claim
for damages for "initiating a prosecution," Imbler, 424 U.S. at 431; Hartman v. Moore, 547 U.S.
250, 261-62, (2006) (noting that prosecutor "is absolutely immune from liability for the decision
to prosecute"); Shmueli v. City of New York, 424 F.3d 231, 236 (2d Cir. 2005) (holding that a
prosecutor acting "within the scope of his duties in initiating and pursuing a criminal prosecution
is immune from a civil suit for damages under § 1983").  Similarly, plaintiff's claim against
Brown and Scotti based on Brady violations, Ex. A, ¶¶ 183-187, must be dismissed based on
absolute prosecutorial immunity.  See Hill v. City of New York, 45 F.3d 653, 662 (2d Cir. 1995)
("As to [the prosecutor's] failure to turn over Brady material . . . , this omission occurred after the
prosecutorial phase of the case had begun and therefore is protected as a discretionary advocacy
function."); Collins v. City of New York, 923 F. Supp. 2d 462, 471-473 (E.D.N.Y. 2013); Dory

13

v. Ryan, 25 F.3d 81, 83 (2d Cir. 1994) ("[A]bsolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate).[8]

Plaintiff's allegations against Scotti are thinly veiled malicious prosecution claims which are barred by absolute immunity.  In an effort to strip Scotti of his prosecutorial immunity, plaintiff shamelessly labels Scotti's actions as being "in his investigatory capacity" as an Assistant District Attorney.  See, e.g., Ex. A, ¶¶ 44-46, 98, 139.  In particular, plaintiff alleges that Scotti in his investigatory capacity withheld information (i) concerning the "unduly suggestive nature of the photo array," (ii) concerning the use of the victim's son as an interpreter during the photo array," and (iii) about the likelihood that Juan Jr. knew plaintiff, Delamota, from the neighborhood prior to the assault on Juan Sr." Ex. A ¶¶ 44-46.

But plaintiff does not allege in this lengthy, albeit conclusory and repetitive complaint, that Scotti had any involvement whatsoever in the pre-arrest investigation.  There are no allegations in the complaint that Scotti had any pre-arrest involvement in the underlying criminal case apart from some conclusory allegations made upon information and belief, that Scotti was "the riding ADA during plaintiff's arrest and involved in plaintiff's arrest and prosecution in an investigatory capacity." [9]  Ex. A, ¶ 137.  However, "[c]onclusory allegations

_____

[8] Likewise, to the extent that plaintiff's "conspiracy" claim against Brown and Scotti is premised on their role as prosecutors, see Ex. A ¶¶ 126, 127, it fails because "when the underlying activity at issue is covered by absolute immunity, the plaintiff derives no benefit from alleging a conspiracy." Pinaud, 52 F.3d at 1148 (internal quotation marks omitted); Dory v. Ryan, 25 F.3d 81, 83 (2d Cir. 1994) (noting that while conspiracy to present false evidence at trial is "certainly not something that is properly within the role of a prosecutor . . . , because '[t]he immunity attaches to his function, not the manner in which he performed it," absolute immunity applies (emphasis in original) (second alteration in original) (quoting Barrett v. United States, 798 F.2d 565, 573 (2d Cir. 1986)).

[9] Also, based on this so-called "investigatory capacity," plaintiff alleges, as a separate claim against Scotti "based on investigatory functions" Ex. A, ¶¶ 136-144; however, there is simply no legally cognizable claim under §1983 for liability against an individual based solely on allegations relating to an alleged improper investigatory functio n.

that a prosecutor acted in an investigative fashion by directing unconstitutional police conduct are insufficient to state a claim."  Smith v. Schweiloch, 12-Civ-3253, 2012 U.S. Dist. LEXIS 84194, at *6 (S.D.N.Y. June 15, 2012).

There is no allegation, for example, that Scotti was present at or participated in the alleged improper photo array.[10]  See Spavone v. New York State Department of Correctional Services, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotation marks omitted)); Gaston v. Coughlin, 249 F.3d 156, 166 (2d Cir. 2001) (affirming dismissal of § 1983 claims against defendants who were not present during alleged constitutional violations).  Without factual allegations to support the claim that Scotti was acting in an investigatory capacity it amounts to no more than a legal conclusion that calls for speculation, and thus is insufficient.[11]  By simply averring that Scotti was acting in an investigatory capacity, plaintiff has provided "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," which is plainly not "enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Moreover, plaintiff's allegations against Brown in his individual capacity relate to his role in connection with the supervision and training of Scotti. Ex. A, ¶¶ 51, 52, 66-72.  There is no factual allegation that he was personally involved in the prosecution of plaintiff beyond his supervisory capacity.  "It is well established . . . that supervision of an Assistant District Attorney

[10] Even assuming *arguendo* that the complaint alleged Scotti was present at or participated in the allegedly improper photo array, which it doesn't, Scotti nonetheless would be entitled to qualified immunity.  See Point v. below.

