UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
SEBASTIAN DELAMOTA,

                                   Plaintiff,

       -against-

THE CITY OF NEW YORK, DET. BRUCE KOCH,
RICHARD A. BROWN, individually and as District
Attorney of the County of Queens and *ADA* "JOHN
SCOTTY", first name being fictitious and presently
unknown and intended to a Queens County Assistant
District Attorney employed in the Queens County District
Attorney's Office,

                                 Defendants.

------------------------------------------------------------------------X

                             **Docket No.: 14-CV-5888
                             (NG) (RER)**

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)

TABLE OF CONTENTS

TABLE OF AUTHORITIES………………………………………………………………  *i*

PRELIMINARY STATEMENT……………………………………...…………………. 1

COUNTERSTATEMENT OF FACTS…………………………………………………...3

STANDARD OF REVIEW………………………………………………………………  9

ARGUMENT ………………………………………………………………………...10

POINT I………………………………………………………………………………10

PLAINTIFF'S COMPLAINT STATES A CLAIM FOR MALICIOUS PROSECUTION

POINT II………………………………………………………………………………14

PLAINTIFF'S COMPLAINT SETS FORTH A PRIMA FACIE CASE FOR
CONSPIRACY

POINT III…………………………………………………………………………...17

DEFENDANTS BROWN AND SCOTTI ARE NOT ENTITLED TO DISMISSAL
OF THE COMPLAINT ON THE PLEADINGS ON ABSOLUTE IMMUNITY
GROUNDS

POINT IV…………………………………………………………………………...20

DEFENDANTS SCOTTI AND KOCH ARE NOT ENTITLED TO QUALIFIED
IMMUNITY

POINT V………………………………………………………………………………25

PLAINTIFF'S UNDULY SUGGESTIVE IDENTIFICATION CLAIM IS NOT
SUBJECT TO DISMISSAL

POINT VI…………………………………………………………………………...26

PLAINTIFF'S DUE PROCESS CLAIMS ARE NOT DUPLICATIVE OF HIS OTHER
CLAIMS

POINT VII……………………………………………………………………………27
PLAINTIFF HAS PLEADED SUFFICIENT FACTS TO SUPPORT A CLAIM
FOR FAILURE TO INTERVENE AGAINST ADA SCOTTI

POINT VIII..............................................................................................27

PLAINTIFF HAS SUFFICIENTLY PLEADED A *BRADY* VIOLATION

POINT IX .............................................................................................29

PLAINTIFF'S COMPLAINT STATES A CLAIM AGAINST THE
MUNICIPALITY FOR CIVIL RIGHTS VIOLATIONS PURSUANT
TO *MONELL V. SOCIAL SERVICES*

POINT X...............................................................................................34

DEFENDANTS HAVE FAILED TO MEET THEIR BURDEN UNDER
FED.R. CIV.P. 12 (B)(6)

CONCLUSION...................................................................................   35

TABLE OF AUTHORITIES

Case Law

*Abdur Raheem v. Kelly,*
257 F.3d 122 (2d Cir. 2001)……………………………………………………………...…33

*AIU Ins. Co. v. Mitsui O.S.K. Lines, Ltd.,*
897 F.Supp. 724 (S.D.N.Y.1995)……………………………………….…………………35

*Amore v. Novarro,*
624 F.3d 522 (2d Cir.2010)……………………………………………. ………………….22

*Ashcroft v. al-Kidd,*
131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)……………………………………………….20

*Ashcroft v. Iqbal*
554 U.S. 662 (2009) …………………………………………….……………………...…9

*Bail v. Ramirez,*
No. 04 Civ. 5084, 2007 WL 959045 (S.D.N.Y. Mar. 29, 2007) …………………………...12

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ……………………………………………………………….…9, 35

*Bermudez v. City of New York,*
2015 WL 3650756 (2d Cir. 2015) ……………………………………………….…….…..23, 28

*Blake v. Race,*
487 F.Supp.2d 187 (E.D.N.Y. 2007) ……………………………………………………...28

*Buckley v. Fitzsimmons,*
509 U.S. 259 (1993) …………………………………………….…………………….…19

*Bullard  v. City of New York,*
No. 01 CIV. 11613, 2003 WL 168444 (S.D.N.Y. Jan. 20, 2003) …………………………...11, 12

*Burns v. Citarella,*
443 F.Supp.2d 464 (S.D.N.Y. 2006) …………………………………………………...20

*Burns v. Reed,*
500 U.S. 478 (1991) …………………………………………….………………………19

*Brady v. Maryland,*
373 U.S. 83 (1963) ……………………………………………………….......3, 18, 27, 28, 30-35

*Brandon v. City of New York,*

705 F. Supp. 2d 261 (S.D.N.Y. 2010) ……………………………………….……………26

*Brown v. City of New York,*
No. 08–CV–5095, 2013 WL 1338785 (E.D.N.Y. Apr. 1, 2013) …………………………………..26

*Caceres v. Port Auth. of N.Y. & N.J.,*
631 F.3d 620 (2d Cir.2011) …………………………………………….…………………………22

*Chepilko v. City of New York, et al.,*
2012 U.S. Dist. LEXIS 15110 ……………………………………………………………………27

*Coggins v. County of Nassau,*
No. 07-CV-3624, 2008 WL 2522501 (E.D.N.Y. June 20, 2008) …………………………….……24

*Colon v. Coughlin,*
58 F.3d 865 (2d Cir. 1995) …………………………………….………………..…………17

*Connick v. Thompson,*
131 S. Ct. 1350 (2011) …………………………………………….…………………17, 29, 33

*Cornett v. Brown,*
No. 04 CV 0754, 2006 WL 845568 (E.D.N.Y. Mar. 30, 2006) ………………………….……..12

*Cruz v. Reilly,*
No. 08-CV-1245, 2009 WL 2567990 (E.D.N.Y. Aug. 18, 2009) …………………………………26

*Foman v. Davis,*
371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1963)……………………………………………35

*Frazier v. New York,*
187 F. Supp. 2d 102 (S.D.N.Y. 2002)……………………………………………………...33

*Gentile v. County of Suffolk,*
926 F.2d 142 (1991) …………………………………………….……………………....17, 31

*Golden v. City of New York,*
418 F. Supp. 2d 226 (E.D.N.Y. 2006) ……………………………………….…………………10

*Golino v. City of New Haven,*
950 F.2d 864 (2d Cir.1991) ………………………………………….……………………….21

*Hertz Corp. v. City of New York,*
1 F.3d 121 (2d Cir.1993) …………………………………….…………………………………9

*Hill v. City of New York,*
No. 05 Civ. 9473, 2007 WL 4592000 (S.D.N.Y. Dec. 28, 2007) …………………………………11

*Hylton v. Ercole*,
 No. 05-CV-4077, 2010 U.S. Dist. LEXIS 62352 (E.D.N.Y. June 23, 2010)........................33

*In re Duane F.*,
 764 N.Y.S.2d 434 (1st Dep't 2003)............................................................................32

*Jean-Laurent v. Bowman*,
 No. 12 CV 2954, 2014 U.S. Dist. LEXIS 131865 (E.D.N.Y. July 7, 2014) ........................26

*Jean-Louis v. Warfield*,
 12-CV-01967 ADS ARL, 2012 WL 4793550 (E.D.N.Y. Oct. 6, 2012) .............................9

*Jovanovic v. City of New York*,
 No. 04 Civ. 8437, 2006 WL 2411541 (S.D.N.Y. Aug. 17, 2006) ...............................10, 26

*Kafafian v. Young*,
 No. 3:10–CV–1657, 2011 WL 1134251 (D. Conn. Mar. 25, 2011) ..................................11

*Lacey v. Arizona*,
 693 F.3d 896 (9th. Cir. 2012) .............................................................................19

*Lennon v. Miller*,
 66 F.3d 416 (2d Cir.1995) ..................................................................................22

*Lowth v. Town of Cheektowaga*,
 82 F.3d 563 (2d Cir. 1996) ............................................................................10-11

*Manganiello v. Agostini*,
 No. 07 Civ. 3644, 2008 U.S. Dist. LEXIS 99181 (S.D.N.Y. Dec. 9, 2008)........................22

*Marin v. Viggiani*,
 No. 92 CIV. 3836, 1993 WL 404098, (S.D.N.Y. Oct. 5, 1993).......................................10

*Massachusetts v. Upton*,
 466 U.S. 727, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984) ................................................13

*McCray v. City of New York*,
 No. 03 CIV 10080 (DAB), 2007 WL 4352748, (S.D.N.Y. Dec. 11, 2007) ....................16, 19

*Nibbs v. City of New York*,
 800 F. Supp. 2d 574 (S.D.N.Y. 2011) ....................................................................26

*Newton v. City of New York*,
 566 F. Supp. 2d 256 (S.D.N.Y. 2008) ....................................................................25

*O'Neill v. Krzeminski*,

839 F.2d 9 (2d Cir. 1988) ……………………………………………………………27

*O'Neill v. Town of Babylon,*
986 F.2d 646 (2d. Cir.1993) ……………………………….…………………………22

