UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SEBASTIAN DELAMOTA,

                Plaintiff,

- v. -

THE CITY OF NEW YORK, DET. BRUCE KOCH
RICHARD A. BROWN, ADA PAUL SCOTTI,

                Defendants.

------------------------------------------------------------x

**OPINION AND ORDER**

14-cv-5888 (NG)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAY 24 2016 ★
BROOKLYN OFFICE

GERSHON, United States District Judge:

This action is brought under 42 U.S.C. §§ 1983, 1985 and 1986 against the City of New York, New York Police Department Detective Bruce Koch, Queens County District Attorney Richard Brown individually and in his official capacity, and Assistant District Attorney Paul Scotti. The Complaint arises from plaintiff's conviction for robbery, which was reversed by the New York Court of Appeals on the ground that the trial court erred when it denied Delamota's motion, made during trial, to reopen the identification hearing which had been held, and denied, before trial. Plaintiff now brings a variety of claims arising out of the events relating to the identification procedures used before his arrest. Defendants move to dismiss the Complaint for failure to state a claim.

On October 4, 2007, after a jury trial, plaintiff was convicted of robbery in the first degree, criminal possession of a weapon in the third degree and menacing in the second degree. On February 13, 2008, the trial court denied plaintiff's motion to set aside his conviction and for a new trial. *People v. Delamota*, 18 Misc. 3d 1130(A) (Sup. Ct. Queens Cty. 2008). On June 22, 2010, the Appellate Division affirmed the conviction and the trial court's denial of plaintiff's

motion. *People v. Delamota*, 74 A.D.3d 1225 (2d Dep't 2010). On November 17, 2011, the New York Court of Appeals overturned plaintiff's conviction and remanded the case for a new trial. *People v. Delamota*, 18 N.Y.3d 107 (N.Y. 2011).

### I. The Complaint and State Court Proceedings

The background and facts are taken from plaintiff's Complaint and the decision of the New York Court of Appeals, which plaintiff references in the Complaint.

On October 27, 2006, Juan Hernandez's son ("Juan Jr.") called 911. Juan Jr., pretending to be his father, reported that he was robbed at knife point in an elevator in his apartment building.

Detective Bruce Koch spoke to Juan Hernandez that same evening, with Hernandez's son, Juan Jr., acting as translator. Hernandez, through his son, described the perpetrator as an Hispanic male in his twenties, about five feet, six inches tall and weighing approximately 140 pounds. At that time, Hernandez stated that the perpetrator held the knife in his right hand and took the stolen items with his left hand.

Detective Koch then assembled photographs, which did not include one of plaintiff, to conduct a photo array. Hernandez was unable to make an identification.

A few days after the incident, Juan Jr. told Detective Koch that he had heard from neighborhood gossip that the perpetrator was "Sebastian" and that this individual had been the victim of a shooting earlier that year. Koch asked Juan Jr. if he knew Sebastian, and Koch accepted Juan Jr.'s answer that he did not know Sebastian. Koch then showed Hernandez a new photo array containing a photograph of the plaintiff and, with Juan Jr. acting as translator, Hernandez identified plaintiff as the perpetrator.

In January of 2007, Detective Koch conducted a lineup that included plaintiff and at which Assistant District Attorney Paul Scotti ("ADA Scotti") was present. With a Spanish speaking

2

officer acting as translator, Hernandez identified plaintiff as his attacker. At that time, plaintiff was 18 years old and six feet, three inches tall, and he had a functionally impaired left arm.

Plaintiff was indicted for first degree robbery, third and fourth degree weapon possession and second degree menacing. Plaintiff's counsel moved to suppress the photo identification and lineup pursuant to *United States v. Wade*, 388 U.S. 218 (1926), on the ground that Juan Jr.'s presence and role as an interpreter at the photo identification rendered the procedure unduly suggestive. The trial court determined that, although it was not good practice to use Juan Jr. as an interpreter, the identification should not be suppressed, since Juan Jr. did not know plaintiff.