[11] To the extent that Scotti was present at the line-up that was conducted at the precinct after plaintiff was arrested, he would still be entitled to absolute immunity.  See Bermudez v. City of New York, 11-cv-750(LAP), 2013 U.S. Dist. LEXIS 20371, at *16 (S.D.N.Y. Feb. 13, 2013) (finding that a prosecutor's participation in a purportedly tainted identification procedure after arrest is protected by absolute immunity).  Exhibit E at 23:25-24:2.

15

by a District Attorney is a legal function, entitled to absolute immunity." <u>Galliotti v. Green</u>, No. 07-CV-6601, 2011 U.S. Dist. LEXIS 78118, at \*15 (W.D.N.Y. July 19, 2011) (citing <u>Van de Kamp v. Goldstein</u>, 555 U.S. 335, 343 (2009)).  Further, to the extent that plaintiff's complaint alleges claims against Brown in his official capacity, those claims should be dismissed under the Eleventh Amendment.  <u>Posr v. Court Officer Shield No. 207</u>, 180 F.3d 409, 414 (2d Cir. 1999) ("An official arm of a state enjoys the same Eleventh Amendment immunity from suit in federal court as is enjoyed by the state itself."); <u>see also</u> <u>Ying Jing Gan v. City of New York</u>, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state.").  Accordingly, all the claims against Brown and Scotti must be dismissed as a matter of law.

**POINT V**

**KOCH AND SCOTTI ARE ENTITLED TO QUALIFIED IMMUNITY BECAUSE THERE WAS, AT LEAST, ARGUABLE PROBABLE CAUSE TO ARREST AND PROSECUTE PLAINTIFF**

At a minimum, the Scotti and Koch are entitled to judgment on plaintiff's claims based on qualified immunity.   "[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Stanton v. Sims</u>, 134 S. Ct. 3, 4-5 (2013) (quoting <u>Pearson v. Callahan</u>, 555 U.S. 223, 231, (2009) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982))).  Qualified immunity serves an important policy purpose: "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.  When properly applied, it protects 'all but the

plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Where, as here, qualified immunity is invoked, the courts engage in a two-part inquiry: whether the facts shown "make out a violation of a constitutional right," and "whether the right at issue was clearly established at the time of defendant's alleged conduct." Pearson, 555 U.S. at 232. With respect to whether a right was clearly established, an official is protected by qualified immunity "if either (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." McGarry v. Pallito, 687 F.3d 505, 512 (2d Cir. 2012) (citation omitted); see also Taravella v. Town of Wolcott, 599 F.3d 129, 134 (2d Cir. 2010). "The salient question is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged conduct was unconstitutional." Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014) (internal citations and quotations omitted).

Further, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." McGarry, 687 F.3d at 512 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). To determine if the law is clearly established, courts "look to (1) whether the right was defined with reasonable specificity; (2) whether Supreme Court or court of appeals case law supports the existence of the right in question, and (3) whether under preexisting law a reasonable defendant would have understood that his or her acts were unlawful." Scott v. Fischer, 616 F.3d 100, 105 (2d Cir. 2010). Courts in the Second Circuit "may examine statutory or administrative provisions in conjunction with prevailing circuit or Supreme Court law to determine whether an individual had fair warning that his or her behavior would violate the victim's constitutional rights." Okin v. Vill. Of Cornwall-

On-Hudson Police Dep't, 577 F.3d 415, 433-434 (2d Cir. 2009).  "Although a mere mistake in the performance of an official duty may not deprive the officer of qualified immunity, the doctrine does not shield performance that either (a) was in violation of a clearly established law, or (b) was plainly incompetent."  Manganiello v. City of New York, 612 F.3d 149, 165 (2d Cir. 2010).