*Panetta v. Crowley,*
460 F.3d 388 (2d Cir. 2006) …………………………………………………………12

*Pangburn v. Culbertson,*
200 F.3d 65 (2d Cir.1999) …………………………………….………………………14

*People v. Anderson,*
83 A.D.3d 854, 921 N.Y.S.2d 156, 2011 N.Y. Slip Op. 03078 (2d. Dep't 2011)..……………32

*People v. Cruz,*
No. 643/10, 2015 N.Y. App. Div. LEXIS 4521 (1st Dep't June 2, 2015)………………………33

*People v. Delamota,*
18 N.Y.3d 107 (2011)…………………………………………...…4, 6, 7, 8, 13, 15, 21, 22, 25

*People v. Bennett,*
40 A.D.3d 653, 837 N.Y.S.2d 655, 2007 N.Y. Slip Op. 03937 ……………………………18

*People v. Baba-Ali,*
179 A.D.2d 725, 578 N.Y.S.2d 633(2d Dep't 1992) …………………………………………18

*People v. Racine,*
957 N.Y.S.2d 638 (Kings Co. Supreme 2010)…………………………………………………..33

*People v. Woolcock,*
792 N.Y.S.2d 804 (Kings Co. Supreme 2005)…………………………………………………..33

*Perez v. Cuomo,*
No. 09 Civ. 1109, 2009 WL 1046137 (E.D.N.Y. Apr. 17, 2009)………………………………...26

*Pinaud v. County of Suffolk,*
52 F.3d 1139 (2d. Cir.1995) ………………………………………………………………19

*Rodriguez v. City of New York,*
72 F.3d 1051 (2d Cir.1995) ……………………………………………….…………………24

*Schiller v. City of New York,*
Nos. 04 Civ. 7922 et al., 2008 WL 200021 (S.D.N.Y. Jan. 23, 2008) …………………………26

*Singer v. Fulton County Sheriff,*
63 F.3d 110 (2d Cir. 1995) ……………………………………………….……………………11

iv

*Spavone v. New York State Department of Correctional Services*,
719 F.3d 127 (2d Cir. 2013) ……………………………………….…………………………20

*Stansbury v. Wertman*,
721 F.3d 84 (2d Cir. 2013) …………………………………………….…………………….....12

*Stapleton v. Graham*,
No. 09-CV-0382, 2011 U.S. Dist. LEXIS 49239 (E.D.N.Y. May 6, 2011)……………….…...33

*Swiatkowski v. Citibank,*
446 Fed. Appx. 360 (2d Cir.2011) ……………………………………………….………………9

*Taylor v. City of New York,*
No. 03 Civ. 6477, 2006 WL 1699606 (S.D.N.Y. June 21, 2006) ……………….………………26

*United States v. Fisher*,
702 F.2d 372, 375 (2d Cir.1983) …………………………………………………….…………13

*United States v. Morgan,*
690 F. Supp. 2d 272 (S.D.N.Y. 2010)……………………………………………….………....33

*Vanderwoude v. City of New York,*
No. 12 Civ. 90462014 U.S. Dist. LEXIS 79064 (S.D.N.Y. June 10, 2014) ……………….…...12

*Walker v. City of New York*,
974 F.2d 293(2d. Cir 1992) ……………………………………………….……………17, 28, 30, 31

*Wilson v. McMullen*,
No. 07-CV-948, 2010 WL 1268055 (E.D.N.Y. Mar. 30, 2010)………………………………….11

*Wu v. City of New York,*
934 F. Supp. 581 (S.D.N.Y. 1996) …………………………………………….…………….…..10

Statutes
Fed.R.Civ.P. 8(a)(2) …………………………………………….…………………..……………1
Rule 12(b)(6)………………………………………….…………………………..8, 9, 29, 34, 35

## PRELIMINARY STATEMENT

Plaintiff, Sebastian Delamota, respectfully submits this Memorandum of Law in opposition to Defendants' motion, pursuant to Fed. Rule 12(b) (6), which seeks dismissal of his complaint in its entirety.

At the outset, Plaintiff consents to the dismissal of his claim for false arrest as time-barred.

With respect to the remainder of the claims, Plaintiff opposes Defendants' motion. The complaint contains factual allegations that if proven, entitle Plaintiff to the relief therein requested and fully complies with the federal notice pleading requirements of Fed.R.Civ.P. 8(a) (2).

Contrary to Defendants' assertions, Plaintiff's complaint states claims for malicious prosecution notwithstanding the presumption of probable cause afforded to a Grand Jury indictment. Plaintiff can overcome said presumption with evidence of fraud, perjury or suppression of evidence by the police; evidence that the police failed to make further inquiry when a reasonable person would have done so and conduct by the police that deviated from acceptable police activity as to demonstrate an intentional or reckless disregard for proper procedures and Plaintiff's rights.

Similarly, Plaintiffs' complaint states a claim for conspiracy that is not subject to dismissal on the pleadings. The complaint sufficiently pleads facts, which on a motion to dismiss pursuant to Fed. Rule 12 (b) (6) the Court must accept as true and draw all reasonable inferences therefrom, that support a conspiracy claim.

With respect to Defendant, Brown, the Queens County District Attorney, to the extent the complaint may be read as asserting a claim against him personally, Plaintiff agrees that such a claim is subject to dismissal on absolute immunity grounds.

However, where, as alleged in the complaint, Plaintiff can show a pattern of deliberate indifference to the rights of similarly situated individuals, Defendant, Brown, can be held liable in his official capacity as District Attorney.  Under the circumstances of this case, where Plaintiff alleges that DA Brown, in his administrative official capacity, created a policy or custom under which unconstitutional practices occurred and/or were permitted to continue, the complaint states a cause of action against the District Attorney in his official capacity and he is not entitled to absolute immunity with respect to with respect to those claims.

Assistant District Attorney, Paul Scotti, is not entitled dismissal of the complaint on the grounds of absolute immunity because Plaintiff's complaint alleges that some of his actions were taken during the investigatory phase of the criminal process and not the prosecutorial phase. Scotti's pre-indictment involvement did not require his professional prosecutorial evaluation.

Defendant, Koch's assertion that he is entitled to dismissal of the claims against him based on qualified immunity must also fail because the complaint alleges that he violated constitutional rights that have been long clearly established, such as the right not to be arrested and prosecuted without probable cause and or prosecuted for a crime he did not commit based on a suggestive pretrial identification procedure that violated the Due Process Clause as found by the New York State Court of Appeals.

Nor are the claims against ADA Scotti dismissible on qualified immunity grounds. Where as in this case, ADA Scotti was involved in the investigatory stages of the proceedings and it is alleged that he violated Plaintiff's clearly established constitutional rights such as the

right to be free from unreasonable searches and seizures and the right not to be subjected to an arrest and prosecution based on a constitutionally impermissible suggestive identification, Defendant, Scotti is not entitled to qualified immunity. *Verified Complaint, at paragraphs 44-47, 98, 100, 108, 110, 112, 114, 116, 119, 121, 123, 125-129, 136-144, 169, 174* [Scotti was not acting as a prosecutor when he was involved in the investigation conducted with Det. Koch before plaintiff was arrested and that he conspired with Det. Koch to violate plaintiff's constitutional rights].

Defendant's argument that plaintiff's suggestive identification claim should be dismissed is wholly without merit where New York State's Highest Court determined that the pretrial identification procedures used by Defendant, Koch, were in fact, unduly suggestive and violated the Due Process Clause such that vacation of the conviction was required.

Plaintiff's Due Process claims are not duplicative of his Fourth Amendment claims and are therefore not subject to dismissal.

With respect to Plaintiff's remaining claims of failure to intervene against Defendant, Scotti; *Brady* violations and *Monell* claims, as will be thoroughly developed below, the complaint meets the pleadings requirements of Fed. Rule 8 (a) (2) of the Federal Rules of Civil Procedure and are not subject to dismissal.

## COUNTERSTATEMENT OF FACTS

On an evening in October 2006, Juan Hernandez (Hernandez) was robbed at knife point in an elevator at his apartment building. Shortly after the incident, his son, Juan Jr., telephoned 911 pretending to be his father and gave the 911 operator a general description of the robber. Later that same night, Detective Bruce Koch ("Koch") spoke to Hernandez, who did not speak English, by using the victim's son, Juan Jr. as a translator.  Hernandez described the robber as a

Hispanic man in his mid–20s who weighed approximately 140 pounds and was about five feet, six inches tall. *People v. Delamota*, 18 N.Y.3d 107, 110 (2011). Hernandez also stated that the robber had held a knife to his throat with his right hand while the perpetrator removed items from Hernandez' pockets with his left hand. *Id.* at 111. At the time of the robbery, Plaintiff was 18 years old, six feet, three inches tall and had a functionally impaired left. *Id.* at 111; Complaint ¶¶ 4-7.

Koch assembled photographs of individuals from a police department database that matched the description given to him by Hernandez and had Hernandez review them despite the that Mr. Hernandez had told the police that he did not see the robber's face and did not even know whether he was black or white Hernandez was unable to make an identification. *People v. Delamota*, 18 N.Y.3d 107, 111 (2011); *Def. Exhibit E at 8-9; 27-28*.