At the jury trial, Detective Koch testified to Hernandez's statement that the perpetrator used his left hand to take certain articles of property, but Hernandez testified that the perpetrator was unable to raise his left arm above his waist and denied ever telling the police that the perpetrator used both arms during the attack. The jury learned, by stipulation, that Hernandez had told a therapist the day after the robbery that he recognized the man who attacked him. In contrast, Detective Koch testified that Hernandez had told him that he was not familiar with the perpetrator.

Juan Jr. testified that he knew plaintiff prior to the robbery. Upon this revelation, defense counsel moved to reopen the *Wade* hearing. The trial judge denied this application on the ground that the suppression motion would have been denied even had it been known that Juan Jr. knew Delamota.

The Appellate Division, in affirming the conviction and the trial court's decision not to reopen the *Wade* hearing, noted that defendant "failed to show that the evidence adduced at trial constituted additional pertinent facts which could not have been discovered by him with reasonable diligence." *Delamota*, 74 A.D.3d 1225. The Appellate Division also concluded that the evidence was legally sufficient to establish Delamota's identity as the perpetrator. *Id.*

3

On November 17, 2011, the Court of Appeals vacated plaintiff's conviction on the ground that the photo array was unduly suggestive and remanded for a new trial to be preceded by an independent source hearing. (Three dissenting judges agreed with vacating the conviction, but would have dismissed the indictment altogether.) *People v. Delamota*, 18 N.Y.3d 107 (N.Y. 2011). The Court of Appeals noted Detective Koch's testimony that, immediately following the robbery, Hernandez described the perpetrator as an Hispanic man in his mid-twenties, weighing about 140 pounds who used his left arm to steal property, when in fact, at the time of the robbery, Delamota was 18 years old, six feet three inches tall and had an impaired left arm. *Id.* The Court found Hernandez "unwavering" during his testimony that the perpetrator did not use his left arm. *Id.* at 116. The Court explained that the jury could have "rationally conclude[d]...that the victim's recollection was credible and accurate, that the attacker had limited mobility in his left arm and that Hernandez did not tell Detective Koch that defendant used both of his arms during the robbery." *Id.*

In holding that the identification should have been suppressed because Juan Jr. participated in the photo array, the Court of Appeals explained:

> In this case, the trial court erred when it denied defendant's motion to reopen the *Wade* hearing because Juan Jr.'s trial testimony fatally undermined the suppression court's rationale for denying that motion. The suppression court had been troubled by Juan Jr.'s role at the identification procedure but ultimately concluded that suppression was not warranted because Juan Jr. did not know defendant. The significant revelation to the contrary at trial considerably strengthened defendant's suggestiveness claim when viewed in conjunction with other relevant facts: (1) the detective acted on unspecified neighborhood gossip (the reliability of which was never directly questioned or tested) regarding the robber's name and history based on information provided by Juan Jr.; (2) the detective was apparently concerned about the son's possible preexisting familiarity with defendant (and the suggestiveness that this could cause) and broached the topic before the photo array was conducted; (3) the detective either was or should have been aware

of the substantial risk that the son was familiar with defendant despite his assurance to the contrary; (4) there was no apparent impediment to the detective utilizing a Spanish interpreter who did not have preexisting information about the possible perpetrator or a familial connection to the victim; and (5) the detective could not be reasonably sure that the son would accurately translate the conversation.

Although any one of these facts or even several of them combined may not have established the requisite level of suggestiveness, their confluence with Juan Jr.'s testimony leads us to conclude that the record does not support the finding of the courts below that defendant failed to satisfy his burden of proving that the photo array was unduly suggestive. In our view, the suggestiveness cannot be attributed to the victim's son, but to the detective's decision to utilize him as the interpreter notwithstanding the possible risks that were involved in this practice. In addition, we do not believe that defendant could have discovered, before the suppression court ruled on the motion, the true extent of Juan Jr.'s familiarity with defendant or what Juan Jr. misrepresented to the police. The photo array identification, therefore, should have been suppressed and defendant is entitled to a new trial. Before that occurs, the People may attempt to demonstrate, by clear and convincing evidence, that Hernandez's ability to identify defendant has not been impermissibly influenced by the suggestive pretrial procedure that was employed here.