"The right not to be arrested or prosecuted without probable cause has, of course, long been a clearly established constitutional right."  Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991).  Defining the right at this "high level of generality," however, "is of little help in determining whether the violative nature of particular conduct is clearly established."  al-Kidd, 131 S. Ct. at 2084.  Here, the particular conduct at issue – the gravamen of the complaint in this case and the focus of the trial and appeals in the underlying criminal case - was Koch's decision to allow the robbery victim's son act as a translator for the viewing of the photo array.  See, Ex. A, ¶¶ 12, 25, 34-46; Ex. E at 36:15-47:15; Ex. B (People v. Delamota, 18 Misc.3d 1130(A), 859 N.Y.S.2d 905, 905 (Sup. Ct. Queens Co., 2008)); Ex. C (People v. Delamota, 74 A.D.3d 1225, 905 n.Y.S.2d 621, 622 (2d Dep't 2010)); Ex. D (People v. Delamota, 18 N.Y.3d 107, 936 n.Y.S.2d 614 (2011)).

As of January 17, 2007, pre-existing Second Circuit and Supreme Court case law would not have made it apparent to a reasonable officer that that the use of a family member as a translator for the photo array violated plaintiff's rights.  Because the focus of qualified immunity is whether an officer had fair notice that his conduct was unlawful, "reasonableness is judged against the backdrop of the law at the time of the conduct."  Brosseau v. Haughen, 543 U.S. 194, 198 (2004).  "If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officers should not be subject to liability."  Id.  Research has not

revealed any Second Circuit or Supreme Court decisions predating the incident in question involving an allegation of false arrest or malicious prosecution based on a suggestive photo array or pre-trial identification based on these circumstances.  In the absence of controlling case law, a reasonable officer in Koch's place would not have known that the use of a family member as a translator in connection with a photo array review would be unreasonable.[12]

The circumstances of this case also foreclose it from the narrow exception to qualified immunity where "the violation is so obvious" that an officer can have fair warning that his conduct is unconstitutional "even in novel factual circumstances."  See, e.g., Hope v. Pelzer, 536 U.S. 730, 743 (2002) (Controlling circuit precedent, applicable state regulations, a DOJ report detailing the "constitutional infirmity" of hitching posts, and the "obvious cruelty inherent" in the practice provided officers with "fair and clear warning" that use of a hitching post violated an inmate's civil rights).  Unlike those cases in which qualified immunity has been denied in the absence of guiding law, Koch's and Scotti's conduct did not "so clearly offend[]" plaintiff's civil rights such that "no reasonable officer confronting [the] situation" would have avoided the use of a family member as a translator.  Here, after the Wade hearing, the trial court (Justice Joseph A. Grosso) considered the argument that the photo array was suggestive because of the use of a family member as a translator, and although troubled by the son's role at the identification procedure, ultimately concluded that suppression was not warranted.  Ex. E, at 43:9-21; Ex. D.  Similarly, in post-trial motions, the trial court (Justice Stephen A. Knopf) considered and rejected the argument that the photo array was suggestive because the son had

---

[12]  In the few cases defendants found involving family members acting as translators during pre-trial identifications, the courts did not determine that the pre-trial identifications were unduly suggestive.  See, e.g., Romero v. McEwen, No. CV-11-5117-VBF (JPR), 2012 U.S. Dist. LEXIS 94018, at *20 (C.D. Cal. Jan. 17, 2012); Berry v. Berghuis, No. 1:09-cv-4, 2011 U.S. Dist. LEXIS 50392, at *20 (W.D. Mich. Apr. 12, 2011); United States v. Martinez, C.A. No. 11-16-GMS, 2012 U.S. Dist. LEXIS 103608, at *19 n.7 (D. Del. July 25, 2012).

acted as an interpreter.  People v. Delamota, 18 Misc. 3d 1130(A), 859 n.Y.S.2d 905, 2008 n.Y. Slip Op 50244(U), at *4-5 (Sup. Ct. Queens Co., 2008).  In fact, the court specifically addressed this issue and stated, "[e]ven considering such inconsistencies, there is absolutely no basis other than utter speculation that the complainant's son in any way whatsoever influenced the photograph array identification made by the complainant warranting a ruling suppressing the complainant's identification testimony."  Ex. B, 18 Misc. 3d, at ***4.  The Appellate Division affirmed, holding that the Supreme Court did not improvidently exercise its discretion when it denied defendant's motion to reopen the suppression hearing.  Ex. C, People v. Delamota, 74 A.D.3d 1225, 905 n.Y.S.2d 621, 622 (2d Dep't 2010).  Finally, although the Court of Appeals determined that the photo array should have been suppressed, the majority did not dismiss the indictment, but rather directed a new trial preceded by an independent source hearing.  People v. Delamota, 936 n.Y.S.2d at 622.  In sum, since nine State Court judge's (two trial court and seven Appellate Division) determined that the manner in which the photo array was conducted was not suggestive, it would have been objectively reasonable for Koch and Scotti to believe that they had probable cause to arrest and prosecute plaintiff based on the photo array and subsequent lineup identification.