Several days later, Juan Jr. told Koch that he had heard "on the street" that his father's assailant was a guy named "Sebastian", who had been shot a few months earlier. *Id.* Juan Jr. told Koch that he did not know Sebastian. Koch located a photograph of Plaintiff and placed it in a photo array, which was then shown to Hernandez; again despite the fact that the victim did not even know the race of the perpetrator. *Id.* Ignoring the likelihood that 18-year-old Sebalstian, who was just shy of 19, would be familiar with a 19-year-old who lived close by, Det. Koch allowed Juan Jr., to be the interpreter during his father's viewing of the photo array. *Id.* During the photo array, Koch only asked Hernandez a few questions, Juan Jr. interpreting, including whether "he recognized anyone." *Def. Exhibit E at 14-15*. According to Juan Jr.'s translation, Hernandez identified Plaintiff's photograph as that of a person he recognized. *Id.*

On January 16, 2007, Koch, conducted a lineup which included Plaintiff. Present at this lineup were Koch, ADA Paul Scotti (Scotti), Hernandez and a Spanish speaking Police officer

4

who acted as interpreter.  At this lineup, Hernandez identified plaintiff as the person who robbed him.  *Def. Exhibit E, p. 24, Plaintiff Exhibit C*.

The case was presented to a grand jury who presumably was not informed that Juan Jr., Plaintiff's contemporary, who lived in the same neighborhood as Sebastian and not the victim had implicated plaintiff in the robbery.  Nor was the grand jury informed that Juan Jr. had translated for his father during the photo array; or that Juan Jr. knew the plaintiff. *Complaint* ¶¶ 40-42.  It also appears that the grand jury was also not advised that plaintiff did not match the description of the perpetrator given by Hernandez shortly after the incident or that although Hernandez, through via Juan Jr. as interpreter, stated that the perpetrator used his right hand to hold a knife while he stole property with his left hand despite Plaintiff having a nonfunctioning left hand.

Before the grand jury, Hernandez claimed, for the first time, that the perpetrator had a useless left arm and had not physically taken his property, but had instead instructed Hernandez to remove it himself and turn it over.  Plaintiff was indicted for robbery in the first and second degree and criminal possession of a weapon. Complaint ¶ 18.

Prior to trial, a *Wade* hearing was held during which Koch was the only witness.  *See Def. Exhibit E*.  The People presented evidence that a Spanish-speaking officer had translated for Hernandez. As to what occurred at the photo array, the only evidence presented was Koch's testimony as to what Hernandez had said despite the fact that Det. Koch admittedly knew very little Spanish and therefore, could not possibly know what was said by Juan Jr. to his father or vice versa.

Despite defense counsel's arguments that using Juan Jr. was improper and that Koch could not possibly vouch for the accuracy of Juan Jr.'s translation or for what Hernandez actually

said, the *Wade* hearing judge denied suppression on the basis that there was no basis to question the accuracy of the translation because Juan Jr. did not know Plaintiff. *People v. Delamota*, 18 N.Y.3d 112 (2011).

At trial, Juan Jr. testified, that contrary to Koch's assertion that Juan Jr. had claimed that did not know Plaintiff, in fact he had known Sebastian for a long time. *Id.* Juan Jr. also testified that he knew that plaintiff had been shot; in fact, he had been present when plaintiff was taken from the location where he was shot in an ambulance. *Id.* Based on this newly submitted evidence, defense counsel sought to reopen the *Wade* hearing and the trial judge agreed to reconsider the suppression issue based on the additional trial evidence. *Id.*

The trial court concluded that the trial evidence would not have made a difference to the hearing judge's decision despite the Judge's reliance on the fact that Juan Jr. did not know plaintiff as the basis for his denial of suppression. *Id.*

Contradicting the statement Hernandez had originally made to Koch that the perpetrator had held a knife to his throat with his right hand, while at the same time taking Hernandez's property with his left hand, at trial, Hernandez testified that after pushing him against a wall, the perpetrator and had placed a knife to his throat with his right hand and, lacking the strength to raise his left arm above his waist, signaled Juan Sr. to take out his wallet. *See Exhibit E.* Hernandez also testified that he and the perpetrator had been face to face during the robbery and that he never seen that man before. *Id. at 116.*

Hernandez also categorically denied telling Koch that the robber had used his left hand to take his property, including money, a cell phone and the gold chain he wore around his neck while holding a knife to Hernandez's throat with his right hand. *Id.* Koch testified that

Hernandez had never told him that the robber had a bad arm or that he had directed Hernandez to remove his own chain and other property. *Id.*

On October 4, 2007, plaintiff was convicted of robbery in the first degree (PL §160.15(3), menacing in the second degree (PL §120.14(1) and criminal possession of a weapon in the third degree (PL §265.02(1). Complaint ¶ 19. On February 13, 2008, he was sentenced to ten years in prison followed by five years of post-release supervision. Complaint ¶ 20.

**The Court of Appeals Decision**

On November 17, 2011, the Court of Appeals unanimously vacated Plaintiff's conviction, finding that the photo-array was unduly suggestive and that "the suggestiveness cannot be attributed to the victim's son, but to the detective's decision to utilize him as the interpreter notwithstanding the possible risks that were involved in this practice". *People v. Delamota*, 18 N.Y.3d 107, 118-19 (2011).

In the decision, the majority noted that, "[c]oncerns about the propriety of a conviction are heightened in a case like this where there was some evidence that the robber used both of his arms but it was undisputed that only one of defendant's arms was fully functional." *Id.* at 117.

In concluding that the photo array was unduly suggestive, the Court of Appeals noted that:

> "[t]he significant revelation to the contrary at trial considerably strengthened defendant's suggestiveness claim when viewed in conjunction with other relevant facts: (1) the detective acted on unspecified neighborhood gossip (the reliability of which was never directly questioned or tested) regarding the robber's name and history based on information provided by Juan Jr.; (2) the detective was apparently concerned about the son's possible preexisting familiarity with defendant (and the suggestiveness that this could cause) and broached the topic before the photo array was conducted; (3) the detective either was or should have been aware of the substantial risk that the son was familiar with defendant despite his assurance to the contrary; (4) there was no apparent impediment to the detective utilizing a Spanish interpreter who did not have preexisting information about the possible perpetrator or a familial

7

connection to the victim; and (5) the detective could not be reasonably sure that the son would accurately translate the conversation." *Id.* at 118.

Three Justices, dissented to the extent that rather than remand the case for further proceeding, they voted to dismiss the indictment in its entirely, because "[v]iewing the record as a whole, there is no evidence that defendant committed the crime of which he was convicted other than the victim's identification, which has morphed and become so unrecognizable when compared to its original form that no reasonable jury could find it to be accurate beyond a reasonable doubt. We are deeply troubled by the nature of the identification evidence in this case which raises a serious question of whether an innocent man has been convicted". *Delamota, supra at 120*.

On September 13, 2012, almost six years after Plaintiff was arrested, all criminal charges against him were finally dismissed.

**Recently discovered evidence**

On July 20, 2015, one day before the instant opposition papers were due, Defendants served their Responses and Objections to Plaintiff's First Set of Interrogatories and Document Demands. As part of Defendants' document production, they have produced a complaint filed in the Eastern District of New York, wherein in it is alleged that Koch, the defendant herein, conducted an improper identification procedure, which, as in this case, involved the failure to use an interpreter in order to accurately communicate with the complainants. *Plaintiff's Exhibit A*.

### STANDARD OF REVIEW

A complaint generally need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to satisfy federal notice pleading requirements. Fed.R.Civ.P. 8(a) (2). In deciding a Rule 12(b) (6) motion, the Court accepts as true the factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor.

8

*Swiatkowski v. Citibank,* 446 Fed. Appx. 360, 360–61 (2d Cir.2011); *see also Ashcroft v. Iqbal* 556 U.S. 662 (2009).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' *Iqbal,* 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007), which explicitly disclaimed any requirement of heightened pleadings). A claim has facial plausibility when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  Plausibility "is not akin to a probability requirement;" rather, plausibility only requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quotation marks omitted).  Only where Complaint does not state any set of facts that would entitle plaintiffs to relief is dismissal pursuant to Rule 12 (b) (6) warranted. *Jean-Louis v. Warfield*, 12-CV-01967 ADS ARL, 2012 WL 4793550 (E.D.N.Y. Oct. 6, 2012) citing *Hertz Corp. v. City of New York,* 1 F.3d 121, 125 (2d Cir.1993).

As Defendant states in its moving papers, in addition to the pleading itself, the Court may consider documents that are referenced in the complaint; documents that the plaintiff relied on in bringing suit and that are either in the plaintiff s possession or that the plaintiff knew of when bringing suit and matters of which judicial notice may be taken.  Defendant has asked the Court to consider documents other than the pleadings.  Similarly, Plaintiff submits exhibits A-E for the Court's consideration.

9

## ARGUMENT

## POINT I

## PLAINTIFF'S COMPLAINT STATES A CLAIM FOR MALICIOUS PROSECUTION

Defendants maintain that Plaintiff's complaint does not state a claim for malicious prosecution because, as a matter of law, there was probable cause for the prosecution and because Plaintiff was indicted by a grand jury. *Def. Mem. at 6-10*. Both arguments are unavailing.