*Id.* at 118-119 (citations omitted).

On September 13, 2012, all charges against plaintiff were dismissed.

In addition to the facts developed at the trial and the Court of Appeals' statement of the facts regarding the identification procedure, which provide the bulk of the factual allegations in the Complaint, plaintiff alleges that the grand jury was never informed that Juan Jr. translated for his father during the photo array or that Juan Jr. knew plaintiff. (Compl. ¶¶ 40-42).

## II. Standard of Review

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all well-pleaded factual allegations and must draw all inferences in the plaintiff's favor. *Swiatkowski v. Citibank*, 446 Fed. Appx. 360, 360-61 (2d Cir. 2011). To survive a motion to dismiss, a

complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The court may consider the pleading itself, documents referenced in the complaint, documents that plaintiff relied on in bringing the suit and matters of which judicial notice may be taken. *Arrocha v. City Univ. of N.Y.*, 878 F. Supp. 2d 364, 368 (E.D.N.Y. 2012). Defendants have submitted for judicial notice: the indictment; the state court decisions related to the underlying criminal case; and the *Wade* hearing minutes. Plaintiffs have submitted for judicial notice: a pleading in another matter; a letter from the Chief Assistant District Attorney; a copy of the Informational Report signed by Detective Koch; and two portions of transcripts of the trial testimony of Juan Hernandez, Sr. The parties agree that the court may consider these documents in deciding defendants' motion to dismiss.

### III.     The Claims

Plaintiff alleges claims under 42 U.S.C. §§ 1983, 1985 and 1986 for: false arrest and imprisonment; malicious prosecution; conspiracy; denial of procedural and substantive due process; unreasonably prolonged detention; unreasonable continued prosecution; unduly suggestive identification procedures; failure to intervene; failure to investigate. Plaintiff also brings a § 1983 claim under *Brady v. Maryland*, 373 U.S. 83 (1963), and a claim against the City under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Plaintiff does not dispute that his claim for false arrest and false imprisonment is barred by the three year statute of limitations and that any claim against District Attorney Brown in his personal capacity is barred

by absolute immunity. Plaintiff has withdrawn his claim for failure to intervene as against ADA Scotti[1] and his claim for unreasonable prolonged prosecution as against all defendants.

### a. Malicious Prosecution

In order to prevail on a claim for malicious prosecution under § 1983, a plaintiff must demonstrate that: (1) the defendant initiated or continued a criminal proceeding; (2) the proceeding terminated in plaintiff's favor; (3) absence of probable cause for the proceeding; (4) actual malice as a motive; and (5) post-arraignment deprivation of liberty. *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 216 (2d Cir. 2000). Defendants raise only a challenge to the alleged absence of probable cause.

The indictment of an individual by a grand jury creates a rebuttable presumption of probable cause. *Savino v. City of New York*, 331 F.3d 63, 72 (2d. Cir. 2003). The presumption may be rebutted by evidence that the indictment was procured by fraud, perjury, suppression of evidence or other police conduct undertaken in bad faith. *Id.* A claim must be plausible to survive a motion to dismiss and, in the absence of sufficient factual allegations supporting the rebuttal of the presumption, the claim must be dismissed. *Bond v. City of New York*, 2015 WL 5719706 (E.D.N.Y. Sept. 18, 2015).[2] Even where, on a motion for summary judgment, plaintiff testified that the arresting officer told him that the officers would falsify evidence and manipulate line-ups, the Second Circuit affirmed judgment for defendants stating that, even those allegations, were not "without more, sufficient to raise an inference that the indictment was procured by fraud or bad

---

[1] Plaintiff's claim for failure to intervene against Detective Koch is deemed abandoned as he has not briefed it.

[2] Although, at oral argument, plaintiff's counsel suggested Detective Koch had a pre-existing familiarity with plaintiff, that allegation is wholly absent from the Complaint. Even if it were included, however, that allegation alone would not change the conclusion that the allegations are insufficient.

faith conduct." *Simmons v. New York City Police Dept.*, 97 Fed.Appx. 341 (2d Cir. 2004). *Accord*, *Savino*, 331 F.3d at 72.