At the very least even if Koch and Scotti may have been mistaken in believing they had probable cause to arrest and prosecute plaintiff based on the eyewitness identification, they were not "plainly incompetent."  Malley, 475 U.S. at 341, and are entitled to qualified immunity.

20

## POINT VI

## PLAINTIFF'S CLAIM BASED ON PROCEDURAL AND SUBSTANTIVE DUE PROCESS MUST BE DISMISSED

Plaintiff's procedural and substantive due process claims, see Ex. A, ¶¶ 130-135, must be dismissed.  It is well-established that "a claim of malicious prosecution may not be brought as a substantive due process claim" because "the Fourth Amendment provides the source for a § 1983 claim premised on a person's arrest." Singer v. Fulton County Sheriff, 63 F.3d 110, 115 (2d Cir. 1995) (citing Albright v. Oliver, 510 U.S. 266, (1994)); see also Snow v. Vill. of Chatham, 84 F. Supp. 2d 322, 327 (N.D.N.Y. 2000) ("Constitutional claims arising out of a deprivation of liberty must be examined under Fourth Amendment standards, not due process standards under the Fifth and Fourteenth Amendments.").

The procedural due process claim also should be dismissed because it cannot be predicated upon the same factual basis as his Fourth Amendment claims.  Osuna v. City of New York, No. 08 cv 4759 (JSR), 2009 U.S. Dist. LEXIS 66282, at *16-17 (S.D.N.Y. July 30, 2009) ("This [procedural due process] claim is based on the same conduct that gave rise to plaintiff's now-dismissed false arrest and malicious prosecution claims, however, thus requiring plaintiff's procedural due process claim to be dismissed as both duplicative and merit less."); Ambrose v. City of New York, 623 F. Supp. 2d 454, 474 n. 9 (S.D.N.Y. 2009) (noting that plaintiff could not "state a claim for the violation of his procedural due process rights," because such a claim was subsumed in his claims for false arrest and malicious prosecution").

Here, plaintiff's denial of procedural and substantive due process claims, Ex. A, ¶¶ 130-135, are explicitly based on the same conduct underlying the false arrest and malicious

prosecution claims.[13]   It is the Fourth Amendment and not the Fourteenth Amendment that provides the source of any § 1983 claim. This cause of action should therefore be dismissed in its entirety.

**POINT VII**

**PLAINTIFF'S CLAIM BASED ON AN UNDULY SUGGESTIVE IDENTIFICATION PROCEDURE MUST BE DISMISSED**

A suggestive identification procedure "does not itself intrude upon a constitutionally protected interest." Wray v. City of New York, 490 F.3d 189, 193 (2d. Cir. 2007). "A plaintiff cannot recover for an unduly suggestive identification if there is an intervening cause of his damages, usually the independent decision of the prosecutors and trial judge to admit the evidence') Vazquez v. City of New York, 14 Civ. 491 (RMB)(DCF), 2014 U.S. Dist. LEXIS 157259, *28, citing Newton v. City of New York, 566 F. Supp. 2d 256, 277 (S.D.N.Y. 2008). In Vazquez, 14 Civ. 491 (RMB)(DCF), the trial court addressed a claim similar to this one in which plaintiff alleged that his rights were violated as a result of a suggestive photo array. There, as in this case, the criminal court judge declined to suppress the photo identification. In dismissing plaintiff's claim, the Court noted that the decision of the trial judge constituted an intervening factor which precluded recovery. Id. at *28 ("Here, the trial court explicitly considered the propriety of Andriolo's photo – and lineup—identifications of Vazquez at a Wade hearing, and denied Vasquez's application to suppress the identification.") Similarly in the instant case, the Wade Court's decision not to suppress the photo identification is fatal to plaintiff's claim.

---

[13] The complaint alleges that "[b]y their conduct and actions in falsely arresting and imprisoning plaintiff and maliciously prosecuting him, defendants violated plaintiff's rights to equal protection and both substantive and procedural due process …" Ex. A (Complaint), ¶ 131.