### A. <u>Probable Cause</u>

First, as a matter of law, Hernandez's uncorroborated statements did not provide probable cause to arrest or prosecute plaintiff. *See Wu v. City of New York*, 934 F. Supp. 581, 587 (S.D.N.Y. 1996) ["Second Circuit case law stresses the importance of investigation and corroboration."]; *Golden v. City of New York*, 418 F. Supp. 2d 226, 232-33 (E.D.N.Y. 2006) [allegations of a victim alone may not establish probable cause unless information is sufficiently reliable and corroborated]; *Oliveira v. Mayer*, 23 F.3d 642, 647 (2d Cir 1994) [information provided by witness must be "sufficiently reliable and corroborated"); *Marin v. Viggiani*, No. 92 CIV. 3836, 1993 WL 404098, 8 (S.D.N.Y. Oct. 5, 1993) [victim's complaint must be accompanied by "independent corroborative evidence to support at least some of the victim's assertions"].

As the Court stated in *Jovanovic v. City of New York*, No. 04 Civ. 8437, 2006 WL 2411541, 7 (S.D.N.Y. Aug. 17, 2006) "[t]he fact that a victim provides the police with information of an alleged crime does not, without more, establish probable cause. Rather, the officer has a duty to assess the reliability of the victim and, if circumstances call into doubt the victim's veracity, to investigate the allegations and corroborate them". *Lowth v. Town of*

*Cheektowaga,* 82 F.3d 563, 571 (2d Cir. 1996) [the failure to make a further inquiry when a reasonable person would have done so may be evidence of a lack of probable cause]; *Bullard v. City of New York*, No. 01 Civ. 11613, 2003 WL 168444 (S.D.N.Y. Jan. 20, 2003) [refusing to dismiss the complaint where "there were sufficient indications that the complainants were not reliable sources of probable cause and the defendants did nothing to investigate the allegations, corroborate them, or pursue plaintiff's claims that he was innocent"); *Wilson v. McMullen*, No. 07-CV-948, 2010 WL 1268055 at 4 (E.D.N.Y. Mar. 30, 2010).

Where the existence of probable cause turns, as it does here, on disputed issues of fact relating to the reliability of the information presented to the arresting officer and the reasonableness of his investigation, the issue of probable cause is not amenable to disposition by summary judgment. *Hill v. City of New York*, No. 05 Civ. 9473, 2007 WL 4592000, at 3 (S.D.N.Y. Dec. 28, 2007); *see also Kafafian v. Young*, No. 3:10–CV–1657, 2011 WL 1134251, at 3 (D. Conn. Mar. 25, 2011).

Although, here, defendants seek disposition by motion to dismiss and not summary judgment, the principles can be similarly applied.  Here, without the benefits of discovery and examinations before trial, defendants' application to have the instant claims dismissed on the issue of probable cause where there are disputed issues of fact relating to the reliability of the information presented to Koch and the reasonableness of his investigation (or lack thereof), the motion to dismiss on the pleadings should be denied.

The word of an unreliable complaining witness does not, as a matter of law, provide probable cause to arrest.  The Second Circuit has held that "[a]n arresting officer advised of a crime by a person who claims to be the victim . . . has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." *Singer v. Fulton County Sheriff,* 63

F.3d 110, 119 (2d Cir. 1995) (emphasis added); *see also Stansbury v. Wertman*, 721 F.3d 84, 90

(2d Cir. 2013); *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) [the reliability or veracity

of the informant and the basis for the informant's knowledge are two important factors in

determining whether probable cause to arrest existed]; *Vanderwoude v. City of New York*, No. 12

Civ. 90462014 U.S. Dist. LEXIS 79064, at 48 (S.D.N.Y. June 10, 2014); *Bail v. Ramirez*, No. 04

Civ. 5084, 2007 WL 959045, at 7 (S.D.N.Y. Mar. 29, 2007) [where there are doubts as to a

witness' truthfulness . . . the police must gather additional information to buttress them]; *Cornett

v. Brown*, No. 04 CV 0754, 2006 WL 845568, at 4 (E.D.N.Y. Mar. 30, 2006); *Bullard v. City of

New York*, No. 01 CIV. 11613, 2003 WL 168444, at 4 (S.D.N.Y. Jan. 20, 2003) [refusing to

dismiss complaint where "there were sufficient indications that the complainants were not

reliable sources of probable cause and the defendants did nothing to investigate the allegations,

corroborate them, or pursue plaintiff's claims that he was innocent].

In this case, as the Court of Appeals noted, there was serious conflict about the

perpetrator's physical appearance. While the victim indicated that the perpetrator was a man in

his mid–20s who weighed about 140 pounds, was approximately five feet six inches tall and held

a knife in his right hand while he stole property with his left hand; defendant was 18 years old at

the time of the robbery, stood six feet, three inches tall and had a nonfunctioning left arm.

Hernandez changed his description of the robber several times throughout the course of

the investigation. When the events were most fresh, he could not describe the robber. He made

no mention of any disability or other distinguishing features.

The same night, at the precinct, with Juan Jr. translating, Hernandez described his

assailant, who he was unable to describe earlier and whose race he had claimed not to know, as a

male, Hispanic, 5'6" and in his mid-twenties.  Again, Hernandez Sr. made no mention of any

disability.

> As Court of Appeals noted in its decision:

>> 1) the detective acted on unspecified neighborhood gossip (the reliability
>> of which was never directly questioned or tested) regarding the robber's
>> name and history based on information provided by Juan Jr.; (2) the
>> detective was apparently concerned about the son's possible preexisting
>> familiarity with defendant (and the suggestiveness that this could cause)
>> and broached the topic before the photo array was conducted; (3) the
>> detective either was or should have been aware of the substantial risk
>> that the son was familiar with defendant despite his assurance to the
>> contrary; (4) there was no apparent impediment to the detective utilizing
>> a Spanish interpreter who did not have preexisting information about the
>> possible perpetrator or a familial connection to the victim; and (5) the
>> detective could not be reasonably sure that the son would accurately
>> translate the conversation.

> *Delamota, supra at 115*.

Additionally, although "probable cause does not demand the certainty we associate with

formal trials," *Massachusetts v. Upton*, 466 U.S. 727, 734, 104 S.Ct. 2085, 80 L.Ed.2d 721

(1984) (internal quotation marks and citation omitted) it must rest on "more than rumor,

suspicion, or even a 'strong reason to suspect'". *United States v. Fisher*, 702 F.2d 372, 375 (2d

Cir.1983).

In this regard, although Juan Jr. told Koch the "word on the street" was that a guy named

"Sebastian", who had been shot a year earlier, had committed the robbery, there is no indication

that Koch did conducted any investigation regarding the source of this alleged "word on the

street."  Instead, based on these uncorroborated statements and without any further inquiry,

Koch, learning that Plaintiff had been shot the previous April, included his picture in the photo

array.  Notwithstanding that Koch learned that plaintiff lived in the same neighborhood as the

Hernandez and Juan Jr. and Plaintiff were practically the same age, by his own admission, he did

not question the veracity of Juan Jr.'s statement that he did not know plaintiff and permitting him to translate for his father.

For all intents and purposes, it was actually Juan Jr., who was not the victim and who was not present during the robbery, who made the identification of plaintiff as the perpetrator because it was the son, who impersonating Hernandez, initially called the police; it was Juan Jr. who suggested that based on "word on the street", it was a man named Sebastian, who had been previously shot in Queens, that had committed the crime; it was Juan, Jr. who mentioned to Koch plaintiff's disability to Koch and most importantly, because Koch used Juan Jr. as the interpreter and there is no way to know what Hernandez actually said, in reality it was Juan Jr. who identified Plaintiff at the photo array.

Plaintiff submits that the inconsistencies in Hernandez's description of the perpetrator, which changed at every meeting with Koch, coupled with Juan Jr.'s call to suggest the identity of the perpetrator based on neighborhood gossip and impossibility of Plaintiff, who did not have use of his left hand, having used his right hand to hold a knife while removing the victim's property from his person with his left hand, were sufficient to alert Det. Koch to the unreliability of the sources of probable cause and to conduct further inquiry, which he did not do.

## POINT II

### PLAINTIFF'S COMPLAINT SETS FORTH A PRIMA FACIE CASE FOR CONSPIRACY

The elements of a §1983 conspiracy claim for deprivation of civil rights are: (1) an agreement between two or more state actors, or a state actor and a private entity; (2) to act in concert to inflict constitutional injury; and (3) an overt act done in furtherance of the goal of causing damages. *Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999) (citations omitted).

At paragraphs 125-29 and 130-35 of his Verified Complaint, Plaintiff alleges that defendants Koch, Scotti and Brown violated his civil rights by fabricating an account and/or evidence concerning the arrest of plaintiff; withholding exculpatory evidence, employing unduly suggestive identification procedures; failing to properly investigate the circumstances of the crime of which plaintiff was wrongfully accused and in knowingly accusing plaintiff of a crime that defendants knew he had not committed.   See Complaint ¶125-29; 130-35.