Here plaintiff alleges that:

> 40. Upon information and belief, defendant, KOCH, withheld information from the grand jury concerning the unduly suggestive nature of the photo array.
> 41. Upon information and belief, defendant, KOCH, withheld information from the grand jury of his using the victim's son as an interpreter during the photo array.
> 42. Upon information and belief, defendant, KOCH, withheld information from the grand jury about the likelihood that Juan Jr. knew plaintiff, DELAMOTA, from the neighborhood prior to the assault on Juan Sr.

(Compl. ¶¶ 40-42). Plaintiff also alleges that Detective Koch acted in "bad faith and without justification" when he arrested plaintiff. *Id.* at ¶ 30.

While the New York Court of Appeals found errors that justified reversing plaintiff's conviction, there is nothing in its decision, nor in the Complaint, that supports a claim that Detective Koch lied or acted in bad faith to help procure the indictment. Rather, the Court of Appeals' decision and even the Complaint permit only the inference that Detective Koch performed sub-optimal police work, not that his conduct rose to the level of fraud, perjury, suppression of evidence or other bad faith. The claim for malicious prosecution is dismissed.

### b. Conspiracy

Plaintiff has not adequately alleged a claim for conspiracy against defendants Koch, Scotti and Brown. In order to prevail on a § 1985 claim for conspiracy, a plaintiff must show: (1) an agreement between two or more state actors; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal. *Pangburn v. Culberston*, 200 F.3d 65, 72 (2d Cir. 1999). A plaintiff must allege facts that support a meeting of the minds or agreement,

8

rather than vague or conclusory allegations of a conspiracy. *Webb v. Goord*, 340 F.3d. 105, 110 (2d Cir. 2003).

Plaintiff relies on *McCray v. City of New York*, 2007 WL 4352748, at *23 (S.D.N.Y. Dec. 11, 2007), where the court found plaintiff alleged sufficient facts to make a claim of conspiracy plausible. In that case, a youth made inculpatory statements to investigating officers without his family members present. *McCray*, 2007 WL 4352748, at *4. The Assistant District Attorney was present in the precinct during the interrogation and prevented one of plaintiff's family members from seeing him during the interrogation. *Id.*

Here, in contrast, plaintiff does not allege any fact from which one may infer that the defendants acted in concert. There is no indication that ADA Scotti was present at the initial photo identification or that he was even aware of the identification procedure before it happened. Likewise, there is no indication that, after the identification, there was any agreement between ADA Scotti and Detective Koch. Rather, plaintiff's allegations simply support the obvious fact that Detective Koch investigated a crime which later became ADA Scotti's case to prosecute.

### c. Unduly Suggestive Identification

Plaintiff has not adequately alleged a claim for § 1983 relief based upon the photo array. A constitutional violation occurs when an unduly suggestive identification is admitted at trial and, as a result, impairs a defendant's right to a fair trial. *Wray v. City of New York*, 490 F.3d 189, 193 (2d Cir. 2007). A plaintiff may not recover damages for an unduly suggestive identification if there is an intervening cause of that damage—such as the decision of the prosecutors to offer, or the trial judge to admit, the evidence; that is, unless the plaintiff can show evidence that the officer misled or pressured the prosecution or the trial judge, the prosecutor's subsequent decision to offer

the identification into evidence or the judge's decision to permit it as evidence cuts off a plaintiff's claim for recovery. *Id.*

Plaintiff relies on *Bermudez v. City of New York*, 790 F.3d 368 (2d Cir. 2015), to support his position. In *Bermudez*, the Assistant District Attorney was not informed about the alleged suggestive procedures used during the identification. *Id.* Plaintiff submitted an affidavit by one of the original witnesses against him saying he was coerced into identifying plaintiff with a threat of prosecution—a fact which directly conflicted with the police officer's statement, on videotape, that the witness identified plaintiff quickly and voluntarily. *Bermudez*, 790 F.3d at 375. The Second Circuit found a factual issue in that the officer's failure to inform the ADA of the problems in the initial questioning of the witness "could have prevented the ADA from making an informed decision about the reliability of that evidence." *Id.* at 376.