## POINT VIII

### PLAINTIFF'S FAILURE TO INTERVENE CLAIMS MUST BE DISMISSED

Plaintiff makes conclusory allegations that the individual defendants failed to intervene in unconstitutional conduct despite opportunities to do so.  Ex. A, ¶ 170.  To the extent that plaintiff asserts that Koch and Scotti directly participated in the alleged wrongful acts, they may not be held liable for failure to intervene.  Jackson v. City of New York, 939 F. Supp. 2d 219, 232 (E.D.N.Y. 2013) ("The Court has already concluded [that the two officers] both may be held liable under a theory of direct participation, therefore neither would be held liable for failure to intervene."); Chepilko v. City of New York, No. 06-cv-5491 (ARR)(LB), 2012 U.S. Dist. LEXIS 15110, at *26 n.5 (E.D.N.Y. Feb. 6, 2012).

As an initial matter, as set forth above in Points I-V, there was no constitutional violation.  Moreover, as plaintiff alleges that Koch improperly used a family member as an interpreter, he cannot also be liable for failure to intervene in his own actions.  Therefore this claim must be dismissed as to Koch.  To the extent that plaintiff brings a failure to intervene claim against Scotti, it must also be dismissed.  Any actions taken by Scotti in his role as a prosecutor are protected by absolute immunity, or qualified immunity if he were acting in an investigatory capacity, and for the same reasons set forth above, he cannot be liable for the failure to intervene in his own actions.  Moreover, to the extent plaintiff alleges that Scotti should have prevented Koch from using the complainant's son as an interpreter, this claim cannot be sustained because the complaint does not allege that Scotti was present for the photo identification, or that he had an opportunity to intervene.  See generally, Exhibit A.  Liability may attach only when, "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's

constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." Chepilko, 2012 U.S. Dist. LEXIS 15110 at 25-26 (citing O'Neill v. Krzeminski. 839 F.2d 9, 11-12 (2d Cir. 1988)).

## POINT IX

### PLAINTIFF'S CLAIM BASED ON A BRADY
### VIOLATION SHOULD BE DISMISSED

In Brady v. Maryland, 373 U.S. 83, 87 (1963), the Supreme Court held that "the suppression of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."   A Brady violation occurs when "the evidence at issue [is] favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999).  To the extent that the evidence is disclosed in time for its "effective use" by the defense, the requirement is satisfied.  "There is no Brady violation unless there is a reasonable probability that earlier disclosure of the evidence would have produced a different result at trial….or at a plea proceeding."  United States v. Coppa, 267 F.3d 132, 144 (2001).

Here, plaintiff's 1983 claim based on a Brady violation must be dismissed because the details of the photo identification procedure were disclosed to the defense at the Wade hearing. See Ex. E.  Defense counsel made the exact arguments that plaintiff sets forth in the complaint in his motion to suppress the identifications by the complainant – that the identification was suggestive because the complainant's son had interpreted for him, and there was a possibility that the son knew plaintiff.  Ex. D, People v. Delamota, 18 N.Y.3d 107, 111 (Oct. 11, 2011).  The disclosure of the facts of the photo array to the defense fully discharges

Koch's <u>Brady</u> obligation.  <u>Walker v. City of New York</u>, 974 F.2d 293, 299 (2d. Cir. 1992), <u>cert.</u> <u>denied</u>, 507 U.S. 961 (1993)("the police satisfy their obligations under <u>Brady</u> when they turn exculpatory evidence over to the prosecutors").  To the extent plaintiff purports to assert a <u>Brady</u> claim against Scotti, the claim is barred by the doctrine of absolute immunity.  <u>Van de Kamp v.</u> <u>Goldstein</u>, 555 U.S. 335, 346 (2009); <u>Taylor v. Kavanaugh</u>, 640 F.2d 450, 452 (2d Cir. 1981)(prosecutor entitled to absolute immunity for claim based on alleged "withholding of evidence").

**POINT X**

**PLAINTIFF'S      MONELL      CLAIM      IS DISMISSIBLE**

**A.      Plaintiff's <u>Monell</u> Claim Fails For Failure to Prove the Existence of an Underlying Constitutional Violation**

First, plaintiff cannot pursue a <u>Monell</u> claim based either on an unconstitutional policy of the City or on the alleged deliberate indifference of the Police Department or the District Attorneys' Office because he cannot show an underlying constitutional violation.  Cf. <u>Henry-Lee v. City of New York</u>, 746 F. Supp. 2d 546, 567 (S.D.N.Y. 2010).  ("[A] constitutional violation by a municipal employee is a necessary prerequisite to municipal liability under <u>Monell</u>").  As set forth in points I-V *supra*, plaintiff has not alleged a viable underlying violation of his constitutional rights.  Accordingly, plaintiff has failed to state a <u>Monell</u> claim against the City.