Plaintiff's claim for conspiracy is based on the fact that five days after Juan Jr. called the police impersonating his father to report the subject robbery, he met with Det. Koch and Hernandez and told Koch, based on neighborhood gossip, that a man named Sebastian, who had been shot on Elmhurst Avenue earlier as his father's attacker.  It was only after this information was imparted to Koch by Juan Jr. that suddenly the latter's father, Hernandez, previously unable to identify any of the perpetrator's features other than his height and approximate weight, was miraculously able to identify Plaintiff in spite of the fact that the physical characteristics of the person identified, Plaintiff, were markedly different from the description of the robber provided to Koch.

At trial, Juan Jr. admitted to knowing Plaintiff for a long time prior to the robbery and had even been present when defendant was shot in April 2006. *People v. Delamota*, 18 N.Y.3d 107, 112 (2011).  Although officially, this information came out for the first time at trial, at this stage of the proceeding, where there has not been any discovery, it is impossible to ascertain with any certainty whether this information was actually unknown until the time of trial or whether Koch and/or Scotti knew before trial of Juan Jr.'s familiarity with Plaintiff.  If either Koch or Scotti were aware, prior to the presentation before the grand jury or even prior to trial, that Juan

Jr., in fact knew Delamota and purposely withheld this information that would be sufficient to establish a *prima facie* case for conspiracy.

Given the questionable circumstances surrounding the photo array, followed by a lineup that was attended not only by the victim, Koch and a Spanish interpreter but also by ADA Scotti, it is entirely plausible that Koch, along with Juan Jr. and/or ADA Scotti had an agreement to act in concert to deprive plaintiff of his constitutional due process rights. Both the photo array and the lineup constitute acts in furtherance of the conspiracy.

Defendants' attack on Plaintiff's claim for conspiracy under either § 1983 or § 1985 is similar to the one made by the defendants in *McCray v. City of New York*, No. 03 CIV 10080 (DAB), 2007 WL 4352748, at 23 (S.D.N.Y. Dec. 11, 2007). In *McCray,* the court found that plaintiff's complaint sufficiently alleged that the defendant police officer and prosecutors acted in concert with sufficient specificity to render a civil rights conspiracy plausible. *Id.*

In finding plaintiffs' claims in *McCray* to be plausible, the Court concluded that plaintiffs' allegations, similar to Plaintiff's allegations in this case, that the police officers and prosecutors acted in concert to coerce, fabricate and conceal exculpatory evidence were overt acts in furtherance of the conspiracy, as were the subsequent acts of concealing the fabrication and withholding evidence.

Respectfully, in this case, plaintiff has sufficiently pleaded a conspiracy to violate his civil rights with the same specificity that the court in *McCray* found sufficient to withstand a motion to dismiss. Accordingly, defendants' motion to dismiss the instant claims for conspiracy should similarly be denied.

**POINT III**

**DEFENDANTS BROWN AND SCOTTI ARE NOT ENTITLED
TO DISMISSAL OF THE COMPLAINT ON THE PLEADINGS
ON ABSOLUTE IMMUNITY GROUNDS**

A.    **District Attorney Brown**

While Plaintiff does not seek to hold the District Attorney liable under the theory of

*respondeat superior*, he does seek to hold him liable pursuant to 42 U.S.C. § 1983 in his

representative or official capacity as a local policymaker for the City of New York with respect

to the deficiencies in supervision and training of Assistant District Attorneys and police officers.

Those actions against him are not subject to dismissal.

It is well-settled that a supervisory official such as the District Attorney, may be held

liable under Section 1983 if he created a policy or custom under which unconstitutional practices

occurred, or allowed the continuance of such a policy or custom ...." *Colon v. Coughlin,* 58 F.3d

865, 873 (2d Cir. 1995).  A decision by a district attorney not to train assistants in their legal duty

to avoid violating constitutional rights rises to an official government policy for Section 1983

purposes if the failure to train amounts to "deliberate indifference to the rights of persons with

whom the untrained employees come into contact." *Connick v. Thompson*, 131 S. Ct. 1350, 1354

(2011) (internal citation omitted)

Where, as here, Plaintiff can show a pattern of deliberate indifference to the rights of

similarly situated individuals, the District Attorney can be held liable in his capacity as District

Attorney.  *See, e.g., Gentile v. County of Suffolk*, 926 F.2d 142; *Walker v. City of New York*, 974

F.2d 293, cert. denied 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762.  In his complaint, Plaintiff

asserts that DA Brown created a policy or custom under which unconstitutional practices

occurred, or allowed the continuance of such a policy or custom. *See* Complaint ¶¶ 51-54; 66-72,

76-82, 90, 93, 100-150.   Within the context of a motion to dismiss, Plaintiff's allegations, taken as true, would be sufficient to establish DA Brown's liability for creating and/or continuing a policy that caused the Plaintiff to be subjected to a denial of his constitutional right to due process, failing to disclose *Brady* material identifying where probable cause did not exist particularly where there is a single complainant, and allowing the continuance of such a policy or custom that would cause said deprivation.

Plaintiff contends that DA Brown can be held liable for failure to train assistant district attorneys on adherence to constitutional principles particularly where it has been established, as here, that assistant district attorneys can sometimes participate of the investigatory phase of arrest.  Additionally, plaintiff's claims against DA Brown for failure to train assistant district attorneys with regard to safeguarding and turning over *Brady* material and exculpatory evidence should not be dismissed at the pleading stage absent discovery as to both the policies and violations.

As discussed, *infra*, the claims against DA Brown are quite plausible.  Indeed, the Queens County District Attorney's Office has been found responsible and/or been sued based on these same allegations on many occasions. *See, e.g.*, *People v. Bennett*, 40 A.D.3d 653, 837 N.Y.S.2d 655, 2007 N.Y. Slip Op. 03937; *People v. Baba-Ali*, 179 A.D.2d 725, 578 N.Y.S.2d 633. Plaintiff's claims that these policies and practices existed and continued, at minimum, until the date of his arrest and prosecution, taken as true, would be sufficient to erode any possible claims of immunity by DA Brown.

At minimum, Plaintiff has asserted sufficient facts to warrant continuation of the matter to discovery and DA Brown's motion to dismiss should be denied.

18

**B.** **ADA Scotti**

Similarly, the claims against ADA Scotti are not subject to dismissal on the pleadings.  In determining whether a prosecutor enjoys absolute immunity, as defendants urge here, the courts are to apply a "functional approach," examining "the nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons,* 509 U.S. 259, 269 (1993). Thus, "the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor." *Id.* at 273.  The Court must inquire whether the actions complained of are part of a prosecutor's traditional functions, *see, e.g., Pinaud v. County of Suffolk,* 52 F.3d 1139, 1147-48 (2d. Cir.1995), and "whether [they] are closely associated with the judicial process," *Burns v. Reed,* 500 U.S. 478, 495 (1991).

ADA Scotti's participation in the lineup was not rooted in "the professional evaluation of the evidence assembled by the police," but was rather actual participation in the evidence gathering.  Nor were Scotti's acts limited to preparing for "presentation at trial before a grand jury after a decision to seek an indictment has been made."  *Buckley, supra*; *see also, Lacey v. Arizona*, 693 F.3d 896, 914 (9th. Cir. 2012).  ADA Scotti's activities prior to the actual prosecution were of a type that have been found not to fall within the ambit of absolute immunity.  *See Buckley*, 509 U.S. at 270-271 [finding that prosecutors' cooperative efforts with police was investigative and not protected by absolute immunity]; *Burns v. Reed*, 500 U.S. 478 (1991) [a prosecutor is not entitled to absolute immunity for giving legal advice to police]; *McCray v. City of New York*, No. 03 CIV 10080, 2007 WL 4352748, at 15-16 (S.D.N.Y. Dec. 11, 2007) [where ADAs themselves investigated or worked with police officers advising them on their investigative tactics, they are not entitled to absolute immunity] (internal citation omitted).

Contrary to Defendants' assertions, there is no doubt that ADA Scotti took part in the pre-action investigation based on his participation in the lineup. *See Plaintiff's Exhibit C.* Plaintiff alleges that as part of the conspiracy to deprive him of his constitutional rights, ADA Scotti conferred with Det. Koch and participated in the lineup in an attempt to 'rectify" the unduly suggestive nature of the first photo array.  These acts, coupled with Scotti's failure to require further investigation, form the basis for his liability and take his actions outside of the ambit of absolute immunity.  *See Spavone v. New York State Department of Correctional Services*, 719 F.3d 127, 135 (2d Cir. 2013) [it is well settled that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983].  Indeed, Defendant readily concedes this point.  *See Def. Mem. In Supp. at 15*.

As such, ADA Scotti is not entitled to absolute immunity.  In any event, the full nature of ADA Scotti's involvement and any potentially applicable immunity defense should be determined after the completion of discovery and not based on the pleadings.

## POINT IV

### DEFENDANTS SCOTTI AND KOCH ARE NOT ENTITLED TO QUALIFIED IMMUNITY

Defendants Koch and Scotti's motion to dismiss on qualified immunity grounds fails as a matter of law and should be summarily denied.