In contrast, here plaintiff does not allege that the intervening decision-maker, in this case the trial judge, was misled in any way. The alleged wrongdoing is that Detective Koch withheld information about the photo identification from the District Attorney's office and from the grand jury. (Compl. ¶¶ 39-42). When the trial judge learned that Juan Jr. was familiar with plaintiff, he nonetheless declined to reopen the *Wade* hearing. Although found to be error by the New York Court of Appeals, the judge's decision not to reopen the *Wade* hearing is an independent decision cutting off plaintiff's claim. *See Wray*, 490 F.3d at 193.

### d. Due Process

Plaintiff's procedural and substantive due process claim is based on the conclusory allegation that Detective Koch fabricated evidence and forwarded that evidence to ADA Scotti and the grand jury. When a police officer fabricates evidence likely to influence a jury's decision and

10

"forwards that information to prosecutors," a plaintiff has stated a claim under the Fourteenth Amendment. *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 130 (2d Cir. 1997).

But here plaintiff does not specify a piece of fabricated evidence. Rather, in his Complaint, he alleges that, as a result of "falsely arresting and imprisoning plaintiff and maliciously prosecuting [plaintiff], defendants violated plaintiff's rights to equal protection and both substantive and procedural due process…" (Compl. ¶ 131). Plaintiff goes on to allege, in a blanket statement devoid of specificity, that

> defendants violated plaintiff [sic] civil rights by fabricating an account and/or evidence concerning the arrest of plaintiff; withholding exculpatory evidence, employing unduly suggestive identification procedures; failing to properly investigate the circumstances of the crime of which plaintiff was wrongfully accused and in [sic] knowingly accusing plaintiff of a crime that defendants knew he had not committed.

(Compl. ¶ 133). This is insufficient. Moreover, plaintiff essentially has restated his claims under the Fourth Amendment as a Fourteenth Amendment claim. Because this claim is duplicative of his Fourth Amendment claims, it must be dismissed. *Singer v. Fulton County Sheriff*, 63 F.3d 110, 115 (2d Cir. 1995); s*ee also Albright v. Oliver*, 510 U.S. 266, 273-4 (1994).

### e. Unreasonably Prolonged Detention

To prevail on a claim for unreasonably prolonged detention, a plaintiff must show "(1) that he has a right to be free from continued detention stemming from law enforcement officials' mishandling or suppression of exculpatory evidence, (2) that the actions of the officers violated that right, and (3) that the officers' conduct shocks the conscience." *Russo v. City of Bridgeport*, 479 F.3d 196, 205 (2d Cir. 2007) (internal quotations omitted). In *Russo*, plaintiff could show his Fourteenth Amendment rights were violated where he had been incarcerated for a long time, but easily could have been exculpated; he also alleged facts supporting the intentionality of the officers' behavior. *Id.* Indeed, he could have been exculpated with a videotape that was in the sole

custody of the police officers and which was improperly stored. *Id.* at 208. The Second Circuit explained that a jury could find that the officers "actively hid the exculpatory evidence" in an act of "affirmative wrongdoing." *Id.* at 210.[3] The unreasonably prolonged detention claim could not be dismissed because the officers had a duty to "investigate specific, readily-verifiable claims of innocence in a reasonable time period." *Id.* at 209.

Plaintiff here alleges that Detective Koch withheld information from the District Attorney's office and the grand jury regarding the "suggestive nature" of the photo array, withheld the fact that Juan Jr. interpreted for his father, and withheld the likelihood that Juan Jr. may have known plaintiff. (Compl. at ¶ 37-42). These allegations do not give rise to an inference that Detective Koch actively withheld exculpatory evidence. *See Virgil v. Town of Gates*, 455 Fed.Appx. 36, 41 (2d Cir. 2012). There is no allegation in the Complaint that Detective Koch had, in his possession, evidence that could have proved that plaintiff was not the perpetrator. *See Husbands ex rel. Forde v. City of New York*, 335 Fed.Appx. 124, 129 (2d Cir. 2009). This claim is dismissed.