**B.      Plaintiff Has Failed To Allege The Existence of a Formal Policy Or Custom Adopted By The City Of New York**

To prevail on a claim against the City, plaintiff must show that the "allegedly unconstitutional action of an individual law enforcement official was taken pursuant to a policy or custom 'officially adopted and promulgated by that [municipality's] officers.'"  <u>Jones v. The</u>

25

City of New York, 988 F. Supp. 2d 305, 312 (E.D.N.Y. 2013).  A municipality may be liable

under § 1983 only "if the governmental body itself 'subjects' a person to a deprivation of rights

or 'causes' a person 'to be subjected' to such 'deprivation.'  Connick v. Thompson, 131 S. Ct.

1350, 1359 (2011) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978)).  In other

words, municipalities are "responsible only for 'their *own* illegal acts,'" and cannot be held

"vicariously liable under § 1983 for their employees' actions."  Id. (quoting Pembaur v.

Cincinnati, 475 U.S. 469, 479 (1986)) (emphasis in Pembaur).  Rather, assuming that plaintiff's

constitutional rights were violated, he must prove "that action pursuant to official municipal

policy" caused the underlying constitutional violation.  Monell, 436 U.S. at 691.

   Here, plaintiff alleges that the City had the following unconstitutional policies:

(1) a policy of allowing police officers to use suggestive identification procedures to secure

arrests and convictions, Ex. A at ¶ 191, (2) a policy of allowing police officers to withhold

exculpatory evidence from ADAs and from citizens to obtain indictments and convictions, Id. at

¶ 192 and 195, (3) a policy of allowing police officers to use as interpreters during investigations

persons related to victims, rather than an objective interpreter, Id. at ¶ 195.  In support of these

claims, the Complaint refers to the Mollen Commission Report,[14] dated July 7, 1993, Id., which

cites the NYPD's failure to maintain its system of internal corruption controls, and references a

culture within the NYPD which tolerated police perjury and falsification of official records.  Id. ¶

at 208.  The Complaint further cites the failure of the CCRB to fully investigate complaints of

police conduct and recommend discipline during the 1980's and 1990s, and the fact that between

1992 and 1995, over $82 million was paid by the City in damages in police misconduct cases.

---

[14] The full name of the report is the Commission to Investigate Allegations of Police Corruption and the Anti-Corruption Procedures of the Police Department.

Id.  Finally, plaintiff refers to acknowledgements of police commissioners of a "code of silence" in the NYPD in 1985 and 1991.  Id.

These general conclusions about the NYPD and CCRB's performance bear no relation to the plaintiff's allegations regarding a suggestive pretrial procedure.  Such sweeping statements regarding police corruption are insufficient to allege that the allegedly suggestive photo array in this case was undertaken pursuant to a municipal policy or custom.  Further, the incidents cited by plaintiff describe deficiencies in policing in the 1980s and 1990s -- over a decade prior to the incident in this case, which occurred on January 17, 2007.  Finally, the complaint alleges only a single, isolated incident, without reference to any other incident and thus fails to show that Koch and Scotti acted pursuant to a municipal policy.  The complaint fails to point to instances of the use of family members as interpreters.  A "custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [government]."  Hayes v. Perotta, 751 F. Supp. 2d 597, 601 (S.D.N.Y. 2010); see also City of Okla. City v. Tuttle, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell . . . .").

## C.   Plaintiff Has Failed To Show That An Official at The Policy Making Level Caused His Injuries

In addition, the actions alleged were not taken at the policymaking level.  While actions by an individual with final decision-making authority may constitute official policy sufficient to establish municipal liability, that individual must "be responsible for establishing final government policy" for such liability to attach.  Pembaur v. City of Cincinnati, 475 U.S. 469, 483, 89 L. Ed. 2d 452, 106 S. Ct. 1292 (1986).  Plaintiff's allegations that Koch should have used an objective interpreter rather than the complainant's son, Ex. A, ¶ 12, 25 are directed against an employee who did not have policymaking authority.