**Det. Koch**

The Supreme Court has held that "[q]ualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing: (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011); *see also Burns v. Citarella,* 443 F.Supp.2d 464, 469 (S.D.N.Y. 2006).

The Second Circuit has long recognized that the right not to be arrested or prosecuted without probable cause is a constitutional right. *See, e.g., Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir.1991) [the right not to be arrested or prosecuted without probable cause has long been a clearly established constitutional right]. This right was clearly established as of the date of plaintiff's arrest in 2007.

Taken in the light most favorable to plaintiff, the facts alleged in the complaint, when proven, demonstrate that Koch's conduct violated constitutional rights that were clearly established at the time of the challenged conduct. In his motion, Koch seeks to have the issue of whether he is entitled to qualified immunity hinge on only the use of Juan Jr. as a translator.

Moreover, the newly disclosed evidence that Koch himself, had been sued in connection with the same constitutional claim regarding the failure to use an interpreter in an identification belies any claim of qualified immunity. *Plaintiff's Exhibit A*.

The impropriety of the use of Juan Jr. as a translator, however, is not the only allegation in the complaint that asserts acts that violated a statutory or constitutional right that was clearly established at the time. Koch's failure to investigate whether Juan Jr. knew plaintiff prior to using him as a translator; his failure to investigate Hernandez's claims as the sole eyewitness when he gave conflicting descriptions of the perpetrator at each interview with Koch and his reliance on Juan Jr.'s "word on the street" gossip in selecting Plaintiff's photo for the unduly suggestive photo array are acts that violate plaintiff's clearly established constitutional rights. *Delamota*, *supra*, at 115.

Moreover, the availability of the qualified immunity defense depends on whether there was "arguable probable cause" under the particular facts and circumstances, i.e., whether "(a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of

reasonable competence could disagree on whether the probable cause test was met." *Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir.2010) (internal quotation marks and citations omitted); *see also Caceres v. Port Auth. of N.Y. & N.J.*, 631 F.3d 620, 622 (2d Cir.2011); *O'Neill v. Town of Babylon*, 986 F.2d 646, 649-50 (2d. Cir.1993); *Lennon v. Miller*, 66 F.3d 416, 424-25 (2d Cir.1995).

To find enjoy the benefits of qualified immunity, Koch must establish that, under the totality of circumstances, he had probable cause to arrest and initiate Plaintiff's prosecution and not just whether the officer should have known not to use Juan, Jr. as translator. Koch simply cannot meet that burden; especially at this early stage of the proceedings.

First, the totality of circumstances, including the vast difference between the description of the perpetrator and Plaintiff's characteristic, made the identification of Plaintiff as the perpetrator, inherently improbable.

Second, the creation of a situation where it is likely "to create a substantial likelihood that the chosen suspect would be singled out for identification" has been established as a constitutional violation. *Manganiello v. Agostini*, No. 07 Civ. 3644, 2008 U.S. Dist. LEXIS 99181, at 19 (S.D.N.Y. Dec. 9, 2008) [defendant police officer knew that his main witness was not credible and yet failed to provide such evidence to the prosecutor; and failed to inquire further into various leads, when a reasonable person would have done so, evidences a lack of probable cause].

Where, as here, the suggestive identification is the result of the actions of police and/or prosecutors, a constitutional violation will be found. In this regard, it must be stressed that the Court of Appeals of the State of New York unequivocally laid that the suggestiveness of the identification directly at Koch's door. *Delamota at 118-119*.

22

Koch knew or, in the exercise of reasonable care, should have known that he should not have Juan Jr. as interpreter for his father because it posed an unnecessary risk of adding an unknown quantity to the process.  In fact, Det. Koch made sure to ask Juan Jr. if he knew plaintiff before the photo array, clearly aware that he should not have used Juan Jr. to interpret in the first place.  *See Def. Exhibit E at 33*.

Plaintiff respectfully submits that no officer of reasonable competence could have believed that Koch's acts were constitutional.  *See Mem. In Supp. at 18*.   Not only was the constitutional violation so "obvious" that Koch had fair warning that his conduct was unconstitutional, but Koch himself knew that using as translator someone who knew the Plaintiff would violate his constitutional rights as evidenced by the fact that Koch knew to ask Juan Jr if he knew Plaintiff and by a prior lawsuit alleging the same constitutional transgression of not using an appropriate translator at an identification procedure. *Plaintiff's Exhibit A.*

In *Bermudez v. City of New York*, 2015 WL 3650756 (2d Cir. 2015*)*, the Second Circuit recently addressed the issue of qualified immunity.  In *Bermudez*, the Court, concluding that Defendants were not entitled to qualified immunity, found that where genuine issues of material fact as to whether an officer of reasonable competence could have believed that the manner in which the photo arrays were conducted did not violate plaintiff's rights, a factual determination is necessary.  Thus, at minimum in this case, there are factual determinations with respect to qualified immunity, which cannot be determined at this early stage of the proceedings.

Accepting the allegations in the factual in complaint as true in accordance with the standard of review for a motion to dismiss, Koch's motion to dismiss on qualified immunity grounds should be denied.

**ADA Scotti**

With regard Scotti's claim of entitlement to qualified immunity, it should be noted that Defendants do not dispute that he was acting outside of his prosecutorial functions with regard to the improper identification procedures employed but only that the behavior itself was based on arguable probable cause. Therefore, the above-discussed bases for denying qualified immunity apply to him with equal force.

Qualified immunity does not protect those "who knowingly violate the law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1065 (2d Cir.1995). Scotti, as an Assistant District Attorney who is supposed to be well-versed in the law, can hardly claim to be ignorant of the constitutional boundaries that exist when employing identification procedures, which in this case, the Court of Appeals found to be unduly suggestive.

Plaintiff's complaint alleges, *inter alia*, that Scotti took part in the knowing, unlawful arrest without probable cause, conspiracy, failure to intervene and *Brady* violations. (Compl.¶¶ 28-31, 44-46, 98-101, 104-124, 125-144). Accepting such allegations as true, the defense of qualified immunity will not protect ADA Scotti from liability; especially at this stage of the proceedings.

Although issues of immunity should be decided at the earliest possible juncture, the Court should respectfully decline to rule on this issue as a matter of law at this stage, given the allegations of misconduct in the complaint that must be accepted as true. *See, e.g.*, *Coggins v. County of Nassau*, No. 07-CV-3624 (JFB) (AKT), 2008 WL 2522501, at 9 (E.D.N.Y. June 20, 2008); *White,* 855 F.2d at 961 [plaintiff's complaint alleging facts supporting a claim of malicious prosecution should defeat a claim of immunity at the early stages of the litigation].

As such, Defendant, Scotti's motion to dismiss on the basis of qualified immunity for

should also be denied.

## POINT V

### PLAINTIFF'S UNDULY SUGGESTIVE IDENTIFICATION CLAIM
### IS NOT SUBJECT TO DISMISSAL

Defendant argument that Plaintiff's suggestive identification claim should be dismissed,

does not find support in fact or law.

Plaintiff respectfully submits that in light of the fact that the New York State Court of

Appeals found the identification procedures employed by Koch to be unduly suggestive in

violation of Plaintiff's due process constitutional rights warranting vacating Plaintiff's

conviction, it Plaintiff's claim of suggestive identification cannot be dismissed, let alone at the

pleading stage. *People v. Delamota*, 18 N.Y. 3d 107, 118-19 (2011).

In fact, Plaintiff suggest that given the Court of Appeals unequivocal findings, it may

very well be that it is Plaintiff who is entitled to judgment on the suggestive identification claim

as a matter of law.

Contrary to Defendants' arguments, Plaintiff's allegations of violation of due process

cannot be curtailed by the intervening act of the judge at trial. If, as the Court of Appeals

concluded, Koch's unduly suggestive photo array was a significant basis for Hernandez's false

identification of Plaintiff as the perpetrator, Plaintiff can recover for the full extent of his

damages under 42 U.S.C. § 1983. *Newton v. City of New York*, 566 F. Supp. 2d 256, 277

(S.D.N.Y. 2008).

As such, Defendants' motion to dismiss Plaintiff unduly suggestive identification claim

should be denied.

**POINT VI**

**PLAINTIFF'S DUE PROCESS CLAIMS ARE NOT DUPLICATIVE
OF HIS OTHER CLAIMS**

Plaintiff's Fourth Cause of Action is intended to set forth a claim under the Due Process

Clause of the Fourteenth Amendment for fabrication of evidence and for violation of the right to

a fair trial under the Sixth Amendment.[1] These two claims are considered to be one and the

same. *See, e.g., Jean-Laurent v. Bowman*, No. 12 CV 2954, 2014 U.S. Dist. LEXIS 131865, at

37, n.18 (E.D.N.Y. July 7, 2014) [discussing fabrication of evidence as a due process violation

and then noting that "[s]ome courts also refer to this claim as a denial of the right to a fair trial.").