### f. Failure to Investigate

In his Complaint, plaintiff identifies a claim for "failure to investigate," but plaintiff did not explain this claim in his opposition to defendants' motion or at oral argument. Plaintiff simply alleges that Detective Koch failed to investigate plaintiff's alibi, failed to investigate the reliability of the identification, failed to investigate by using Juan Jr. as an interpreter, ignored discrepancies between plaintiff and the original description of the perpetrator, acted on unspecified neighborhood gossip, and that he should have been aware that Juan Jr. was familiar with plaintiff. (Compl. ¶ 177). Once again, this is the same conduct that underlies plaintiff's malicious prosecution claim.

---

[3] Plaintiff in *Russo* also brought Fourth Amendment claims for false arrest and false imprisonment which were dismissed because plaintiff was positively identified by a witness, which gave arresting officers probable cause to arrest him. *Id.* at 204.

To the extent this claim is not subsumed by the malicious prosecution claim, plaintiff has not identified any authority suggesting the basis for a distinct claim. As stated in *Virgil*, *supra*, "[i]f probable cause is established, there is no constitutional right, whether under the Fourth or Fourteenth Amendment, to demand further investigation before arrest or prosecution." 455 Fed.Appx at 40. This claim is dismissed.[4]

### g. *Brady* Violation

A *Brady* violation occurs when a "State suppresses evidence favorable to an accused that is material to guilt or punishment." *Cone v. Bell*, 556 U.S. 449, 451 (2009). Evidence is not "suppressed" for purposes of *Brady* if "the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence." *Leka v Portuondo*, 257 F.3d 89, 100, (2d Cir. 2001), quoting *United States v. LeRoy*, 87 F.2d 610, 618 (2d Cir. 1982). To be timely, *Brady* requires that disclosure be made with sufficient opportunity for the defense to use the information. *Id.* at 102.

Plaintiff argues that the *Brady* material withheld at the criminal trial is that Detective Koch knew that Juan Jr. may have had a preexisting familiarity with plaintiff. (Compl. ¶33). Plaintiff has made no allegation that Detective Koch was untruthful when he recounted Juan Jr.'s response in the negative to his question whether Juan Jr. knew plaintiff. In addition, when at trial, Juan Jr. admitted to knowing plaintiff, defense counsel moved to reopen the *Wade* hearing. That motion

---

[4] In *Russo*, 479 F.3d at 210, the Second Circuit observed that police officers' attempt to "evoke a confession from him by misrepresenting the very evidence of Russo's innocence that was available to them" combined with their "failure to investigate the tape to see if the tape was in fact exculpatory" could support a jury finding of either intentional violation of, or deliberate indifference to plaintiff's constitutional rights. The Second Circuit made these observations while analyzing plaintiff's due process claim based on unreasonably prolonged detention, not as an independent claim of "failure to investigate."

was denied, but plaintiff has not offered any basis for concluding that defense counsel did not have sufficient opportunity to use the information which came out at trial. Nor has plaintiff identified any other piece of information that was withheld. *See Virgil*, 455 Fed.Appx at 40. The *Brady* claim is dismissed.

### h. *Monell* Claim

For a *Monell* claim to survive a motion to dismiss, plaintiff must allege (1) an official policy or custom that (2) caused plaintiff to be subjected to (3) a denial of his constitutional rights. *Monell v. Social Services of the City of New York*, 436 U.S. 658 (1977). Plaintiff's *Monell* theory is based on the alleged *Brady* violation and unduly suggestive photo identification, both of which claims are dismissed. As a result of these dismissals, plaintiff's *Monell* claim is also dismissed.

## IV. Conclusion

For the above stated reasons, defendants' motion to dismiss is granted in its entirety. Plaintiff has not identified any additional facts that he may include in an amended complaint, nor is it apparent how plaintiff could allege any additional facts that are not already a part of the record as described by the New York Court of Appeals. But, if plaintiff does choose to move the court for leave to amend his Complaint, he must do so within 30 days.

SO ORDERED.

/s/ Nina Gershon
_____
**NINA GERSHON**
**United States District Judge**

Dated: May 23, 2016
       Brooklyn, New York