**D.        Plaintiff Fail to Sufficiently Allege a Monell Claim Based on a Failure to Train**

Plaintiff also argues that his rights were violated as a result of the City's failure to train its employees.  Ex A, ¶ 194, 198, 202.  To prevail on a failure to train claim, plaintiff must establish that the failure to supervise or discipline "amounts to deliberate indifference to the rights of those with whom the police come in contact."  City of Canton, Ohio v. Harris, et al., 489 U.S. 378, 388 (1989).  Deliberate indifference constitutes more than negligence or even 'heightened' negligence on the part of the municipality.  See Id. at 273; see also Board of the County of Comm'rs of Bryan County v. Brown, 520 U.S. 397, 407 (1997)("A showing of simple or even heightened negligence will not suffice.").  Similarly, mere bureaucratic inaction cannot establish deliberate indifference.  See Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 128 (2d Cir. 2004).  Plaintiff must show that the municipality or its policymakers actually condoned such conduct and that the system is "so deficient as to reflect a policy of deliberate indifference to the civil rights of the citizenry."  Sarus v. Rotundo, 831 F.2d 397, 401-02 (2d Cir.1987).

"'A pattern of *similar* constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train.'"  Jones, 988 F. Supp. 2d at 313, citing Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011).  "Failure to train prosecutors in their *Brady* obligations does not fall within the narrow range of *Canton's* hypothesized single incident liability."  Id. (citing Connick at 1361).  To meet this standard, a plaintiff is obligated to demonstrate that there was a "persistent failure to discipline subordinates who violate civil rights" which "could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of Monell."  Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983).  In other words, the practice or custom of the subordinate employees must be "so manifest as to imply the constructive acquiescence of senior policy-making officials."  Sorlucco v. New York City Police Dep't, 971 F. 2d 864, 871

28

(2d Cir. 1992).  Accordingly, in the "failure to discipline" context, evidence of one instance in which a municipal employee violated a citizen's rights simply cannot plausibly meet this standard.  See Sarus, 831 F.2d at 402-03; see also Newton v. City of New York, 681 F. Supp. 2d 473, 487 (S.D.N.Y. 2010) (internal citations omitted) ("a policy, custom or practice cannot arise from a single instance of unconstitutional conduct by an employee of the municipality").

In Connick, plaintiff alleged that the City was liable for plaintiff's conviction and death-row sentence where exculpatory blood evidence was discovered in a crime lab by an investigator.  In that case, the ADA was aware that the blood test existed, although he did not know that the sample did not match plaintiff's blood type.  The ADA failed to turn the results of the blood test to the defense, and plaintiff was convicted for armed robbery, and in a subsequent trial, for murder.  In the trial of plaintiff's civil action against the District Attorney's Office, District Attorney Connick, and others, a jury found the municipality liable, and the Fifth Circuit affirmed.  The Supreme Court reversed, reasoning that plaintiff had not shown that there had been a pattern of similar Brady violations which would have put the DA's office on notice that unless additional training was instituted, the constitutional rights of individuals would be violated.

In Connick, plaintiff cited to four reversals of convictions from Brady violations in Connick's office.  Connick, 131 S. Ct. at 1360.  The Court found, however, that the reversals did not put Connick on notice that training was needed to prevent the *Brady* violation at issue. Id. ("None of those cases involved failure to disclose blood evidence, a crime lab report, or physical or scientific evidence of any kind.  Because those incidents are not similar to the violation at issue here, they could not have put Connick on notice that specific training was necessary to avoid this constitutional violation.").

Here, with respect to the allegedly suggestive photo array, plaintiff has not alleged that in prior cases, the use of a family member or acquaintance as an interpreter led to a wrongful conviction.  In fact, plaintiff has not pointed to any prior cases related to photo identification or Brady violations of any kind.  Thus, plaintiff has failed to show a pattern of violations which would have put the NYPD on notice that additional training on the use of interpreters was needed.  The Complaint fails to meet the narrow requirements set forth in Connick.  Moreover, the decisions at the Wade hearing and at the Appellate Division indicate that the law in the proper use of interpreters was unclear.  See Point V, supra.  Thus, as there was no clear need for training, it cannot be said that the failure of the City to train its officers on the use of interpreters amounted to deliberate indifference to constitutional rights.

Additionally, in Jones, the Court dismissed plaintiff's Monell claims, which were based on the alleged failure of the District Attorneys' Office to properly train its attorneys regarding their Brady obligations with respect to DNA evidence.  There, the Court found that because the training of the DA's office is not within the purview of the City of New York, it could not be held liable for deficiencies in training.  The failure to train attorneys regarding their Brady obligations were related to the prosecutorial function of the DA's office.  As plaintiff had failed to adequately allege a policy or practice of the City that caused plaintiff's constitutional violation, the Monell claim was dismissed.  Jones, 988 F. Supp. 2d at 314-317.