Defendants' argument that Plaintiff's claim must be dismissed because it is duplicative of

plaintiff's Fourth Amendment claims has been squarely rejected repeatedly. In *Jovanovic v. City

of New York,* No. 04 Civ. 8437, 2006 WL 2411541, at 13 (S.D.N.Y. Aug. 17, 2006), the Court

concluded that a claim for malicious prosecution and one for denial of a fair trial based on the

same fabrication of evidence may coexist and "plaintiff may legitimately bring both." *See also

Brown v. City of New York,* No. 08–CV–5095, 2013 WL 1338785, at 5 n.5 (E.D.N.Y. Apr. 1,

2013); *Nibbs v. City of New York*, 800 F. Supp. 2d 574, 576 (S.D.N.Y. 2011); *Brandon v. City of

New York*, 705 F. Supp. 2d 261, 275-76 (S.D.N.Y. 2010); *Cruz v. Reilly,* No. 08-CV-1245, 2009

WL 2567990, at*3 n.2 (E.D.N.Y. Aug. 18, 2009); *Perez v. Cuomo,* No. 09 Civ. 1109, 2009 WL

1046137, at 7 (E.D.N.Y. Apr. 17, 2009); *Schiller v. City of New York*, Nos. 04 Civ. 7922 et al.,

2008 WL 200021, at 9 (S.D.N.Y. Jan. 23, 2008); *Taylor v. City of New York,* No. 03 Civ. 6477,

2006 WL 1699606, at 4-5 (S.D.N.Y. June 21, 2006).

Here, for the same reasons as the cases cited above, Defendants' contention that Plaintiff

should not be allowed to maintain both causes of action should be summarily rejected.

---

[1]To the extent that this is not clear from the face of the complaint, plaintiff is of course willing to amend in order to
clarify.

**POINT VII**

## PLAINTIFF HAS PLEADED SUFFICIENT FACTS TO SUPPORT A CLAIM FOR FAILURE TO INTERVENE AGAINST ADA SCOTTI

Contrary to Defendants' assertions, Plaintiff's complaint pleads sufficient facts to support a claim against Defendant, Scotti for failure to intervene. In this regard, a reading of Plaintiff's complaint reveals that he pleads factual assertions that 1) while the investigation was ongoing and prior to the commencement of the prosecution, Scotti learned that Plaintiff's constitutional rights were being violated by the police based on the absence of probable cause; (2) he knew that an unduly suggestive identification took place and (3) knew and/or committed *Brady* violations. Proof of any or of these assertions renders Scotti liable for failure to intervene.

If Scotti had a realistic opportunity to intervene and prevent the harm to Plaintiff, or a reasonable person in Scotti's position would have known that Plaintiff's constitutional rights were being violated and, as Plaintiff alleges here, Scotti not take reasonable steps to stop the unconstitutional conduct, Scotti can be found liable for his failure to intervene. *See, Chepilko v. City of New York, et al.*, 2012 U.S. Dist. LEXIS 15110 at 25-26 (citing *O'Neill v. Krzeminsk*i. 839 F.2d 9, 11-12 (2d Cir. 1988).

In consideration of the foregoing, Plaintiff submits that he has pleaded sufficient facts to support a claim for failure to intervene and this claims should not be dismissed.

**POINT VIII**

### PLAINTIFF HAS SUFFICIENTLY PLEADED A *BRADY* VIOLATION

Plaintiff's complaint also sufficiently states a claims for violation of Plaintiff's constitutional rights under *Brady v. Maryland*, 373 U.S. 83 (1963). Plaintiff alleges claims violation of the standards for disclosure of exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963). There are issues of disputed facts regarding whether exculpatory and

27

impeachment information was turned over, to whom, and in what form, which preclude a finding that defendants are entitled to dismissal at this pleading stage. *See, e.g., Blake v. Race,* 487 F.Supp.2d 187, 215-17 (E.D.N.Y. 2007). If, as Plaintiff alleges, during discovery, it is determined that Koch knew or had information that would have led to the conclusion that Juan Jr. in fact knew plaintiff and such information was not disclosed, this would establish a *Brady* violation.

Here, as in *Bermudez, supra* (*see* Point IV, *supra*), Plaintiff's complaint asserts a due process claim under *Brady*, arguing that Koch misled the ADA as to the nature of the photo identification procedures and the inconstancies in the complaining victim's testimony. Plaintiff contends that these facts should have been disclosed to him during the criminal prosecution.

In *Bermudez*, the Court agreed that a police officer can be held liable for pursuant to 42 U.S.C. § 1983 for *Brady* violations if he/she withheld exculpatory evidence from prosecutors. (citing *Walker v. City of New York*, 974 F.2d 293, 299 (2d Cir. 1992).

If, as Plaintiff alleges, significant exculpatory evidence was not disclosed to the prosecution, Koch can be held liable for *Brady* due process violations. *See* Verified Complaint ¶¶ 1-56, 73-75, 89, 98-101, 104-124, 125-144. Until discovery is complete, what exculpatory evidence constituting *Brady* material was in the hands of the police and whether that evidence was provided to the prosecutors cannot be factually determined. Therefore, dismissal at this juncture is not warranted.

Viewed in the light most favorable to Plaintiff, the allegations in his complaint are sufficient to defeat Defendants' motion to dismiss and allow discovery on those issues. Accordingly, the motion to dismiss Plaintiff's claims based on *Brady* violations should be denied.

## POINT IX

## PLAINTIFF'S COMPLAINT STATES A CLAIM AGAINST THE MUNICIPALITY FOR CIVIL RIGHTS VIOLATIONS PURSUANT TO *MONELL V. SOCIAL SERVICES*

Plaintiff's complaint alleges that the municipality is liable for civil rights violations

pursuant to 42 U.S.C. § 1983 under the holding in *Monell v. Dept. of Social Services of the City

of New York*, 436 U.S. 658 (1977) with sufficient particularity to withstand dismissal pursuant to

Fed. Rule 12 (b) (6).

In order to state a claim for civil rights violations against the municipality, as opposed to

an individual defendants, a plaintiff must allege: 1) an official policy or custom that 2) that

caused Plaintiff to be subjected to 3) a denial of his constitutional rights. *Monell* v. *Dept. of

Social Services of the City of New York*, 436 U.S. 658 (1977).

Plaintiff may demonstrate the existence of a policy, custom, or usage in a variety of ways.

He may, for example, provide evidence of a formal policy officially adopted by the municipality.

*Monell,* 436 U.S. at 690. Second, a single unconstitutional act or decision, when taken by an

authorized decision-maker, may be considered a policy and thus subject a municipality to

liability. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452

(1986); *Roe v. City of Waterbury,* 542 F.3d 31, 37 (2d Cir.2008). Third, a policy may be

established by showing that the acts of the municipal agent were part of a widespread practice

that, although not expressly authorized, constitutes a custom or usage of which a supervising

policymaker must have been aware. *Bryan Cty.,* 520 U.S. at 404.  Fourth, the municipality failed

to provide adequate training or supervision of its agents rising to the level of deliberate

indifference. *Connick v. Thompson,* 131 S.Ct. 1350, 1359–60, 179 L.Ed.2d 417 (2011); *City of

Canton, Ohio v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

The failure to properly supervise and train subordinates as well as condoning and ignoring evidence of police misconduct and sanctioning and covering up wrongdoing are recognizable causes of action pursuant to 42 U.S.C. § 1983. *Walker v. City of New York*, 974 F.2d 293 (2nd Cir. 1992).

Contrary to defendant's assertions, *Monell* claims are not subject to a heightened pleading standard and need only comply with the notice pleading requirement of Rule 8(a)(2) of the Federal Rules of Civil Procedure. Under the Federal Rules of Civil Procedure the complaint shall include "a short and plain statement of the claim showing that the pleader is entitled to relief". *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

Defendants' first argument in support of their motion to dismiss Plaintiff's *Monell* claims is that the complaint fails to assert the existence of an underlying constitutional violation. Contrary to this bold assertion, several distinct constitutional violations are set forth in the complaint. ¶ 191 alleges a policy of unconstitutional unduly suggestive identification procedures; ¶ 192 alleges a policy of unconstitutional withholding of exculpatory evidence (*Brady*). ¶ 195 alleges a policy of permitting police officers to use as interpreters during investigations persons related to the victims rather than using an uninvolved and objective interpreter. ¶ 199(e) alleges a policy of failure to identify potential witness identification and withholding of evidence violations and to maintain accurate records of allegations of such misconduct. Paragraph 202 more specifically alleges further facts in support of Plaintiff's *Monell* claims.

Defendant, while conceding that Plaintiff's complaint asserts a policy or custom adopted by the City of violating citizen's rights as shown by the findings of the Mollen Commission, they proceed to argue that those findings do not support Plaintiff's claims. Plaintiff is not required to

prove his claims at this juncture; he only needs to show that his complaint sufficiently states a plausible one.

Moreover, Plaintiff's complaint asserts a valid *Monell* claim based on the impropriety and misconduct of the District Attorney in failing to train and supervise ADA regarding *Brady* and other legal obligations.

In one of the leading cases in New York*, Ramos v. City of New York,* 285 A.D.2d 284, 729 N.Y.S.2d 678 (1st Dep't 2001), where *Monell* liability was predicated on the policies of the District Attorney, the Court held that District Attorney's Office is a policymaker for the City of New York where the claim lies not in the fact of the prosecution but in the District Attorney's managerial functions relating to supervision and training, especially pertaining to *Brady* disclosure.