In the case at bar, plaintiff makes an identical flawed argument – namely, that the purported failure to discipline Detective Koch, a single officer, prior to January 17, 2007 caused plaintiff to be falsely arrested and maliciously prosecuted.  Plaintiff fails to set forth a pattern of similar violations demonstrating any deficiency in the City's supervision program regarding either the use of an interpreter or the withholding of information to the ADA as is required to

30

trigger municipal liability pursuant to § 1983.  Consequently, plaintiff has failed to allege that the failure to discipline Koch and Scotti was so obvious as to constitute deliberate indifference on the part of the policymaker of the City of New York, and, as such, plaintiff's <u>Monell</u> claim should be dismissed.

Plaintiff allegations that the City is liable for the failure to properly train ADAs with respect to district attorneys regarding the disclosure of exculpatory evidence pursuant to <u>Brady</u>, fails for the additional reason that the District Attorneys' Office operates independently of the City with respect to its prosecutorial functions.  As such, the alleged failure to train may not be attributed to a policy or practice of the City.  For the same reason, plaintiff's claims in the instant case must be dismissed.

**E.      Plaintiff Cannot Establish Causation**

To succeed on a claim of municipal liability in the "failure to discipline" context, plaintiff must prove more than "but for the alleged inadequate supervision or discipline . . . he would not have been injured."  <u>See</u> <u>Ameduri v. Vill. of Frankfort</u>, 10 F. Supp. 3d 320, 343 (N.D.N.Y. Mar. 31, 2014).  Rather, plaintiff must show that the alleged deficiency in the City's disciplinary program is "closely related to the ultimate injury" suffered by plaintiff such that it "actually caused" the constitutional deprivation.  <u>See</u> <u>Amnesty Am. v. Town of W. Hartford</u>, 361 F.3d 113, 129 (2d Cir. 2004) (quoting <u>City of Canton</u>, 489 U.S. at 391).  In other words, plaintiff must allege that his constitutional rights were violated <u>not</u> because of a careless or reckless police officer, but that a deficiency in supervision or discipline actually caused the injury. <u>Morrissey v. City of New York</u>, 963 F. Supp. 270, 274 (S.D.N.Y. May 5, 1997).  This standard is a stringent one, because adopting a lesser standard would leave municipalities open to "unprecedented liability under § 1983."  <u>Id.</u> (quoting <u>City of Canton</u>, 489 U.S. at 391).  Indeed, "[w]here a plaintiff claims that the municipality has not directly inflicted an injury, but

31

nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." Cole v. New York City Police Department, 94-cv-2070 (FB), 1998 U.S. Dist. LEXIS 12430, *13 (E.D.N.Y. Aug. 7, 1998); see also Doe v. City of New York, 09-cv-9895 (SAS), 2013 U.S. Dist. LEXIS 30010, at *6-8, n.28 (S.D.N.Y. Mar. 4, 2013).  Here, the complaint fails to show a causal connection between any policy and Det. Koch's use of an interpreter and plaintiff's subsequent arrest and conviction.  Thus on these grounds, plaintiff's Monell claim based on the existence of a program or policy, or on the failure to train, fails.

## CONCLUSION

For the foregoing reasons, defendants The City of New York, Queens County District Attorney Richard A. Brown, and Detective Bruce Koch respectfully request that the Court grant their motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) in its entirety as it fails to state a cause of action, together with such costs, fees and further relief as the Court deems just and proper.

Dated:      New York, New York
            May 1, 2015

                              ZACHARY W. CARTER
                              Corporation Counsel of the
                                City of New York
                              *Attorney for Defendants City, Richard Brown, and Bruce Koch*
                              100 Church Street, Room 3-147
                              New York, New York 10007
                              (21 2) 356-2354


                              By:    ___/s_____
                                     Barry Myrvold
                                     *Senior Counsel*


                              By:    ___/s_____
                                     Liza Sohn
                                     *Assistant Corporation Counsel*

cc:    <u>VIA ECF</u>
       **Rose Weber, Esq.**
       225 Broadway, Suite 1607
       New York, New York 10007

       **Richard Gross, Esq.**
       **Ernestine Mings, Esq.**
       Rubert & Gross
       150 Broadway
       Suite 1314
       New York, NY 10038

33