The *Ramos* Court, citing *Gentile v. County of Suffolk*, 926 F.2d 142, noted that where a District Attorney evinces a pattern of ignoring law enforcement improprieties and misconduct or fails to train and supervise ADAs regarding *Brady* and other legal obligations (*Walker v. City of New York*, 974 F.2d 293, cert. denied 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762), such management failures correlate with defects in the District Attorney's role as a local policymaker. Hence, the *Ramos* Court, following Second Circuit precedents, concluded that where prosecutors, pursuant to policy or custom, conceal exculpatory evidence and commit other wrongs in order to secure a conviction, liability rests with the City and may be asserted under § 1983. *Babi-Ali, supra*.

In light of the above, Defendant's claim that the District Attorney's Office operates independently of the City with respect to prosecutorial functions and that any alleged failure may not be attributed to a policy or practice of the City is wholly without merit.

With regard to Plaintiff's allegations of *Brady* violations, although heightened pleadings are not required and Plaintiff's complaint sufficiently contains a "short and plain statement of the claim showing that the pleader is entitled to relief" to satisfy federal notice pleading requirements, the fact is that there is extrinsic evidence of systematic *Brady* violations in the Queens County District Attorney's Office to support Plaintiff's claim. Thus, for example, in *Babi-Ali v. City of New York,* 979 F. Supp. 268, 270 (S.D.N.Y. 1997*)*, the Court found that a cause of action under *Monell* liability for *Brady* violations was set forth where Plaintiff alleged a history of mishandling of *Brady* material by the Queens County District Attorney's Office on nine separate instances.[2]

Attached hereto as Exhibit B is a publicly available response letter from the Queens District Attorney's Office where it is admitted that there are at least 13 documented cases where the court "concluded that misconduct not only occurred, but was also harmful, necessitating the reversal of a conviction or the modification of a judgment." Of the cases referenced in said letter the following cases are significantly similar to the issues raised in Plaintiff's complaint in this case. *People v. Anderson*, 83 A.D.3d 854, 921 N.Y.S.2d 156, 2011 N.Y. Slip Op. 03078 (2d. Dep't 2011); *People v. Frantz*, 57 A.D.3d 692, 868 N.Y.S.2d 757, 2008 N.Y. Slip Op. 09814 (2d. Dep't 2008); *People v. Maio Ni*, 293 A.D.2d 552, 742 N.Y.S.2d 61, 2002 N.Y. Slip Op. 02832 (2d. Dep't 2002); *People v. Mitchell*, 14 A.D.3d 579, 789 N.Y.S.2d 185, 2005 N.Y. Slip Op. 00280 (2d. Dep't 2005); *People v. Rosas*, 297 A.D.2d 390, 746 N.Y.S.2d 610 (Mem), 2002 N.Y. Slip Op. 06271 (2d. Dep't 2002); Shih Wei Su v. Filion, 335 F.3d 119 (2d Cir. 2003).

Additionally, with regard to suggestive identification procedures, the following cases are illustrative of an ongoing citywide problem reflecting the city's failure to properly train its police

---

[2] In this regard, should the Court deem necessary for Plaintiff to specifically cite to the cases showing systematic violations of *Brady,* he respectfully prays that he be permitted to amend the pleadings to so include said violations.

officers with regard to the constitutional limitations therein employed. *Abdur Raheem v. Kelly*, 257 F.3d 122 (2d Cir. 2001); *People v. Racine*, 957 N.Y.S.2d 638 (Kings Co. Supreme 2010); *Wray v. Johnson*, 202 F.3d 515 (2d Cir. 2000); *Hylton v. Ercole*, No. 05-CV-4077, 2010 U.S. Dist. LEXIS 62352 (E.D.N.Y. June 23, 2010); *People v. Woolcock*, 792 N.Y.S.2d 804 (Kings Co. Supreme 2005); *People v. Cruz*, No. 643/10, 2015 N.Y. App. Div. LEXIS 4521 (1st Dep't June 2, 2015); United States v. Morgan, 690 F. Supp. 2d 272 (S.D.N.Y. 2010); *Stapleton v. Graham*, No. 09-CV-0382, 2011 U.S. Dist. LEXIS 49239 (E.D.N.Y. May 6, 2011); *Frazier v. New York*, 187 F. Supp. 2d 102 (S.D.N.Y. 2002); *In re Duane F.*, 764 N.Y.S.2d 434 (1st Dep't 2003).

Defendant's argument that plaintiff points to only a single incident of use of a family member as an interpreter as being insufficient to sustain his *Monell* claim is a very narrow interpretation of Plaintiff's complaint.  In light of the fact that Detective Koch has previously been accused and sued for unconstitutional identification procedures arising again out of the use or failure to use interpreters to communicate with complainants, Defendants can hardly argue that this was a one-time incident of violation of constitutional rights in the ambit of identification procedures. *Exhibit A*.

Defendants' reliance on *Connick v. Thompson*, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011), to support their position that Plaintiff's complaint must be dismissed because he has not shown a pattern of *Brady* violations as required by *Connick* is highly misplaced. While *Connick* hold that a single *Brady* violation does not support a *Monell* claim, in this case, as discussed above, Plaintiff does not rely on a single violation but on the repeated and systemic *Brady* violations of the Queens County District Attorney's Office.

Bearing in mind that this is a motion to dismiss at the pleading stage, before discovery, in the event, the court finds the complaint deficient in any way, given that the facts as described herein support Plaintiff's claims, Plaintiff respectfully requests to amend the pleadings in that regard.

Finally, Defendant argues the complaint fails to allege a causal connection between Det. Koch's use of an interpreter and plaintiff's subsequent arrest and conviction. First, Defendants once again wish to read Plaintiff's complaint narrowly as being limited to the use of the interpreter.  As discussed above, this is error. Defendant, for example, does not address Plaintiff's argument with respect to *Brady* violations.

Moreover, contrary to Defendants' assertions, ¶¶ 25, 36 and 195 of Plaintiff's specifically allege a causal connection between the use of Juan Jr. as interpreter and plaintiff's arrest and conviction. Further, plaintiff alleges in ¶ 142, upon information and belief, that Defendant, Scotti, improperly advised defendant Koch concerning the propriety of using Juan Jr. as the interpreter during the photo array. ¶ 195 alleges, upon information and belief, defendant, CITY had *de facto* policies and practices of permitting police officers to use as interpreters during investigations persons related to the victims rather than using an uninvolved and objective interpreter. Taken together, it is patently obvious defendant is in error and the complaint alleges a causal connection between the use of the interpreter and conviction as a policy violation.

## POINT X

## DEFENDANTS HAVE FAILED TO MEET THEIR BURDEN UNDER FED. R. CIV. P. 12(B)(6)

Plaintiff concedes that plaintiff's claims for false arrest are time-barred. However, defendants have otherwise failed to establish that any of plaintiff's remaining allegations are not

sufficiently plausible under the standards enunciated in *Twombly*, and that the claims made against defendants, herein, should be dismissed.

Even assuming, arguendo, that the Court should disagree, plaintiff should be allowed to amend his Verified Complaint. Leave to amend a pleading should be freely given and should be denied only where amendment would be futile, where it is sought in bad faith, or where it would prejudice opposing party. Fed. R. Civ. P. 15; *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1963); *see also AIU Ins. Co. v. Mitsui O.S.K. Lines, Ltd.*, 897 F.Supp. 724 (S.D.N.Y.1995). Granting leave to amend the instant Complaint would not cause any prejudice to defendants, since they have not yet served an Answer to the operative Complaint.

## CONCLUSION

For the forgoing reasons, Defendants' motion to dismiss plaintiff's Verified Complaint pursuant to Rule 12(b) (6) should be denied in its entirety.

Dated:  New York, New York
       July 21, 2015

                                **RUBERT & GROSS, P.C.**
                                Attorneys for Plaintiff
                                150 Broadway, Suite 712
                                New York, New York 10038
                                (212) 608-3103

                                By: _____
                                    RICHARD GROSS

<u>VIA ECF</u>

ROSEWEBER
225 Broadway
Suite 1607 New York, New York

ZACHARY W. CARTER
Corporation Counsel of the City of New York
*Attorney for Defendants*
100 Church Street, Room 3-147
New York, New York 10007

35

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------------X

SEBASTIAN DELAMOTA,

                                 Plaintiff,

        -against-

THE CITY OF NEW YORK, DET. BRUCE KOCH,
RICHARD A. BROWN, individually and as District
Attorney of the County of Queens and *ADA* "JOHN
SCOTTY", first name being fictitious and presently
unknown and intended to a Queens County Assistant
District Attorney employed in the Queens County District
Attorney's Office,

                                Defendants.

-----------------------------------------------------------------------------X

**Docket Number: 14-cv-5888**
**(NG) (RER)**

# MEMORANDUM OF LAW

**RUBERT & GROSS, P.C.**
**Attorneys for Plaintiff**
**150 Broadway, Suite 712**
**New York, New York 10038**
**(212) 608-3103**